DAVID L. ANDERSON (CABN 149604)
United States Attorney

HALLIE HOFFMAN (CABN 210020)
Chief, Criminal Division

MICHELLE J. KANE (CABN 210579)
MATTHEW A. PARRELLA (NYBN 2040855)
Assistant United States Attorneys

    1301 Clay Street, Suite 340S
    Oakland, California 94612
    Telephone: (510) 637-3680
    FAX: (510) 637-3724
    michelle.kane3@usdoj.gov
    matthew.parrella@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) No. CR 16-00440 WHA |
|     Plaintiff, | ) |
| | ) UNITED STATES' POST-HEARING REPLY |
| v. | ) BRIEF RE DEFENDANT'S COMPETENCY TO |
| | ) STAND TRIAL |
| YEVGENIY ALEXANDROVICH NIKULIN, | ) |
|     Defendant. | ) |
| | ) |

## I.    INTRODUCTION

Defendant Yevgeniy Nikulin's brief regarding his competency status clarifies that the initial complaint by his counsel remains the central competency issue: the defendant will not speak with his attorneys about the details of his case. As the record in this proceeding establishes, this is the defendant's intentional choice. The experienced Bureau of Prisons forensic psychologist who examined him found him competent to stand trial. The defendant has demonstrated a sophisticated understanding of his criminal proceedings and the ability to assist his attorneys. That he chooses not to communicate with his own defense counsel may be inadvisable, but it is not incompetent.

U.S. POST-HEARING REPLY BRIEF RE COMPETENCY
CR 16-00440 WHA

## II.   ARGUMENT

As described in detail in the United States Post-Hearing Brief (ECF No. 90), Bureau of Prisons ("BOP") forensic psychologist[1] Dr. Lesli Johnson prepared a report, with input from her team, establishing that the defendant was competent to stand trial under the Constitutional and statutory standards. *See Dusky v. United States*, 362 U.S. 402 (1960) and 18 U.S.C. § 4241. Despite the defendant's claim that her report lacked "support or reasoning" (Defendant's Brief at 13:6-9 (ECF No. 91)), Dr. Johnson thoroughly explained the examination she conducted, the diagnosis she chose, and the conclusions she reached. Her testimony at the April 30, 2019, hearing further clarified her reasoning. Dr. Johnson's evaluation was based on accepted methods and keyed to the crucial question of the defendant's present competency rather than his claimed past traumas. The defendant has presented no evidence that undermines her conclusions.

The defendant argues that Dr. Johnson erred in not speaking with the defendant's friends and family, and in not incorporating their stories regarding his history into her report. Def.'s Brief at 12:25-13:6. Dr. Johnson testified that she finds listening to and reading defendants' communications to be more enlightening than talking to friends and family who may have an interest in the outcome. Transcript at 18:17-19:18; 52:23-53:8 ("With competency to stand trial, it is not always necessary [to speak with members of a defendant's family] because the crux of a competency evaluation is here and now."). This decision, based on her long experience conducting competency evaluations, was a reasonable professional judgment.

More importantly, Dr. Johnson testified that knowing the information from the defendant's mother regarding his alleged past traumas would not have changed her diagnosis and conclusions regarding competency, because she based her opinions on his present condition. Transcript at 43:2-44:21. For example, regarding the defendant's claim to have suffered a traumatic brain injury, Dr.

---

[1] The defendant suggests in his brief that Dr. Johnson's opinion is inherently inferior because she is a forensic psychologist rather than a psychiatrist. Def.'s Brief at 10:18-11:6. Dr. Johnson's career in forensic psychology, extensive experience with competency examinations, decade of working with federal prisoners, and the fact that she consulted with an entire team of BOP mental health professionals, demonstrates why the Court should give significant weight to her diagnosis and conclusions over Dr. Grinberg's. *See* Transcript of April 30, 2019, hearing, attached to United States' Brief as Exhibit A ("Transcript") at 6:19-12:20 (ECF No. 90-1).

U.S. POST-HEARING REPLY BRIEF RE COMPETENCY
CR 16-00440 WHA                                          2

Johnson stated that brains can lose and recover a certain level of functioning, which then generally remains consistent. She emphasized that, even in such cases, "the current functioning is what is impactful as we talk about competency to stand trial." Transcript at 55:6-10.

Dr. Johnson's report described the defendant's responses to her legally-focused interview, known as the Revised Competency Assessment Instrument ("RCAI"). Johnson Report at 17-20. These included the following accurate description of the crimes he is accused of committing and the legal charges:

> Mr. Nikulin exhibited an overall adequate understanding of the criminal charges and the related court proceedings. He stated he was charged with, "Computer crimes," and continued, "Breaking into a system . . . more than one system." When asked which systems the charges alleged, he stated, "Formspring [and] Linkedin." When asked about other systems, he replied, "Oh, so you do remember . . . since you have such a great memory . . . "After sitting in silence for a short period, he provided, "Dropbox." When asked if the charges were felonies or misdemeanors, he indicated he was unsure due to differences between the United States and Russia. However, after providing education, he knew the charges were felonies.

Johnson Report at 17. He also stated the possible pleas, "Guilty, not guilty, and inadequate or incompetent." He demonstrated an understanding of the effect of a guilty plea and the right to remain silent by stating "[t]hat [a defendant] has the right to describe what it is exactly what he is guilty of . . . He also has the right to maintain his silence . . . It depends on how he chooses to handle it . . . that he accepts the guilty upon himself . . . that he had committed the violation." Johnson Report at 18. Moreover, he understood the roles of each participant, including the defense attorney, whose role is "to defend... the suspect... by words, to try to acquit, to get an acquittal." Johnson Report at 18. Nothing in Dr. Grinberg's report or testimony undermines Dr. Johnson's conclusion that the defendant, despite a likely personality disorder, has the "present ability to understand the nature and consequences of the court proceedings against him."

The defendant's brief focuses on the failure to communicate with counsel as evidence that he fails the second prong of the competency test, the ability to assist his counsel in his defense. Dr. Johnson's report and testimony, however, establish his ability and show that not communicating is his choice. The defendant told Dr. Johnson in response to a question about why he did not communicate with his attorneys, "I'm always capable of participating in conversations but depending on the situation .

U.S. POST-HEARING REPLY BRIEF RE COMPETENCY
CR 16-00440 WHA                                3

. . ambiance and the people." Johnson Report at 19. The defendant told her he had no disagreement with his attorneys, but also explained that he knew he could challenge them or hire a different attorney if he did disagree. Johnson Report at 19. Dr. Johnson thus concluded that he met the second prong in his ability to assist in his defense, if he chose to do so. Johnson Report at 20.

Despite this clarity regarding his choice not to communicate with counsel, Dr. Grinberg testified that the defendant displayed "regressive cognitive functioning" as evidenced by his description of how he could represent himself. Transcript at 74:4-6. In fact, the statement that Dr. Grinberg attributes to the defendant, that "he believes that only he, himself, can defend himself and he just needs a little bit more coaching in learning about American Constitution" is an accurate summary of his Constitutional right to represent himself. *See Farretta v. California*, 422 U.S. 806 (1975). While doing so may be unwise, it is not evidence of incompetence. The defendant's brief also attributes the statement to him that he "didn't want to do this anymore and that [his counsel] should just plead guilty" for him. Def.'s Brief at 18:7-9. That reasonable sentiment again shows both his understanding and his ability to communicate his thoughts about his case to counsel when he chooses.

The cases that defendant cites do not describe remotely similar situations. In *United States v. Friedman*, 366 F.3d 975, 977 (9th Cir. 2004), the court upheld a finding of incompetency for a defendant who was accused of walking into a Secret Service office and threatening to torture the agents with a method out of a Robert Ludlum novel if they did not turn over evidence of the use of electromagnetic weapons against him. The Ninth Circuit found that the defendant's "so-called refusal to rationally assist in his defense" was a direct result of his paranoid schizophrenia because, among other things, the defendant "wrote to the district judge complaining that his attorney was not actively searching for evidence regarding alleged death threats from Secret Service agents against him and his family." *Id.* at 980-81. The court observed that, despite his diagnosed severe mental illness, the defendant "described this evidence as 'necessary [to] quickly and completely exonerate me of these charges, including the ridiculous allegations that I am somehow mentally ill or unbalanced.'" *Id.* at 981. In that case, the defendant's paranoid schizophrenia made him unable to rationally interact with his counsel; he instead requested imaginary exculpatory evidence. There is no comparison to the present case, where the defendant has stated that he has no complaint regarding his representation, but chooses

U.S. POST-HEARING REPLY BRIEF RE COMPETENCY
CR 16-00440 WHA                                            4

not to discuss the proceedings with his counsel. Similarly, in *Anderson v. Ylst*, No. C-92-0241 EFL (JSB), 1995 WL 20465, at *5 (N.D. Cal. Jan. 10, 1995), the defendant had a documented history of brain trauma and mental illness including hospitalization and suicide attempts. The state trial court did not hold an evidentiary hearing regarding competency, despite the defendant's display of problematic behavior in the courtroom, such as "maintaining three alternating postures [during trial]: (a) rocking back and forth, (b) head and back slumped and (c) head and arms on counsel table for fifteen to thirty minutes." *Id.* Furthermore, the defendant's anti-depressant medication had been discontinued prior to trial, likely resulting in his mental deterioration. *Id.* at *5-6. In finding on habeas review that the defendant had been incompetent at trial, the District Court relied heavily on the defendant's "increasing derangement" throughout the trial, including multiple hysterical breakdowns. *Id.* Again, the defendant in *Anderson*, in addition to his established medical history and the recent change to his medication, displayed current, obvious signs of mental disorder not present for defendant Nikulin.

Ultimately, the defendant has not put forward any evidence that his refusal to communicate with his counsel is anything but a conscious choice. The United States has put forth sufficient evidence through the report and testimony of Dr. Johnson to establish by a preponderance of the evidence that the defendant is competent to stand trial.

**III.   CONCLUSION**

Accordingly, the government respectfully recommends that the Court find the defendant competent to stand trial in this matter.

DATED: May 20, 2019
　　　　　　　　　　　　　　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　　　DAVID L. ANDERSON
　　　　　　　　　　　　　　　　　　　　　　United States Attorney


　　　　　　　　　　　　　　　　　　　　　　/s/
　　　　　　　　　　　　　　　　　　　　　　MICHELLE J. KANE
　　　　　　　　　　　　　　　　　　　　　　MATTHEW A. PARRELLA
　　　　　　　　　　　　　　　　　　　　　　Assistant United States Attorneys