DAVID L. ANDERSON (CABN 149604)
United States Attorney

HALLIE HOFFMAN (CABN 210020)
Chief, Criminal Division

MICHELLE J. KANE (CABN 210579)
KATHERINE L. WAWRZYNIAK (CABN 252751)
Assistant United States Attorneys

    1301 Clay Street, Suite 340S
    Oakland, California 94612
    Telephone: (510) 637-3680
    FAX: (510) 637-3724
    michelle.kane3@usdoj.gov
    Katherine.Wawrzyniak@usdoj.gov

Attorneys for United States of America

**FILED**

JAN 24 2020

SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, </br></br> Plaintiff, </br></br> v. </br></br> YEVGENIY ALEXANDROVICH NIKULIN, </br></br> Defendant. | No. CR 16-00440 WHA </br></br> **UNITED STATES' MOTION IN LIMINE NO. ONE TO ADMIT CO-CONSPIRATOR STATEMENTS UNDER FED. R. EVID. 801(D)(2)(E).** </br></br> ~~UNDER SEAL~~ </br></br> Trial: March 9, 2020 </br> Pretrial Conference: February 19, 2020 </br> Time: 1:30 p.m. </br> Courtroom No. 12 |

U.S. MTN. IN LIMINE RE CO-CONSPIRATOR STMTS.
CR 16-00440 WHA

## I. INTRODUCTION

Defendant Yevgeniy Nikulin is charged in an Indictment with three counts of computer intrusion, in violation of 18 U.S.C. § 1030(a)(2)(C); two counts of intentional transmission of information, code, or command causing damage to a protected computer, in violation of 18 U.S.C. § 1030(a)(5)(A); two counts of aggravated identity theft, in violation of 18 U.S.C. § 1028A(a)(1); one count of trafficking in unauthorized access devices, in violation of 18 U.S.C. § 1029(a)(2); and one count of conspiracy, in violation of 18 U.S.C. § 371. In connection with the conspiracy, trafficking, computer intrusion counts, and aggravated identity theft counts involving Formspring (Counts Five through Nine) the United States intends to introduce evidence of statements by defendant's co-conspirators contained in email correspondence. The United States hereby respectfully requests that the Court find the statements admissible when offered by the government pursuant to Federal Rule of Evidence 801 (d)(2)(E).

## II. BACKGROUND AND SUMMARY OF STATEMENTS BY CO-CONSPIRATORS

The United States hereby gives notice that it may offer co-conspirator statements through the testimony of other witnesses and through documents. A statement by a co-conspirator during the course and in furtherance of the conspiracy is not hearsay and is admissible against other members of the conspiracy. Fed. R. Evid. 801(d)(2)(E). Here, the United States intends to introduce statements contained in self-authenticating email correspondence between the co-conspirators in which they discuss the decryption and trafficking of stolen credentials.

As charged in the Indictment in this case, defendant Nikulin gained unauthorized access to the computers belonging to a San Francisco company named Formspring in June 2012. At the time, Formspring's business was running a social question and answer website. Testimony and documents will show that Nikulin exfiltrated Formspring's user database. Between June 13, 2012, and June 29, 2012, Nikulin stole approximately 30 million Formspring user credentials after compromising the account of a Formspring employee, John Sanders (identified in the Indictment as J.S.). Nikulin then conspired with several individuals to sell the stolen Formspring credentials.

On April 25, 2013, the United States obtained a search warrant for the contents of a Google e-

mail account, moy.yawik@gmail.com, used by an individual named Alexey Belan.[1] The FBI identified Belan as moy.yawik@gmail.com in part through the content of the e-mail account. Among other things, the account contained a scanned copy of Belan's Russian domestic passport, including Belan's photograph. The passport was attached to outgoing email correspondence and was presented to confirm Belan's identity in the context of credit/banking transactions. The account also contained several messages addressed to Belan, using his real name.

The results of that search warrant contained an e-mail thread (translated from Russian to English) between Belan (moy.yawik@gmail.com) and an individual named Nikita Kislitsin (fyofyofyo@hotmail.com). The FBI identified Kislitsin as the user of the account in part because he confirmed that in correspondence with Belan.

The conversation between Belan and Kislitsin began on June 25, 2012, during the Formspring intrusion period, which ran from June 13 to 29, 2012. The following is the complete e-mail conversation chain (YN000202):

> From: NoName <moy.yawik@gmail.com>
> Date: June 25, 2012
> To: Dor Fyo <fyofyofyo@hotmail.com>
> Subject: Re: akbon
> *Hi, are you going to contact my guy and his partner?)*
>
> July 2, 2012, Dor Fyo <fyofyofyo@hotmail.com> wrote:
> *Mag* [a known alias of Belan], *for some reason I can't reach him, he's not online :/. How often does he usually go online?*
>
> July 2, 2012, 19:14 user Dor Fyo <fyofyofyo@hotmail.com> wrote:
> *It's done, I got in touch with him :)*
>
> July 3, 2012, NoName <moy.yawik@gmail.com> wrote:
> *Good just in case, he's online on weekdays*
>
> July 7, 2012, Dor Fyo <fyofyofyo@hotmail.com> wrote:
> *Mag, have you worked with him much? I've got a big negative feeling from working with him. He burned the whole dump, having posted a portion of the hashes into the public domain, which surfaced. Plus the conversion turned out to be low, and the main thing – the number in the admin is changing. I just saw one number, then bam, I refresh the page, and the number has changed. The conversion is very low, somewhere around 10 times less than what you had. I'm concerned that this guy is trying to screw me over.*
>
> July 13, 2012, NoName <moy.yawik@gmail.com> wrote
> *Hi, you're writing me with some improbable stuff. o.O [sic] I can completely vouch for him. I'll ask about the portion of the hashes in the public.*

---

[1] The contents will be authenticated by a certification under Fed. R. Evid. 902(11) and/or (13).

| | |
|---|---|
| 1 | *On the changing numbers – that's normal, it's the refunds.*<br>*On the conversion – what is the database, if it's not a secret?* |
| 2 | |
| 3 | July 13, 2012, Dor Fyo <fyofyofyo@hotmail.com> wrote:<br>*Formspring* |
| 4 | July 13, 2012, NoName <moy.yawik@gmail.com> wrote:<br>*Okay, I'll wait for him so we can have a talk.* |
| 5 | *On the leak – did you break it yourself or did you buy it from someone? Maybe you should check out that angle?* |
| 6 | |
| 7 | July 13, 2012, Dor Fyo <fyofyofyo@hotmail.com><br>*No, it was his bruter [login brute-forcer] that posted it:*<br>*https://webcache.googleusercontent.com/search?hl=en&output=search&sclient=psy-* |
| 8 | *ab&q=cache%3Ahttp%3A%2F%2Fforum.insidepro.com%2Fviewtopic.php%3Ft%3D15467&o*<br>*q=cache%3Ahttp%3A%2F%2Fforum.insidepro.com%2Fviewtopic.php%3Ft%3D15467&gs_l=* |
| 9 | *hp.3..014.2407.5448.0.5858.7.7.0.0.0.0.102.396.4j1.5.0...0.2.NCJ9w-xdBSs&pbx=1* |

The e-mail thread is discussing the Formspring data, and how someone working with Nikulin – his "brute-force" decrypter – posted a set of the encrypted passwords on the Internet to seek help with decrypting them. In the discussion, Kislitsin is describing his discussions with Nikulin and asking Belan whether he is trustworthy. The link in the e-mail thread leads to a cached version of a posting on Insidepro, which Formspring has confirmed contained its encrypted user data. Ade Alonoh of Formspring will testify as such at trial.

The e-mail thread confirms that Belan was connecting Kislitsin with Nikulin, the person who stole the Formspring data. It also confirms that Kislitsin was considering the transaction and investigating the quality of the data.

On July 16, 2012, three days after he discussed the Formspring data with Belan, Kislitsin began an e-mail conversation with another individual, Mehmet Sozen, in which he offered the Formspring data for sale.[2] In that conversation, Sozen used the e-mail address ibob749@gmail.com. Sozen used his real name in correspondence in the ibob749@gmail.com account. For example, when sending the confirmation that he paid Kislitsin, he included a Western Union transaction number and his name as the sender. FBI was also able to connect the ibob749@gmail.com account to another of Sozen's accounts, mehmetsozen10@gmail.com. Kislitsin used fyofyofyo@hotmail.com, the same account described above. The correspondence, as translated, follows (YN004787):

From: Dor Fyo <fyofyofyo@hotmail.com>

---

[2] The contents will be authenticated by a certification under Fed. R. Evid. 902(11) and/or (13).

>       To: ibo ibo <ibob749@gmail.com>
>       Sent: Monday, July 16, 2012 6:32 PM
>       Subject: Re: hi
>       Rais, I've got a good web-site Formspring.com. It's a very popular and big web-site, it has 30
>       Million users.
>       Let me know if you are interested in it

Sozen responded, asking about the price and the type of data:

>       From: ibo ibo <ibob749@gmail.com>
>       To: Dor Fyo <fyofyofyo@hotmail.com>
>       Sent: Tuesday, July 17, 2012 4:16 AM
>       Subject: Re: hi
>       What price please?
>
>       [And] I want email lastname firstname etc is it possible?

Kislitsin responded:

>       From: Dor Fyo <fyofyofyo@hotmail.com>
>       To: ibo ibo <ibob749@gmail.com>
>       Sent: Tuesday, July 17, 2012 9:14 AM
>       Subject: Re: hi
>       Best price in 10.000E, there are 30M users with email, usernames, messages and so on.

Sozen then asked further about the quality of the data:

>       From: ibo ibo <ibob749@gmail.com>
>       To: Dor Fyo <fyofyofyo@hotmail.com>
>       Sent: Tuesday, July 17, 2012 10:18 AM
>       Subject: Re: hi
>       Thanks for your offerBut how many [times have these databases been] sold? Because for the
>       other[s] I already bought my customers aren't happy they [say] that the [e-mails] are [used] too
>       much and that the people aren't [responding] you're [telling me] that you aren't [selling] them
>       :-)

Kislitsin reassured him that the data was still good:

>       From: Dor Fyo <fyofyofyo@hotmail.com>
>       To: ibo ibo <ibob749@gmail.com>
>       Sent: Tuesday, July 17, 2012 11:00 PM
>       Subject: Re: hi
>       It's fresh database, it wasn't sold to anybody yet. Also I sell db only in one hands.
>
>       *Statistics by countries:*
>       *USA - 7 Million*
>       *United Kingdom - 3 Million*
>       *Europe (Franse Germany Spain etc) - 7 Million*
>       *Brasil - 5 Million*
>       *Others - 8 Million*

At Sozen's request, Kislitsin sent a sample of the data from his fyofyofyo@hotmail.com account to Sozen on July 31, 2012. The data contained 1,000 records. Matt Cudworth, who worked for the

U.S. MTN. IN LIMINE RE CO-CONSPIRATOR STMTS.
CR 16-00440 WHA                     4

successor company to Formspring, will testify for the United States at trial, has confirmed that the data that Kislitsin sent to Sozen came from the Formspring database and belonged to Formspring customers.

After some continued email negotiations on price, Kislitsin and Sozen agreed on €5,500 (approximately $7,500 U.S. at the time) for the stolen Formspring data. Sozen represented that all of his customers were on vacation, so he only had one offer, establishing that he was making the purchase for someone else. Sozen delayed paying several times, until on September 12, 2012, he wrote to Kislitsin, asking whether it was okay to send the money the next day and which name he should use. Kislitsin told Sozen to send the money to "Oleg Tolstikh." Sozen reported on September 14, 2012, that, using his own name, he had sent €4,820, because that is the maximum he could send at one time. He gave the transaction number 4153808137. He promised to send the €700 balance on "Monday," which would have been September 17, 2012. Records obtained by subpoena from Western Union match the conversation (YN005009). On September 13, 2012, Mehmet Sozen sent "Oleg Tolstikh" €4,820 with transaction number 4153808137 and on September 19, 2012, he sent the balance, €700, to the same name.

A video obtained via a Mutual Legal Assistance Treaty ("MLAT") request to Ukraine shows defendant Nikulin, Kislitsin, and Tolstikh together at a meeting of approximately ten individuals at a hotel in Moscow (YN014097, 015055). The video was obtained in November 2012 from the computer of another individual present at the meeting. It was contained in a folder labeled "Moscow 2012" and had a "last modified" date of March 18, 2012, indicating it was likely taken during the same 2012 period when Nikulin, Kislitsin, and Tolstikh were participating in the theft and trafficking of the Formspring credentials. The video contains a discussion between the attendees of a potential internet café business. The contents of the computer are authenticated as part of the MLAT response from Ukraine. FBI Special Agents Jeffrey Miller and Emily Odom will testify regarding the identification of the participants at the meeting.

In 2014, FBI special agents interviewed Kislitsin at the U.S. Embassy in Moscow (YN013922). In that interview, he told the FBI about how he knew Belan and explained that Belan obtained e-commerce databases with a goal to sell them for financial gain or to use them for "spamming." Belan targeted U.S. citizens through spam messages offering weight loss products, etc. Kislitsin said that Belan

made approximately $200,000 using the stolen Zappos database (see below) as part of a spamming campaign. Kislitsin had tried to sell the Zappos database to Sozen on Belan's behalf, but they could not agree on a price. After the Zappos hack, Kislitsin wanted to try selling more databases. He acquired the Formspring database from "Yevgeniy" and provided it to Sozen for spamming purposes. Kislitsin said that he did not make as much money as he had promised Yevgeniy by selling the database, and Yevgeniy had been unhappy with Kislitsin after the transaction. Kislitsin said that Oleg Tolstikh, the name on the money transfer for Yevgeniy, was a real person and a common acquaintance of Kislitsin and Yevgeniy. Kislitsin said he had met Yevgeniy in person on one occasion through Oleg Tolstikh.

Kislitsin has been charged in an indictment that remains under seal with the same counts of conspiracy and trafficking in unauthorized access devices as defendant Nikulin in connection with the sale of the Formspring data. Case No. CR 14-00126 EXE (N.D. Cal). Kislitsin is identified as "Co-conspirator 1" in the present Indictment. Sozen is identified as "Co-conspirator 3" in the present Indictment. In 2013, Belan was charged in this District with computer intrusions against two companies, Evernote and Scribd, and related identity thefts. Case No. CR 13-00359 EXE (N.D. Cal). That indictment was unsealed along with a 2012 indictment charging him with similar crimes against Zappos. Case No. 12-cr-331-APG-GWF (D. Nev.). In 2017, Belan was charged in this District with additional offenses, along with several co-conspirators. That Indictment alleges among other things, that, in November and December 2014, Belan stole a copy of at least a portion of Yahoo's user database and conspired with Russian FSB officers to gain access to Yahoo accounts without authorization. Case No. CR 17-00103 VC (N.D. Cal.). Belan is identified as "Co-conspirator 2" in the present Indictment.

### III. ARGUMENT

**A. The Government Should Be Permitted to Offer Co-Conspirator Statements But the Defense Should Be Precluded from Doing So.**

A statement by a co-conspirator during the course and in furtherance of the conspiracy is not hearsay and is admissible against other members of the conspiracy. Fed. R. Evid. 801 (d)(2)(E). *Bourjaily v. United States*, 483 U.S. 171, 175 (1987); *United States v. Crespo de Llano*, 838 F.2d 1006, 1017 (9th Cir. 1987). For the reasons set forth below, the United States respectfully requests that this

Court conditionally admit the co-conspirator statements contained in email correspondence between Kislitsin, Belan, and Sozen described above.

However, just as the defendant is not permitted to offer his own statements, he is not permitted to offer statements of his co-conspirators. By its terms, Fed. R. Evid. 801(d)(2)(E) requires that co-conspirator statements be offered against a party who was a member of the conspiracy. Insofar as the United States was not a member the conspiracy, these statements and any others by the co-conspirators may not be offered against the United States. *See United States v. Maliszewski*, 161 F.3d 992, 1011 (6th Cir. 1998) (holding that co-conspirator statement could not be offered against government, which was not member of conspiracy); *United States v. Abbas*, 74 F.3d 506, 511 (4th Cir. 1996) (same).

### A. The Court Should Conditionally Admit the Co-Conspirator Statements Without a Pretrial Hearing.

Recognizing that the trial court has the discretion to determine the order of proof, the Ninth Circuit has approved the admission of co-conspirator statements subject to a motion to strike or mistrial if the United States later fails to lay a proper foundation. *United States v. Perez*, 658 F.2d 654, 658 and n. 2 (9th Cir. 1981) (noting that unlike other Circuits, the Court has declined to express a preference for pretrial determinations of admissibility); *United States v. Zemek*, 634 F.2d 1159, 1169–70 (9th Cir. 1980) (holding that "this court has held repeatedly that the order of proof is within the sound discretion of the trial court. The procedure of conditionally admitting co-conspirator's statements subject to later motions to strike is well within the court's discretion.") (citations omitted). Given the United States showing below regarding the admissibility of co-conspirator statements here, the Court should conditionally admit the statements contained in the email correspondence described above at the pretrial conference.

### B. The Proffered Evidence Makes a Sufficient Threshold Showing to Conditionally Admit the Co-Conspirator Statements.

To introduce a statement of a co-conspirator into evidence against a defendant, the government need only establish – by a preponderance of the evidence – the existence of the conspiracy; the defendant's connection to it; and that the statement was made during and in furtherance of the conspiracy. *Bourjaily*, 483 U.S. at 175–76, 181–82; *United States v. Bridgeforth*, 441 F.3d 864, 869 (9th

Cir. 2006); *Crespo de Llano*, 838 F.2d at 1017. In determining whether the requirements of the co-conspirator rule have been met, the Court can rely on any relevant evidence, whether admissible or not, including the co-conspirator statements themselves. *Bourjaily*, 483 U.S. at 175, 178–79. The hearsay statements may be considered in making this determination. *United States v. Gordon*, 844 F.2d 1397, 1402 (9th Cir. 1988) (citing *Bourjaily*). The statements at issue here clearly meet and exceed the preponderance standard and the Court can therefore conditionally admit them.

### 1. Showing the Existence of a Conspiracy.

The existence of the conspiracy to traffic unauthorized access devices in the form of stolen Formspring credentials is demonstrated by the email communications between Belan, Kislitsin, and Sozen detailed above. The United States will offer the correspondence between the co-conspirators as evidence of the conspiracy. Defendant Nikulin's role in the conspiracy was to steal the Formspring database and provide it to Kislitsin, as Kislitsin told the FBI. Belan initiated the connection between Kislitsin and Nikulin. Kislitsin offered the stolen Formspring data to Sozen. Sozen bought the stolen data and paid Oleg Tolstikh via Western Union as Kislitsin directed. The evidence shows that the co-conspirators, understood the nature of the stolen credentials and were seeking to earn money from them, for example, Kislitsin's description to Sozen that "there are 30M users with email, usernames, messages and so on" or the discussion of Nikulin's "bruter," which is slang for someone who uses a brute-force technique to crack encrypted passwords. Defendant himself understood the nature of the stolen credentials, having stolen them himself. This evidence is more than sufficient to establish the existence of a conspiracy.

### 2. Showing the Defendant's Connection to the Conspiracy.

Once a conspiracy is shown, the prosecution need only present slight evidence connecting the defendant to the conspiracy. *United States v. Mason*, 658 F.2d 1263, 1269 (9th Cir. 1981). Recognizing that conspiracies are generally clandestine agreements not capable of direct proof, the Ninth Circuit has held that proof of the slight connection "may be inferred by circumstantial evidence." *United States v. Reed*, 575 F.3d 900, 923–924 (9th Cir. 2009). The court has further explained that the term "slight connection" means that the defendant need not have known all the conspirators, participated in the conspiracy from its beginning, participated in all its enterprises, or known all its details. *Id.* at 17.

Defendant's connections to the conspiracy here are established through his participation in the initial theft of the Formspring credentials, his providing the credentials to Kislitsin, and his demonstrated association with both Kislitsin and Tolstikh, the person who handled the money through Western Union. Moreover, Kislitsin admitted that he received the stolen Formspring credentials from Nikulin for the purpose of selling them. The Court may consider Kislitsin's admissions in making its determination on the admissibility of the co-conspirator statements contained in the email correspondence, without regard to whether Kislitsin's admissions will be admitted at trial. *See Bourjaily*, 483 U.S. at 175, 178–79 (confirming that Fed. R. Evid. 104 allows the Court to consider any evidence, including hearsay, in making preliminary determinations regarding admissibility).

### 3. Showing that the Statements Were Made During and In Furtherance of the Conspiracy.

To be "in furtherance" of a conspiracy, the statements must further the common objectives of the conspiracy or set in motion transactions that are an integral part of the conspiracy. *United States v. Yarbrough*, 852 F.2d 1522, 1535–1536 (9th Cir. 1988) (citations omitted). Statements made to enlist or further participation in the group's activities; statements intended to prompt action by co-conspirators; and statements made to advise co-conspirators of the group's activities are all recognized to be "in furtherance of" a conspiracy. *Id.* at 1535–36; *see also United States v. Nazemian*, 948 F.2d 522, 529 (9th Cir. 1991). To determine if a statement was made "in furtherance," the court should look to the declarant's intent in making the statement, not the actual effect in advancing the goals of the conspiracy. *United States v. Zavala-Serra*, 853 F.2d 1512, 1516 (9th Cir. 1988).

Here, the co-conspirator statements were plainly in furtherance of the conspiracy and are part of the record of the charged trafficking transaction. They show Belan encouraging Kislitsin to do business with Nikulin, Kislitsin offering the credentials he received from Nikulin to Sozen for sale, and Sozen and Kislitsin negotiating the sale price. Moreover, the negotiations between Sozen and Kislitsin establish the value of the stolen Formspring credentials as (1) more than $1,000, which is an element of the 18 U.S.C. § 1029(a)(2) charge in Count Six of the Indictment, and (2) as over $5,000, which is one of the aggravating factors charged in Count Seven of the Indictment.

For the reasons set forth above, the United States respectfully submits that it has made the necessary preliminary showing under *Bourjaily* for this Court to admit the co-conspirator statements contained in email correspondence between Kislitsin, Belan, and Sozen.

## IV. CONCLUSION

The United States therefore moves *in limine* for a preliminary ruling that the proffered co-conspirator statements are admissible pursuant to 801(d)(2)(E) when offered by the United States.

DATED: January 22, 2020

Respectfully submitted,

DAVID L. ANDERSON
United States Attorney

/s/
_____
MICHELLE J. KANE
KATHERINE L. WAWRZYNIAK
Assistant United States Attorneys