ADAM G. GASNER (SBN 201234)
Law Chambers Building
345 Franklin Street
San Francisco, CA 94102
Telephone: 415-782-6000
Facsimile: 415-241-7340
E-Mail: adam@gasnerlaw.com

VALERY NECHAY (SBN 314752)
Law Chambers Building
345 Franklin Street
San Francisco, CA 94102
Telephone: 415-652-8569
E-Mail: valerynechaylaw@gmail.com

Attorneys for Defendant
YEVGENIY ALEXANDROVICH NIKULIN

FILED
FEB 12 2020
SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> YEVGENIY ALEXANDROVICH NIKULIN, <br><br> Defendant. | No. CR-16-00440 WHA <br><br> **DEFENDANT'S OPPOSITION TO THE UNITED STATES' IN LIMINE NO. ONE TO ADMIT ALLEGED CO-CONSPIRATOR STATEMENTS UNDER FED. R. EVID. 801(D)(2)(E)** <br><br> ~~UNDER SEAL~~ |

TO THE UNITED STATES AND ITS ATTORNEYS FOR THE NORTHERN DISTRICT OF CALIFORNIA.

This motion is based upon the authorities cited, Federal Rules of Evidence 801(d)(2)(E), the attached memorandum of points and authorities, any argument before the Court, and all other materials that may be added prior to or during the hearing.

## INTRODUCTION

Defendant YEVGENIY ALEXANDROVICH NIKULIN ("Mr. Nikulin") is charged by indictment with three counts of computer intrusion (Counts One, Four, and Seven), in violation of 18 U.S.C. § 1030(a)(2)(C); two counts of intentional transmission of information, code, or command, causing damage to a protected computer (Counts Two and Eight), in violation of 18 U.S.C. § 1030(a)(5)(A); two counts of aggravated identity theft (Counts Three and Nine), in violation of 18 U.S.C. § 1028A(a)(1); one count of trafficking in unauthorized access devices (Count Six), in violation of 18 U.S.C. § 1029(a)(2); and one count of conspiracy (Count Five), in violation of 18 U.S.C. § 371.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. THE PROFFERED CO-CONSPIRATOR STATEMENTS DO NOT MEET THE THRESHOLD BURDEN TO CONDITIONALLY ADMIT THEM

A trial court may admit an alleged co-conspirator statement over a hearsay objection under Federal Rule of Evidence 801(d)(2)(E) only after finding by a preponderance of the evidence that:

(1) a conspiracy existed;

(2) the declarant and the person against whom the declarant is offered were members of this conspiracy;

(3) the statement was made during the course of the conspiracy, and;

(4) the statement was made in furtherance of the conspiracy.

*Bourjaily v. United States*, 483 U.S. 171 (1987)

2

While the court can consider the statements themselves as some evidence of these foundational requirements, out of court statements are presumptively unreliable and should not be admitted unless corroborated by "fairly incriminating evidence." *See United States v. Silverman*, 861 F.2d 571 (9th Cir. 1998). This means that coconspirator statements do not necessarily become more reliable when they are corroborated by other coconspirator statements. *Id.*

"A coconspirator statement is made "during the course" of the conspiracy if it is made before the objectives of the conspiracy have either failed or been achieved." *United States v. Owens*, 70 F.3d 1118, 1126 (10th Cir. 1995). "Statements which further the conspiracy must be distinguished from mere "idle chatter, narrative declarations, and superfluous casual remarks which do not further the conspiracy." *United States v. Johnson*, 200 F.3d 529 (7th Cir. 2000); *see also United States v. Tamman*, 782 F.3d 543, 553 (9th Cir. 2015).

The defense argues, *infra*, that the governments proffered hearsay statements should be excluded from trial as the government has not shown by a preponderance of the evidence that a conspiracy existed, the declarant and the defendant were members of a conspiracy, the statements were made in the course of a conspiracy, nor that the statements made in furtherance of the conspiracy.

### A. The email exchanges and transactions between Kislitsin, Belan, Sozen, and Tolstik do not implicate Nikulin in their plan

The government first seeks to admit an e-mail thread between Alexey Belan (email:moy.yawik@gmail.com) and Nikita Kislitsin (email: fyofyofyo@hotmail.com) on June 25, 2012. Gov. Mtn in Lim. No. One, pp. 2-3. The government's claim is that "this email confirms that Belan was connecting Kistlitsin with Nikulin, the person who stole the Formspring data." Gov. Mtn in Lim. No. One, p. 3, line 16.

However, this aforementioned e-mail neither mentions Nikulin by name, nor does it create any inferences about the identity of the person Belan and Kislitsin are referring to from the substance of the e-mail or otherwise.

The government goes on to discuss another individual, Mehmet Sozen, who appears three days later in the context of offering the Formspring data for sale to Kislitsin. Gov. Mtn in Lim. No. One, p. 3, line 19. Sozen's name was connected to his email address ibob749@gmail.com, which he used to correspond with Kislitsin. Additionally, Sozen's real name was connected to the Western Union transaction to Kislitsin. However, that email exchange also neither mentions Nikulin by name, nor creates any inferences about the identity of the person who sold Sozen the Formspring data. Gov. Mtn in Lim. No. One, pp. 3-4.

The government then reveals that Sozen sent another person, Oleg Tolstik, a payment of 700 Euros through a Western Union transaction. Likewise, there does not appear to be enough evidence to support the conclusion that Tolstik is Mr. Nikulin's "brute force" decryptor beyond the government's bare allegation.

**B. The November 2012 meeting between Nikulin, Kislitsin, and Tolstikh does not implicate Nikulin in the alleged conspiracy since the discussion was solely focused on a "potential internet business endeavor" and involved individuals not alleged to have been part of the Formspring intrusion conspiracy**

The government finally makes a direct connection to Mr. Nikulin on page 5 of their motion when they refer to a video of Nikulin, Kislitsin, and Tolstikh meeting in November 2012 with multiple other individuals that are *not* alleged to be co-conspirators in the Formspring intrusion. Moreover, the government concedes that this video captured a group of ten individuals discussing "a potential internet café business." Gov. Mtn in Lim. No. One, p. 5, line 21. This video of Nikulin does not contain any discussions regarding the alleged Formspring intrusion conspiracy or any

4

other conspiracy, nor does it capture anyone else discussing the Formspring data intrusion or any other unspecified conspiracy.

At this juncture in the government's motion, there is no articulated connection between Nikulin and Belan, nor is there an articulated connection between Nikulin and Sozen. The connection between Nikulin, Kislitsin, and Tolstikh is tenuous because the evidence of this connection was substantively limited to Nikulin's peripheral involvement in discussions of an internet café business captured on video by an individual present at the meeting.

**C. Kislitsin's statements to FBI in November 2014 are remote in time and unreliable**

The government then describes how years later, in 2014, FBI Special Agents interviewed Kislitsin at the U.S. Embassy in Moscow. Gov. Mtn in Lim. No. One, p. 5, line 25. Among other things, Kislitsin stated at that time he knew Belan conspired with Russian FSB officers to target U.S. citizens to obtain "commercial databases with a goal to sell them for financial gain or to use them for spamming." Kislitsin claims he was also involved in the Zappos database intrusion with Sozen on behalf of Belan. Gov. Mtn in Lim. No. One, p. 6, line 2. Again, none of these initial statements even remotely allege Mr. Nikulin's involvement in these unrelated conspiracies.

Additionally, the mere fact that Belan and Sozen *[by virtue of Sozen's work on "behalf of Belan" id.]* were allegedly conspiring with FSB officers to target American civilians and companies casts doubt on the reliability of Kislitsin's statements to FBI Special Agents. These FBI Special Agents would certainly be aware that the FSB, as an arm of the Russian military, routinely engage in "disinformation" campaigns.

It is an absurd proposition to assume that Kislitsin would disclose allegations that Belan and Sozen were connected to the Russian Intelligence community, *specifically to American intelligence officers*, while he remained on Russian soil. This proposition, if it were true, would expose Kislitsin

to significant likelihood of bodily harm, death, or other retribution by the Russian government, unless Kislitsin's statement was carefully curated and crafted by the FSB, for the sole purpose of spreading misinformation, confusion, and castigating blame on someone else for the intrusions.

There are many unanswered questions about Kislitsin's statements, motives, and why he was not extradited to the U.S. as a co-conspirator while he was in U.S. custody at the U.S. Embassy in Moscow. Kislitsin audaciously made his aforementioned claims with impunity, because he knew the U.S. government couldn't do anything about it as a result of his cloak of protection from the Russian government. As such, his statements are wholly unreliable and should be inadmissible in Mr. Nikulin's trial.

### D. Kislitsin never identifies the individual he is referring to as "Yevgeniy" by his last name, although he refers to all of his other alleged co-conspirators by their last names

Kislitsin claims, "he acquired the Formspring database from 'Yevgeniy' and provided it to Sozen [*who he identified specifically by last name,*] for spamming purposes. Gov. Mtn in Lim. No. One, p. 6, line 4. Perhaps it may be of import to note that the name 'Yevgeniy' is a very common name in Russia and the former Soviet Union. Kislitsin did not identify the individual by his last name; specifically, Kislitsin did not use the name "Nikulin" in reference to the person he was implicating in the Formspring intrusion to FBI Special Agents while he was on Russian soil in 2014. Gov. Mtn in Lim. No. One, p. 6.

Kislitsin claims "he did not make as much money as he had promised 'Yevgeniy' by selling this database, and 'Yevgeniy' had been unhappy with Kislitsin after the transaction." Gov. Mtn in Lim. No. One, p. 6, line 6. Kislitsin said that Oleg Tolstisk [*who he identified specifically by last name,*] "was a real person and common acquaintance of Kislitsin and Yevgeniy. Kislitsin said he had met Yevgeniy in person on one occasion through Oleg Tolstikh." Gov. Mtn in Lim. No. One,

p. 6. Line 7. This begs the unanswered question of how did he know that 'Yevgenuiy' was a "common acquaintance" of Tolstikh if he only met 'Yevgeniy' on only one occasion?

The government is attempting to sanitize the veracity of Kislitsin's claims by pointing to his statement that he "met 'Yevgeniy' on one occasion through Oleg Tolstikh," and using the meeting from 2012, where Nikulin happens to be present while discussing a potential "café internet business" to bolster their claim that Mr. Nikulin is the "Yevgeniy" that Kislitisin was implicating in the Formspring data intrusion.

There are many issues with the mental gymnastics it takes to arrive at that conclusion. One of the Government's troubling and unreliable connections is that Kislitin's statement he had met "'Yevgeniy' on only one occasion," does not include any specificity regarding time, date, and place; certainly not enough to conclude by a preponderance of the evidence that Mr. Nikulin was the individual Kislitsin had been describing as "Yevgeniy." Again, the name Yevgeniy, just like the names Boris, Anna, and Alex, are very popular and commonplace name in Russia and the former Soviet Union, where individual identities are distinguished primarily based on paternal middle and last names.

In all likelihood there was at least one, if not multiple other individuals, named 'Yevgeniy' present during the "potential internet café business" discussions in 2012 where Kislitsin was present. Kistlitsin referenced the last names of all of the other individuals he discussed with FBI in 2014. The fact that he did not use the name "Nikulin" is significant because he could have been implicating another individual by the name of 'Yevgeniy' with a different last name either accidentally or on purpose.

## CONCLUSION

The government has not met their burden of proof in order to conditionally admit the alleged co-conspirators. Based on the arguments delineated above, Mr. Nikulin respectfully requests that this Court exclude all of the aforementioned evidence at his jury trial.

DATED: February 12, 2020

/s/ *Valery Nechay*
Valery Nechay, Esq.
Attorney for Defendant
YEVGENIY ALEXANDROVICH NIKULIN

DATED: February 12, 2020

/s/ *Adam Gasner*
Adam G. Gasner, Esq.
Attorney for Defendant
YEVGENIY ALEXANDROVICH NIKULIN

GASNER CRIMINAL LAW
Law Chambers Building
345 Franklin Street
San Francisco, CA 94102