DAVID L. ANDERSON (CABN 149604)
United States Attorney

HALLIE HOFFMAN (CABN 210020)
Chief, Criminal Division

MICHELLE J. KANE (CABN 210579)
KATHERINE L. WAWRZYNIAK (CABN 252751)
Assistant United States Attorney

    1301 Clay Street, Suite 340S
    Oakland, California 94612
    Telephone: (510) 637-3680
    FAX: (510) 637-3724
    michelle.kane3@usdoj.gov
    katherine.wawrzyniak@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) No. CR 16-00440 WHA |
|     Plaintiff, | ) |
| | ) **UNITED STATES' MOTION IN LIMINE NO.** |
| v. | ) **SIX TO EXCLUDE HEARSAY STATEMENTS** |
| | ) **BY NIKITA KISLITSIN** |
| YEVGENIY ALEXANDROVICH NIKULIN, | ) |
|     Defendant. | ) Trial: March 9, 2020 |
| | ) Time: 7:30 a.m. |
| | ) Courtroom No. 12 |

**I.  INTRODUCTION**

Defendant Nikulin is charged with conspiring with others, both known and unknown, to traffic stolen Formspring members' credentials (user names, email addresses, and passwords) in 2012 and 2013.  One of the known co-conspirators is Nikita Kislitsin, a Russian national, who has been charged with the same offense in a separate indictment.  At a basic level, the United States alleges that Nikulin was the Formspring hacker; Nikulin infiltrated the Formspring systems and stole Formspring user credentials.  Kislitsin was the broker; he got the credentials from Nikulin and offered them for sale.

Nikulin is also charged with offenses related to computer intrusions, damage, and aggravated

identity theft in connection with his hacking of LinkedIn and Dropbox computers, however, the Indictment does not allege any involvement by Kislitsin with those offenses and the United States does not intend to offer any evidence connecting Kislitsin to the attacks on LinkedIn and Dropbox or on the handling of any data stolen from those companies.

Kislitsin was indicted in March of 2014.[1]  The next month, April 2014, Kislitsin went to the U.S. Embassy in Moscow to be interviewed by agents from the Federal Bureau of Investigation (FBI). During the interview, Kislitsin made statements inculpating Nikulin in the Formspring, Dropbox, and LinkedIn hacks.

The United States has always viewed the statements Kislitsin made in the 2014 interview as testimonial.  Kislitsin remains in Russia and is not available to testify in Nikulin's trial.  Kislitsin was never subject to cross-examination on these statements.  Therefore, the United States believes the interview statements are inadmissible and should be excluded from trial.  To interject the Kislitsin statements when Kislitsin is not subject to cross-examination violates the Confrontation Clause of the Sixth Amendment.

## II. DETAILS REGARDING KISLITSIN'S STATEMENTS

Kislitsin was interviewed on April 2, 2014.  The interview was not recorded, but the FBI agents prepared a report of the interview, which the United States provided to the defense.  YN013922-29. According to the report, at the outset of the interview, which was conducted in English, the FBI agents advised Kislitsin that he had been charged in the United States and provided him with advice of rights forms in both English and Russian.  Kislitsin affirmed that he understood his rights, signed the forms, and proceeded with the interview.  He indicated that he was "open for collaboration" and wanted to "mitigate problems."  The agents also allowed Kislitsin to review the charges against him, which involved his sale of the stolen Formspring database.

Kislitsin talked about multiple topics in the interview, including other hackers who have no relation to the charges in this case.  The government does not believe that these portions of the interview

---

[1] *United States v. Kislitsin*, CR 14-000126 EXE (N.D. Cal.).  That indictment remained under seal until this week.  Defendant Nikulin was first charged by sealed complaint in this case approximately two and a half years later, on October 3, 2016.  The charges were publicly revealed in the Indictment, which was filed on October 20, 2016.

are relevant to Nikulin's trial.

The first part of the interview focused on Aleksey Belan and the hack of Zappos.com in 2012. Kislitsin stated that Belan obtained e-commerce databases with a goal to sell them for financial gain or use them for spamming purposes. Kislitsin later stated that Belan was also responsible for other hacks, including Evernote. Nikulin is not charged in connection with the Zappos or Evernote hacks and there is no evidence of his involvement.[2] The government does not believe that these portions of the interview are relevant to Nikulin's trial.

### A. Kislitsin's Statements Regarding "Yevgeniy's" Compromises of LinkedIn, Dropbox, and Formspring.

During the second half of the interview, Kislitsin discussed the Formspring intrusion. This is the portion of the interview that is relevant to the Nikulin trial. Kislitsin said that Belan was not involved in the intrusion itself. According to Kislitsin, he knew that Yevgeniy possessed the Formspring database. Kislitsin said he acquired the database from Yevgeniy and sold it to Mehment Sozen, a/k/a "Rais." Kislitsin explained how Sozen paid through a third party. Kislitsin said that Yevgeniy was unhappy with the amount of money he ultimately received for the Formspring credentials.

Although Kislitsin did not know Yevgeniy's last name, he knew that his nickname was "Zhenya." Kislitsin said that Yevgeniy was living in Moscow, was very wealthy, and owned multiple Maserati cars. Kislitsin described Yevgeniy as the "Putin" of the hacking world.

Kislitsin said that Yevgeniy compromised LinkedIn and sold the data for hundreds of thousands of dollars. Kislitsin also believed Yevgeniy had databases for Google and Facebook, but Kislitsin did not know if Yevgeniy had actually conducted the compromises of those company systems.

Kislitsin described how Yevgeniy used the stolen LinkedIn information to target specific employees, such as network administrators of specific companies. Yevgeniy then used known passwords for those targets to login to the targets' email accounts. Yevgeniy then analyzed the targets' email communications to identify other accounts and passwords, such as VPN credentials. These credentials allowed Yevgeniy to further exploit the targets' company networks. Kislitsin said that if

---

[2] Belan has been charged with the Zappos and Evernote hacks, which occurred in 2012 and 2013, respectively. *See United States v. Belan*, CR 13-359 EXE (N.D. Cal.); *United States v. Belan*, CR 12-331 (D. Nev.)

Yevgeniy was unable to access a specific employee's email account using credentials he had obtained, he would compromise an email account belonging to the employee's friend and use it to send a message to the employee with a malicious link that would allow Yevgeniy to obtain the employee's credentials.

Kislitsin also said that Yevgeniy claimed to have access into the Dropbox network and to have acquired numerous password "containers" or databases stored in users' Dropbox accounts. According to Kislitsin, these containers allowed Yevgeniy to further exploit other accounts owned by the user. Yevgeniy told Kislitsin he had trouble cracking the encrypted passwords in the Dropbox containers but eventually found someone to help by writing software that would break the encryption algorithm.

According to Kislitsin, Yevgeniy had data buyers who were "big guys" – serious people who pay with cash and likely were not from Russia, although Kislitsin did not know them specifically.

**B.    Kislitsin's Repetition of Information on Belan Provided by Another Individual.**

Kislitsin also shared information with the FBI that he said he had received from another individual. Kislitsin said that, according to this individual, Belan assisted an FSB captain with assignments that, in Kislitsin's belief, involved targeting specific email accounts and other data. Kislitsin said that the other individual claimed that the FSB captain was building profiles on various individuals using "compromising information." As with the earlier portion of the interview regarding Belan, the government does not believe these statements are relevant to Nikulin's trial.

**C.    Defense Mischaracterization of Kislitsin's Statements in Opening Statements**

At the end of the defense opening statement on March 10, 2020, counsel stated the following about Kislitsin:

> In 2014, years later, the FBI locates and accuses Mr. Kislitsin of being involved in the sale of the Formspring data. But he is in Moscow. They can't get him here. They interview him in the Embassy. In that meeting he discloses that Belan, the person he was speaking to -- the person listed as another relevant person Alexsey Belan -- didn't conspire with Mr. Nikulin but, in fact, conspired with Russian FSB agents -- that's Russian Intelligence, formerly the KGB -- to obtain American commercial databases for financial gain. That's the route and that's the source of these breaches. Not this man. To the extent the Government attempts to present evidence of Mr. Kislitsin, I assure you they will never call him as a witness. They will never subject him to Cross-Examination. They will never let you see him questioned under oath.

When compared to the FBI's report of Kislitsin's statements, it is clear that defense has not accurately summarized what Kislitsin said. Kislitsin was clear that Belan was responsible for several

U.S. MIL RE KISLITSIN STMTS.
CR 16-00440 WHA                                              4

hacks, including Zappos and Evernote, that related to "e-commerce databases." Kislitsin was equally clear when relating the statements of another person that he believed Belan's work with a Russian FSB captain involved targeting specific email accounts and other data, in the context of assembling "compromising information" on individuals. Kislitsin did not say that Belan conspired with Russian FSB agents to obtain American commercial databases for financial gain.

### III.   ARGUMENT

#### A.   Admitting the Kislitsin Statements Would Violate the Confrontation Clause.

Kislitsin's s 2014 statements to the FBI are hearsay, inadmissible without some exception or exclusion. Moreover the statements that the defendant has described in opening statements are double hearsay – they involve Kislitsin relating what someone else told him. Although Kislitsin is alleged to be a co-conspirator in the sale of the Formspring data, none of the statements were made in furtherance of the conspiracy, and they are consequently not admissible under Fed. R. Evid. § 801(d)(2)(E).

The legal analysis therefore begins and ends with the Supreme Court's holding in *Crawford v. Washington*, 541 U.S. 36, 59 (2004). "Testimonial statements of witnesses absent from trial have been admitted only where the declarant is unavailable, and only where the defendant has had a prior opportunity to cross-examine." Police interrogations are plainly testimonial, and "[w]here testimonial statements are at issue, the only indicium of reliability sufficient to satisfy constitutional demands is the one the Constitution actually prescribes: confrontation." *Crawford*, 541 U.S. at 68-69.

*Crawford* controls in this case. Kislitsin's statements to the FBI in 2014 were "testimonial." *Id.*, at 52 ("Statements taken by police officers in the course of interrogations are also testimonial under even a narrow standard"); *United States v. Lindsey*, 634 F.3d 541, 553 (9th Cir. 2011) (accomplice's statements to FBI agent "qualify as testimonial statements"). Kislitsin may be "unavailable" within the meaning of Fed. R. Evid. 804(a)(5). However, it is undisputed that Nikulin has never had an opportunity to cross-examine Kislitsin.

Admitting Kislitsin's statements could be reversible error. *See e.g.*, *United States v. Esparza*, 791 F.3d 1067, 1074 (9th Cir. 2015) ("[A] Confrontation Clause violation is not harmless where the erroneously admitted evidence could have significantly altered the evidentiary picture."). The government plans to have one of the FBI agents who was present at the 2014 interview identify Kislitsin

in a video from March 2012, but the government has no intention of having that agent discuss the Kislitsin interview or the statements Kislitsin made. In light of the Sixth Amendment issues, defendant should not be allowed to introduce selective portions of the Kislitsin statements during cross examination of the agent.

### B. The Statements Should Also be Excluded under Rule 403.

The Court should also exclude this evidence pursuant to Fed. R. Evid. 403 on the grounds that any minimal probative value is substantially outweighed by a danger of unfair prejudice, confusing the issues, and misleading the jury. The defense in this case has already mischaracterized Kislitsin's statements in an attempt to confuse the discussion of Belan's alleged hacks of e-commerce databases for his own commercial gain with the separate discussion of his alleged work for an FSB captain targeting individuals for compromising information. Admitting any evidence of Kislitsin's hearsay, or double hearsay, on these points creates a substantial likelihood that the jury will not understand the statements and their context, and will make a decision based on inaccurate information.

## IV. CONCLUSION

For the foregoing reasons, the United States requests that the Court exclude the Kislitsin's statements from evidence in their entirety. The government should not be allowed to elicit any of the statements on direct examination, and the defense should be barred from asking questions about the statements on cross examination.

DATED: March 12, 2020

Respectfully submitted,

DAVID L. ANDERSON
United States Attorney

/s/
MICHELLE J. KANE
KATHERINE WAWRZYNIAK
Assistant United States Attorney