DAVID L. ANDERSON (CABN 149604)
United States Attorney

HALLIE HOFFMAN (CABN 210020)
Chief, Criminal Division

MICHELLE J. KANE (CABN 210579)
KATHERINE L. WAWRZYNIAK (CABN 252751)
Assistant United States Attorney

     1301 Clay Street, Suite 340S
     Oakland, California 94612
     Telephone: (510) 637-3680
     FAX: (510) 637-3724
     michelle.kane3@usdoj.gov
     katherine.wawrzyniak@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. CR 16-00440 WHA |
| Plaintiff, | |
| v. | **UNITED STATES' MEMORANDUM RE LEGAL STANDARDS FOR MID-TRIAL CONTINUANCE OR MISTRIAL** |
| YEVGENIY ALEXANDROVICH NIKULIN, | |
| Defendant. | Trial: March 9, 2020 |
| | Time: 7:30 a.m. |
| | Courtroom No. 12 |

## I.  BACKGROUND

Defendant Yevgeniy Nikulin is charged in an Indictment with three counts of computer intrusion, in violation of 18 U.S.C. § 1030(a)(2)(C); two counts of intentional transmission of information, code, or command causing damage to a protected computer, in violation of 18 U.S.C. § 1030(a)(5)(A); two counts of aggravated identity theft, in violation of 18 U.S.C. § 1028A(a)(1); one count of trafficking in unauthorized access devices, in violation of 18 U.S.C. § 1029(a)(2); and one count of conspiracy, in violation of 18 U.S.C. § 371.

### A.      Start of Jury Trial

Trial began on March 9, 2020, with jury selection.  At the time, there were several known cases of the novel coronavirus (COVID-19) in the Northern District of California, however, the World Health Organization (WHO) had not yet declared a pandemic.  There were no restrictions on travel or movement, though authorities were generally recommending taking precautions against the spread of germs, such as frequent hand washing.

Given the context and the planned trial schedule of three days of trial to be followed by three dark days (*see* ECF 164), the parties and the Court agreed that it would be prudent to select four alternate jurors, instead of the customary two.  During voir dire, the Court excused potential jurors who self-reported symptoms of illness.  By the end of the day on March 9, 2020, sixteen jurors—twelve regular jurors and four alternates—had been sworn and impaneled as the jury in the case.

Trial proceeded as scheduled on March 10 and 11, 2020.  Both parties gave opening statements and then the United States presented the testimony of seven witnesses.  At the end of the trial day on March 11, 2020, the Court instructed the jurors to return promptly at 7:45 a.m. on March 17, 2020.

### B.      The COVID-19 Pandemic

Since trial recessed on March 11, there have been several significant developments related to the spread and containment of COVID-19.  Whereas there were approximately 105 confirmed COVID-19 cases in the state of California on March 11, 2020, there are now approximately 454 confirmed cases in the state.  The numbers are expected to rise as more people are tested.  On March 11, 2020, the WHO declared a pandemic, and the United States blocked most visitors from Continental Europe.  Organizations across the United States began cancelling events.  On March 13, 2020, the President of the United States declared the COVID-19 outbreak a national emergency.  International travel restrictions expanded, and schools began shuttering across the country.  Airlines drastically cut back their flight schedules.  Over the weekend, the Governor of California directed that all persons over the age of sixty-five should self-isolate at home; he also ordered the closure of all bars.

On Monday, March 16, 2020, local authorities took their most aggressive containment actions to date:  six Bay Area counties—San Francisco, Santa Clara, San Mateo, Marin, Contra Costa and Alameda—announced a "shelter in place" order for all residents.  The order goes into effect at 12:01

1  a.m. on March 17, 2020 and will continue for three weeks, through April 7, 2020.  The orders generally

2  prohibit gatherings of people and require county residents to stay in their homes except as required for

3  essential business or life activities.

4      The rapidly evolving situation around COVID-19 raises thorny issues for the Nikulin trial.  The

5  Court and the parties have been conferring regarding trial logistics, including witness issues, conditions

6  in the jail where defendant is housed, and what directions should be provided to jurors.  Earlier today,

7  defendant moved for a continuance, and after conferring with counsel for defendant and the United

8  States, the Court issued an order suspending trial until at least March 19, 2020. (ECF 182, 183.)

9                    **II.      LEGAL STANDARDS**

10     To aid the Court's analysis of the legal issues at hand, the United States now submits this brief

11  regarding the applicable standards for mid-trial continuances and mistrials.  In sum, the Court has broad

12  discretion to grant a continuance based upon good cause.  The Court may also declare a mistrial if it

13  determines that there is manifest necessity to do so.

14     **A.  Mid-Trial Continuance**

15     The Speedy Trial Act designates the time within which a trial must "commence," 18 U.S.C.

16  3161(c)(1), (h).  It does not govern mid-trial continuances.  <u>See</u> <u>Barker v. Wingo</u>, 407 U.S. 514 (1972);

17  <u>Love v. Morton</u>, 944 F. Supp. 379, 390 n.12 (D. N.J. 1996)  (recognizing that where "trial had already

18  begun, a recess would present no speedy trial problems").

19     Once trial commences, this Court is vested with "broad discretion" to grant or deny a

20  continuance.  <u>Morris v. Slappy</u>, 461 U.S. 1, 11 (1983); <u>United States v. Garrett</u>, 179 F.3d 1143, 1144-45

21  (9th Cir. 1999) (en banc); <u>United States v. Flynt</u>, 756 F.2d 1352, 1358 (9th Cir. 1985); <u>cf. also</u> <u>United</u>

22  <u>States v. Gonzalez-Lopez</u>, 548 U.S. 140, 152 (2006) (a trial court is afforded "wide latitude" in

23  balancing a defendant's rights "against the demands of its calendar").  Because this Court's discretion is

24  broad, its decision "will not be disturbed on appeal absent clear abuse" amounting to an "arbitrary or

25  unreasonable" ruling, <u>Flynt</u>, 756 F.2d at 1358, that prejudices the defendant, <u>United States v. Wilkes</u>,

26  662 F.3d 524, 543 (9th Cir. 2011); <u>United States v. Zamora-Hernandez</u>, 222 F.3d 1046, 1049 (9th Cir.

27  2000).  Neither defendant nor the government needs "to establish a compelling reason to obtain a

28  continuance." <u>Garrett</u>, 179 F.3d at 1145.

1        If circumstances necessitate a continuance during trial, this Court may exercise its broad

2  discretion to grant one, admonishing the jury not to discuss the case while in recess.  Ninth Circuit law

3  would support such a continuance.  See Hamilton v. Vasquez, 17 F.3d 1149, 1159 (9th Cir. 1994),

4  implicitly overruled on other grounds as recognized by Coleman v. Calderon, 210 F.3d 1047, 1049 n.1

5  (9th Cir. 2000).  In Hamilton, a capital case, the trial court informed prospective jurors during jury

6  selection that "there would by a two-week recess during the winter holidays."  Id. at 1159.  In the midst

7  of jury deliberations, after the jury had deliberated for two-and-a-half days and after learning that one

8  juror was unavailable the week before Christmas, the trial court ordered an 18-day adjournment.  Id.

9  That adjournment did not deny the defendant due process.  Id.  Because it was pre-planned and

10  supported by "a legitimate reason," the adjournment was permissible.  Id.  The Circuit distinguished a

11  state case in which a recess order was deemed impermissible because "the trial court did not specify the

12  reason for the recess, and there was no indication of any exceptional circumstances which warranted the

13  adjournment."  Id.  Provided that there is at least a "legitimate reason" to recess during trial, a recess

14  should be permissible.  See id.

15        Other cases support that conclusion.  In United States v. Smith, 44 F.3d 1259 (6th Cir. 1995), the

16  Sixth Circuit upheld a 32-day mid-trial continuance to accommodate the district judge's vacation plans

17  and the defendant's illness.  Id. at 1267-69.  The district court protected against any potential prejudice

18  from the delay by instructing the jury "to keep the case fresh in their minds and to keep an open mind

19  until all the evidence was in."  Id. at 1268.  In United States v. Pandozzi, 878 F.2d 1526 (1st Cir. 1989),

20  the First Circuit affirmed a one-week continuance during jury deliberations that was granted "due to the

21  death of a juror's father."  Id. at 1534.  And in Reynolds v. Mabry, 574 F.2d 978 (8th Cir. 1978), the

22  Eighth Circuit rejected the defendant's claim that he was denied a fair trial due to a week-long

23  continuance granted on the second day of trial "due to the illness of one of the government's key

24  witnesses."  Id. at 979, 981-82 & n. 1; see also Baez-Cruz v. Municipality of Dorado, 780 F. Supp. 149,

25  151-52 (D. P.R. 2011) (granting mid-trial adjournment of 80 days); Lango v. Lafler, 2009 WL 270163,

26  at *5-6 (E.D. Mich. 2009) (denying habeas relief where state trial court granted 11-day mid-trial

27  continuance); but see United States v. Brandner, 90 F. Supp. 3d 883, 899 (D. Alaska 2015) (mistrial was

28  required after a 12-week midtrial continuance necessitated by defense counsel's hospitalization).

### B.  Mistrial

The Double Jeopardy Clause prohibits putting a defendant in jeopardy twice for the same offense.  U.S. Const. amend. V.  Jeopardy attaches when a jury is empaneled and sworn.  <u>Martinez v. Illinois</u>, 572 U.S. 833, 834 (2014).

Even after jeopardy attaches, however, re-prosecution is not barred if the trial was terminated because of "manifest necessity."  <u>Arizona v. Washington</u>, 434 U.S. 497, 505 (1978).  Accordingly, "retrial may be permitted after a mistrial where a trial court determines that, 'taking all the circumstances into consideration, there is a manifest necessity for [a mistrial], or the ends of public justice would otherwise be defeated.'"  <u>Gouveia v. Espinda</u>, 926 F.3d 1102, 1111 (9th Cir. 2019) (quoting <u>United States v. Perez</u>, 22 U.S. 579, 580 (1824) (alteration in original).  Applying the manifest-necessity standard, "a trial can be discontinued . . . when failure to discontinue would defeat the ends of justice."  <u>Wade v. Hunter</u>, 336 U.S. 684, 690 (1949).

In evaluating "manifest necessity," the Ninth Circuit looks to "whether the district court (1) heard the opinions of the parties about the propriety of the mistrial, (2) considered the alternatives to a mistrial and chose the alternative least harmful to a defendant's rights, and/or (3) acted deliberately instead of abruptly."  <u>United States v. Chapman</u>, 524 F.3d 1073, 1082 (9th Cir. 2008) (punctuation altered); <u>see also</u> <u>United States v. Sisk</u>, 629 F.2d 1174, 1178 (6th Cir. 1980) (characterizing "necessity" as a "reflect[ion] [of] a trial judge's estimate of the fairness to both sides of continuing a trial").  The standard is not applied mechanically or without attention to the particular problem confronting the trial judge.  <u>Washington</u>, 434 U.S. at 506. "Necessity" is not to be interpreted in a strict, literal sense to mean that that there was no other choice.  <u>Id.</u> at 511.

"[W]here the judge's determination is based on his or her own observations and personal assessment that a fair trial would be impossible, that view must be given special deference."  <u>Chapman</u>, 524 F.3d at 1082.  Thus, even though some trial judges might have proceeded differently, a reviewing court must still accord the highest degree of respect and deference to the trial judge's decision based on her assessment of the relevant facts and circumstances of the particular case.  <u>Washington</u>, 434 U.S. at 511; <u>see also</u> <u>Walls v. Konteh</u>, 490 F.3d 432, 439 (6th Cir. 2007) (rejecting defendant's suggestion that a mistrial was not strictly "necessary" because "some trial judges might have proceeded with the trial");

1   cf. Chapman, 524 F.3d at 1082 (quoting United States v. Bates, 917 F.2d 388, 395 (9th Cir. 1990))

2   (characterizing the necessity analysis as "weed[ing] out 'irrational or irresponsible behavior by the trial

3   judge'").

4          A lengthy mid-trial delay may demonstrate manifest necessity to declare a mistrial.  In Chapman,

5   the Ninth Circuit noted that a trial judge's determination that a jury's attention span could not withstand

6   a delay of between two and four weeks was due substantial deference in determining the propriety of a

7   mistrial.  524 F.3d at 1083; see also Brandner, 90 F. Supp. 3d at 887 (declaring mistrial after 16-week

8   mid-trial delay).  That is true even in cases where the length of a mid-trial delay is not yet known.  In

9   Walls v. Konteh, 490 F.3d 432, 434 (6th Cir. 2007), the Sixth Circuit found that the trial court's sua

10  sponte declaration of a mistrial, over the defendant's objection, was based on manifest necessity, so that

11  the retrial of the defendant was not barred by the double jeopardy clause.  There, the terrorist attacks of

12  September 11, 2001, occurred on the second day of the trial, and the courthouse was evacuated and

13  closed that day.  Id. at 434-35.  While the judge considered the alternative of instructing the jurors to

14  return next day, he did not do so because he did not know if the courthouse would be open. Additionally,

15  "he expressed concern that the jurors would be so distracted by outside events that they would be unable

16  to focus on the trial, thereby compromising [defendant]'s right to a verdict based upon the evidence.  Id.

17  at 434.  On the other hand, at least one Second Circuit decision held that ordering a mistrial was not

18  manifestly necessary where a 7-10-day mid-trial adjournment was an apparent alternative.  Dunkerley v.

19  Hogan, 579 F.2d 141, 147-48 (2d Cir. 1978).

20  //

21  //

22  //

23  //

24  //

25  //

26  //

27  //

28  //

1

### III.    CONCLUSION

2      The United States is still evaluating defendant's motion for a 30-day continuance, including

3  whether such a long continuance would prejudice the government's case, and/or be practical given the

4  current uncertainties about COVID-19.  For now, the government merely wanted to advise the Court of

5  the relevant legal authority.

6

7  DATED: March 16, 2020                    Respectfully submitted,

8                                           DAVID L. ANDERSON
                                            United States Attorney
9

10                                          /s/_____

11                                          MICHELLE J. KANE
                                            KATHERINE WAWRZYNIAK
12                                          Assistant United States Attorney

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28