1   KEKER, VAN NEST & PETERS LLP
LAURIE CARR MIMS - # 241584
2   lmims@keker.com
FRANCO MUZZIO - # 310618
3   fmuzzio@keker.com
DEEVA SHAH - # 319937
4   dshah@keker.com
633 Battery Street
5   San Francisco, CA 94111-1809
Telephone:   415 391 5400
6   Facsimile:   415 397 7188

7   Attorneys for Witness Ganesh Krishnan

8                  UNITED STATES DISTRICT COURT

9                NORTHERN DISTRICT OF CALIFORNIA

10                 SAN FRANCISCO DIVISION

| | |
|---|---|
| 11  UNITED STATES OF AMERICA, | Case No. CR 16-00440 WHA |
| 12          Plaintiff, | **MOTION BY GANESH KRISHNAN TO MODIFY TRIAL SUBPOENA** |
| 13      v. | Date:       April 30, 2020 |
| 14  YEVGENIY ALEKSANDROVICH NIKULIN, | Time:      12:00 p.m.<br>Judge:    Hon. William H. Alsup |
| 15 | Dept.:    Courtroom 12 – 19th Floor |
| 16          Defendant. | Date Filed: October 4, 2016 |

# Table of Contents

Page

I.    INTRODUCTION ..................................................................................................5

II.   BACKGROUND ...................................................................................................6

      A.    The COVID-19 pandemic has made it unsafe for individuals to engage in
            public gatherings throughout the United States. ......................................6

      B.    Mr. Krishnan's preexisting condition puts him at risk of serious illness
            from COVID-19...........................................................................................8

III.  ARGUMENT .........................................................................................................9

      A.    A remote deposition will allow Mr. Krishnan to provide reliable testimony
            while protecting his health and preserving Mr. Nikulin's confrontation
            rights. ......................................................................................................10

      B.    In the alternative, allowing Mr. Krishnan to testify via videoconference
            will not deprive Defendant Nikulin of his rights under the Sixth
            Amendment.................................................................................................13

            1.    The Court's videoconference system will allow for rigorous
                  adversarial testing and ensure the reliability of Mr. Krishnan's
                  testimony......................................................................................14

            2.    Remote testimony is necessary to protect Mr. Krishnan's health..............16

IV.   CONCLUSION....................................................................................................17

1380174

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Federal Cases**

4

*Coy v. Iowa,*
    487 U.S. 1012 (1988)...........................................................................................................11

5

6

*Delaware v. Van Arsdall,*
    475 U.S. 673 (1986)...........................................................................................................13

7

8

*Furlow v. United States,*
    644 F.2d 764 (9th Cir.), *cert. denied*, 454 U.S. 871, 102 S. Ct. 340 (1981)............................11

9

*Horn v. Quarterman,*
    508 F.3d 306 (5th Cir. 2007) .............................................................................................16

10

11

*Julian v. Metro. Life Ins. Co.,*
    17-CV-957 (AJN) (BCM), 2020 WL 1699983 (S.D.N.Y. Apr. 7, 2020)................................10

12

*Maryland v. Craig,*
    497 U.S. 836 (1990)..........................................................................................13, 14, 15, 16

13

14

*U.S. v. Carter,*
    907 F.3d 1199 (9th Cir. 2018) ...................................................................................14, 16, 17

15

16

*U.S. v. Gigante,*
    166 F.3d 75 (2d Cir. 1999).................................................................................................16

17

18

*U.S. v. Harris,*
    No. CR 17-00001 HG-01, 2019 WL 178641 (D. Haw. Jan. 11, 2019) ................................17

19

*U.S. v. Medjuck,*
    156 F.3d 916 (9th Cir. 1998) ..............................................................................................12

20

21

*U.S. v. Rosenau,*
    870 F. Supp. 2d 1109 (W.D. Wash. 2012)......................................................................15, 16

22

23

*United States v. Bergeson,*
    425 F.3d 1221 (9th Cir. 2005) ..............................................................................................9

24

*United States v. Jinian,*
    No. CR-09-1103-JSW EDL, 2010 WL 3910138 (N.D. Cal. Oct. 5, 2010) ...........................11

25

26

*United States v. McGowan,*
    590 F.3d 446 (7th Cir. 2009) ..............................................................................................11

27

28

*Vasquez v. City of Idaho Falls,*
    No. 4:16-cv-00184-DCN, 2020 WL 1860394 (D. Idaho Apr. 13, 2020) ...............................10

**Other State Cases**

*Bush v. State*,
    193 P.3d 203 (Wyo. 2008) ......................................................................................16

**Federal Statutes**

Fed. R. Crim. Proc. 15 ................................................................................9, 10, 11, 12

Fed. R. Crim. Proc. 17 .................................................................................................6

Fed. R. Evid. 804 .......................................................................................................11

MOTION BY GANESH KRISHNAN TO MODIFY TRIAL SUBPOENA
Case No. CR 16-00440 WHA

1380174

1

<u>**NOTICE OF MOTION AND MOTION**</u>

2      **PLEASE TAKE NOTICE** that on April 30, 2020, at 12:00 p.m., or as soon thereafter as

3  this matter can be heard, in Courtroom 12 of the United States District Court for the Northern

4  District of California, located at 450 Golden Gate Avenue, San Francisco, California 94102,

5  Ganesh Krishnan will, and hereby does, move the Court for an order modifying the Government's

6  subpoena served on him on December 13, 2019, and allowing him to testify through remote

7  deposition or, in the alternative, through a two-way videoconference during trial.  This Motion is

8  based on this submission, the accompanying declarations and exhibits, and any argument

9  presented to the Court.  Mr. Krishnan requests that the hearing on this motion take place by

10  videoconference if practicable to minimize the health risk to all participants.

11

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

12

**I.     INTRODUCTION**

13      Over the last three months, COVID-19 has spread across the globe, infecting more than

14  half a million people in the United States alone.  The exponential growth of the virus has forced

15  local governments throughout the country to issue shelter-in-place orders, requiring individuals to

16  stay in their homes to the maximum extent possible.  Although we are still learning about the

17  novel coronavirus, it has become clear that a subset of the population with preexisting conditions

18  are at greater risk of developing serious illness from COVID-19.  Ganesh Krishnan, a former

19  LinkedIn employee subpoenaed by the Government to testify at trial, is such an individual.  *See*

20  Declaration of Ganesh Krishnan (Krishnan Decl.) ¶¶ 2-3; 8-10.[1]  Due to the seriousness of his

21  preexisting medical condition and the significant risks posed if he were to be exposed to COVID-

22  19, Mr. Krishnan's doctor has instructed him to avoid travel and public gatherings until the local

23  shelter orders are lifted.  *Id.* ¶ 10, Ex. D (email correspondence with Mr. Krishnan's doctor).

24      This Court has stated that trial will likely resume on May 4 regardless of whether the local

25  shelter orders are lifted.  Dkt. 207 at 4.  Due to the likelihood that the shelter orders may not be

26

27

28

---

[1] Because Mr. Krishnan's declaration contains personal confidential information including details regarding his medical condition and attaches medical reports and correspondence with medical professionals regarding Mr. Krishnan's health, Mr. Krishnan has provisionally filed his declaration under seal.  He has, concurrently with the filing of this motion, filed a motion to seal the confidential portions of his declaration and its attachments.

1380174

lifted by May 4, Mr. Krishnan requests that the Court allow him to testify through a remote deposition or, in the alternative, through two-way videoconference at trial. Federal Rule of Criminal Procedure 17 affords this Court the authority to modify a trial subpoena if compliance by the witness would be unreasonable or oppressive. Moreover, several courts have held that ensuring the health and safety of a witness can require the use of remote depositions and testimony in place of traditional face-to-face witness examination. If trial will resume before shelter orders are lifted, allowing Mr. Krishnan to testify remotely is necessary to avoid the substantial risk to his health created by COVID-19.

## II.    BACKGROUND

### A.    The COVID-19 pandemic has made it unsafe for individuals to engage in public gatherings throughout the United States.

This Court began Defendant Nikulin's trial on March 10, 2020. On March 11, following two days of witness testimony, the Court excused the jury for six days until March 17 due to preexisting conflicts in the Court's and counsel's calendars. In the interim, it became clear that COVID-19 had arrived in California. On March 16, after new cases and hospitalizations increased at an alarming rate, six Bay Area counties – including San Francisco County where this Court is located and Alameda County where Mr. Krishnan resides – issued shelter-in-place orders that required residents "to self-isolate in their places of residence to the maximum extent feasible . . . to slow the spread of COVID-19 to the maximum extent possible" for three weeks through April 7.[2]

Following the issuance of those orders, Defendant Nikulin requested that the Court grant a 30-day continuance in the "best interests of the public and the defendant." Dkt. 182 at 2. He asked the Court to delay the trial "to a future date *in concert with county, state, and federal directives regarding public gatherings* in the midst of the Covid-19 pandemic." *Id.* at 1 (emphasis added.) After briefly suspending the trial for two days and conferring with counsel, the Court granted Defendant Nikulin's motion and continued the trial until April 13, the Monday

---

[2] *See, e.g.,* City and County of San Francisco, Order of the Health Officer No. C19-07, March 16, 2020, https://www.sfdph.org/dph/alerts/files/HealthOrderC19-07-%20Shelter-in-Place.pdf.

1380174

1   following the end-date of the shelter orders issued on March 17.

2         In the days following the trial's initial continuance, the novel coronavirus continued to

3   spread exponentially.  As the virus overwhelmed healthcare systems in several European

4   countries, governors across the United States issued statewide shelter-in-place orders.  California

5   Governor Gavin Newsom, the first state executive to issue such an order, did so on March 19,

6   2020.[3]  That order remains in effect "until further notice."[4]  On March 31, 2020, the Bay Area

7   counties extended their local shelter orders until at least May 3.[5]  The new orders are more

8   stringent than their predecessors and require individuals to stay in their homes except for essential

9   needs.[6]  They direct individuals with preexisting conditions that put them "at high risk of severe

10  illness from COVID-19 . . . to stay in their residence to the extent possible, except as ***necessary*** to

11  seek or provide medical care or Essential Governmental Functions."[7]  The orders also stress that

12  strict adherence to their directives is required because the disease is "easily transmitted, especially

13  in group settings," including through asymptomatic individuals unaware that they are carriers.[8]

14        Courts across the country and in California have largely closed their doors to the public

15  during this crisis.  On March 16, the Chief Judge for this Court, the Honorable Phyllis J.

16  Hamilton, signed a set of general orders that stated no criminal or jury trials would commence

17  before May 1, 2020, and limited courthouse access to persons having "official court business."[9]

18

19  [3] Executive Department of State of California, Executive Order N-33-20, March 4, 2020,
    https://www.fmcsa.dot.gov/sites/fmcsa.dot.gov/files/2020-03/California%20Govenor%20
20  Newsom%20Shelter%20in%20place%20Executive-Order-N-33-20.pdf.

21  [4] *Id.*

22  [5] City and County of San Francisco, Order of the Health Officer No. C19-07b, March 31, 2020,
    https://www.sfdph.org/dph/alerts/files/HealthOfficerOrder-C19-07b-ShelterInPlace-
    03312020.pdf; *see also* Order of the Health Officer of the County of Santa Clara, March 31,
23  2020, https://www.sccgov.org/sites/covid19/Pages/order-health-officer-033120.aspx.

    [6] *Id.* at 1.
24
    [7] *Id.* at 7 (emphasis added).  The order defines "Essential Governmental Functions" as "all
25  services needed to ensure the continuing operation of the government agencies and provide for
    the health, safety and welfare of the public."  *Id.* at 9.
26
    [8] *Id.* at 1, 4.
27
    [9] United States District Court, General Order No. 72, March 16, 2020, https://www.cand.uscourts.
28  gov/wp-content/uploads/general-orders/GO_72_3-16-2020.pdf; United States District Court,
    General Order No. 73, Amended April 2, 2020, https://www.cand.uscourts.gov/wp-content/
    uploads/general-orders/GO_73_amended_4-2-2020.pdf.

1380174

On March 23, the Chief Justice of California suspended and continued all state court jury trials for sixty days.[10]   On April 13, the U.S. Supreme Court announced that it would break from tradition and, for the first time ever, hear arguments telephonically in May.[11]

Those efforts are well-taken given the speed at which the novel coronavirus has spread across the United States.  On March 11, the last day witnesses testified in Defendant Nikulin's trial, there were 1,301 confirmed COVID-19 cases in the United States.[12]   As of the date of this filing, there are 667,572 confirmed cases in the United States, including at least 27,108 cases in California with 889 of those cases resulting in death.

### B. Mr. Krishnan's preexisting condition puts him at risk of serious illness from COVID-19.

Mr. Krishnan was employed at LinkedIn from October 2010 to May 2016.  Krishnan Decl. ¶ 2.  During his time at the company, he served as LinkedIn's Head of Security and Privacy Engineering and oversaw the company's investigation into the 2012 data breach for which Defendant Nikulin is allegedly responsible.  *Id.*  On December 16, 2019, the Government subpoenaed Mr. Krishnan to testify in the Defendant Nikulin's criminal trial.  *Id.* ¶ 3.

As set forth in detail in Mr. Krishnan's accompanying declaration, which has been provisionally filed under seal to protect Mr. Krishnan's confidential medical information, Mr. Krishnan suffered a severe medical event requiring admission to the emergency room and several hours of observation in late December 2019.  Krishnan Decl. ¶ 4.  The emergency room doctors instructed Mr. Krishnan to seek treatment and further diagnoses, and Mr. Krishnan has been under the care of a treating physician for the condition since early February.  Decl. ¶¶ 5-6, Ex. A.

---

[10] Judicial Council of California Statewide Order by Hon. G. Cantil-Sakauye, March 23, 2020, https://www.sfsuperiorcourt.org/sites/default/files/pdfs/CJ%20Statewide%20Order%20-%20COVID-19%2020%2003%2023.pdf?1586839024920.

[11] United States Supreme Court, Press Releases, April 13, 2020, https://www.supremecourt.gov/publicinfo/press/pressreleases/pr_04-13-20; Adam Liptak, *The Supreme Court Will Hear Arguments by Phone, The Public Can Listen In.*, (April 13, 2020), https://www.nytimes.com/2020/04/13/us/politics/supreme-court-phone-arguments-virus.html.

[12] Worldometer, Coronavirus, United States, https://www.worldometers.info/coronavirus/country/us/ (last visited April 16, 2020).

1380174

The novel coronavirus outbreak has only amplified Mr. Krishnan's concerns regarding his medical condition and the risks that it could pose to his health.  Krishnan Decl. ¶¶ 7-9.  Recent guidance from the CDC identifies several underlying medical conditions that may increase the risk of severe harm from COVID-19.[13]  Mr. Krishnan has one of those conditions.  *Id.* ¶ 8, Exs. B & C.  As a result, Mr. Krishnan's doctor has instructed him via email correspondence to avoid both travel and public gatherings "while the shelter in place orders are in effect during this pandemic."  *Id.* at ¶ 10, Ex. D.

In an effort to preserve his health, Mr. Krishnan has stringently abided by the Bay Area shelter orders since their issuance and has avoided public gatherings at all times.  Krishnan Decl. ¶ 11.  The prospect of leaving his home to travel to and testify in a public courthouse during the COVID-19 crisis terrifies him, not only because he may contract the disease and suffer serious complications due to his medical condition, but because the stress created by the experience is also likely to have harmful effects on this health given his underlying condition.  *Id.* ¶ 9, Ex. C. Mr. Krishnan is also deeply concerned that he could unknowingly transmit COVID-19 to his wife and two school-aged children, a worry that compounds his stress and may further harm his health. *Id.*

## III.    ARGUMENT

Federal Rule of Criminal Procedure 15(a)(1) authorizes a court to allow a prospective witness to be deposed to preserve testimony for trial due to "exceptional circumstances and in the interests of justice."  Federal Rule of Criminal Procedure 17(c)(2) allows a court to "quash or modify the subpoena if compliance would be unreasonable or oppressive."  *See, e.g.*, *United States v. Bergeson*, 425 F.3d 1221, 1226-27 (9th Cir. 2005) (affirming a district court order quashing a subpoena for testimony pursuant to Fed. R. Crim. P. 17(c)(2)).

As noted above, the CDC has determined that individuals like Mr. Krishnan may be at risk of serious illness from COVID-19.  The coronavirus outbreak presents exceptional circumstances justifying the use of a remote deposition to protect Mr. Krishnan's health.  Furthermore, requiring

---

[13] CDC, Implementation of Mitigation Strategies for Communities with Local COVID-19 Transmission, March 12, 2020, https://www.cdc.gov/coronavirus/2019-ncov/downloads/community-mitigation-strategy.pdf.

MOTION BY GANESH KRISHNAN TO MODIFY TRIAL SUBPOENA
Case No. CR 16-00440 WHA

1380174

him to travel to San Francisco and testify in a courtroom filled with "approximately 30 people (not counting the public or the press)," Dkt. 207 at 3, while the local shelter orders remain in place would be unreasonable and oppressive.

Mr. Krishnan understands that the Government intends to request that he be permitted to testify via remote deposition instead of in-person testimony during trial.  Krishnan Decl. ¶ 12.  He joins the government in this request and asks the Court afford him the opportunity to testify via remote deposition as soon as possible once the Court determines if trial will resume before the Bay Area shelter orders are lifted, thereby lessening the risk to his health, his family's health, and the health of those individuals whose presence in the courtroom is absolutely necessary.  In the alternative, Mr. Krishnan requests that the Court allow him to testify via two-way videoconference at trial for the same reasons.

### A.     A remote deposition will allow Mr. Krishnan to provide reliable testimony while protecting his health and preserving Mr. Nikulin's confrontation rights.

Since the issuance of shelter-in-place orders across the country, many courts have begun to use remote depositions to allow cases to move forward without undue delay.  *See, e.g.*, *Julian v. Metro. Life Ins. Co.*, 17-CV-957 (AJN) (BCM), 2020 WL 1699983, at *1 (S.D.N.Y. Apr. 7, 2020) (requiring parties to conduct depositions remotely due to the COVID-19 national health emergency); *Vasquez v. City of Idaho Falls*, No. 4:16-cv-00184-DCN, 2020 WL 1860394, at *8 (D. Idaho Apr. 13, 2020) (granting motion for a 77 year-old witness with diabetes to testify by video-recorded deposition or remotely at civil trial because of concerns related to COVID-19). Given the unprecedented complications posed by COVID-19 and Mr. Krishnan's underlying health condition, the use of a remote deposition in place of in-court testimony would be particularly appropriate in this case because it would allow Mr. Krishnan to avoid undue risk to his health while also ensuring the defendant's confrontation rights are protected.  Indeed, the use of a remote deposition will permit Mr. Krishnan to testify under oath via videoconference, the defendant to participate in the deposition, the defendant's counsel to effectively cross-examine Mr. Krishnan, and jurors to review the video to assess Mr. Krishnan's veracity.

Federal Rule of Criminal Procedure 15 allows for the use of depositions to replace in-

1380174

court testimony where "exceptional circumstances may exist when the prospective deponent is unavailable for trial and the absence of the testimony would result in an injustice." *United States v. Jinian*, No. CR-09-1103-JSW EDL, 2010 WL 3910138, at *2 (N.D. Cal. Oct. 5, 2010). Courts have consistently recognized that the witness's unavailability may result from his or her medical condition. *See, e.g.*, *Furlow v. United States*, 644 F.2d 764 (9th Cir.), *cert. denied*, 454 U.S. 871, 102 S. Ct. 340 (1981) (witness's illness warranted deposition); *United States v. McGowan,* 590 F.3d 446, 455–56 (7th Cir. 2009) (Rule 15 deposition testimony admissible because witness was unavailable due to "severe and chronic" illnesses); *see also* Fed. R. Evid. 804(a)(4) (allowing the admission of out-of-court witness testimony where the witness "cannot be present or testify at the trial" because of "a then-existing infirmity").

Mr. Krishnan's health condition and his treating physician's instruction renders him unable to participate in trial before the shelter orders are lifted. Although this Court has suggested that it will employ social distancing measures and require the use of masks and gloves when the trial resumes, Dkt. 207 at 3, those measures may not be enough to prevent exposing Mr. Krishnan to COVID-19. Even if strict social distancing is observed within the courtroom, traveling to court will present a series of potential exposure points for Mr. Krishnan, such as touching public parking meters and courthouse doors, interacting with court security staff upon entry to the courthouse, placing personal items on a widely-used conveyor belt to pass through security, and using public elevators and restrooms. Once he arrives in the courtroom, he will be asked to sit in a chair and speak into a microphone that will be used by several other witnesses. Moreover, as noted above, the stress of testifying publicly during a pandemic will increase the risk of Mr. Krishnan suffering harm to his health given his preexisting condition. Mr. Krishnan should not have to jeopardize his health to perform his civic duty, particularly when testimony by remote deposition presents a reasonable alternative.

Moreover, the defendant's inability to confront Mr. Krishnan in-person under a remote deposition format will not impinge upon his confrontation rights. The Sixth Amendment's Confrontation Clause "guarantees the defendant a face-to-face meeting with witnesses appearing before the trier of fact." *Coy v. Iowa*, 487 U.S. 1012, 1016 (1988). Federal Rule of Criminal

1380174

Procedure 15(b) provides that the defendant has a right to be in "the presence of the witness during the examination" unless the defendant waives this right in writing.  But neither of those rights "is absolute" and "courts have permitted depositions to be taken and introduced at trial without the presence of the defendant at the depositions."  *U.S. v. Medjuck*, 156 F.3d 916, 920 (9th Cir. 1998).

In *Medjuck*, Canadian witnesses were unavailable to provide in-court testimony because they were outside the subpoena power of the United States and refused to voluntarily attend the trial.  *Id.* at 920.  The government therefore arranged for Rule 15 deposition.  *Id.*  The defendant was unable to attend the depositions because "there was no mechanism in place to allow United States officials to transfer [him] over to Canadian authorities at the Canadian border" and secure his reentry into the United States in a timely fashion after the depositions concluded.  *Id.*  On appeal following his conviction, the defendant argued that the process had denied him confrontation rights under the Sixth Amendment and Rule 15(b).  *Id.*  In affirming the conviction, the Ninth Circuit determined that the government had preserved the defendant's confrontation rights by allowing him to attend the depositions "live by video feed and to participate with his attorneys by private telephone connection."  *Id.*  The court further held that depositions featuring remote participation by the defendant are appropriate where the government cannot secure the defendant's physical presence in the depositions on acceptable terms.  *Id.*

As in *Medjuck*, the government and Mr. Nikulin's counsel will be able to arrange for a remote deposition that will allow Mr. Krishnan to testify under oath from the safety of his home while preserving the defendant's confrontation rights.  The defendant would be able to attend the deposition remotely and communicate with his counsel throughout the process, including cross-examination.  When the video of the deposition is played in trial, the jury will be able to assess Mr. Krishnan's demeanor and the reliability of his testimony.  Given that the Court has stated it intends to have all individuals within the courtroom wear masks, Dkt. 207 at 3, allowing Mr. Krishnan to testify via remote deposition will likely make his testimony ***even more reliable*** than if it were in-person because jurors will be able to see his entire face when they view the video of his deposition.  For those reasons, a remote deposition will maintain Mr. Krishnan's safety while

preserving the defendant's confrontation rights and the Court should not require Mr. Krishnan to risk his health and disobey his doctor's instructions by testifying in person before the shelter orders are lifted.

Furthermore, in weighing the impact of remote testimony on Mr. Nikulin's confrontation rights, it is important to note that Mr. Krishnan has no relationship whatsoever with Mr. Nikulin; he has never met or even seen Mr. Nikulin in person.  Krishnan Decl. ¶ 3.  Mr. Krishnan will not be able to testify regarding whether Mr. Nikulin is the individual who committed the crime against LinkedIn because he has no personal knowledge as to that inquiry.  *Id.*  Instead, his testimony, like the testimony of the other two witnesses from LinkedIn, will focus on LinkedIn's investigation and response to the hack.  *Id.* ¶ 2.  And like with those witnesses, it is expected that the defense's cross-examination of Mr. Krishnan will be minimal.  *See* Trial Tr., Vol. 3 (Mar. 11, 2020) at 59:23-60:2 (posing a sole question to Nicholas Berry: "Q. You don't have the personal knowledge of who . . . the identity of the person that committed the intrusion into your account? A. Correct."); *id.*, Vol. 2 (Mar. 10, 2020) at 79:7-87:9 (short series of questions to Bruno Connelly regarding technical issues and lack of knowledge regarding identifying Nikulin).

Accordingly, if the Court finds that trial must resume before the shelter orders have been lifted, the Court should also allow Mr. Krishnan to testify through a remote deposition to ensure his health and safety during the COVID-19 crisis.

**B.     In the alternative, allowing Mr. Krishnan to testify via videoconference will not deprive Defendant Nikulin of his rights under the Sixth Amendment.**

To the degree that the Court is disinclined to allow Mr. Krishnan to testify through a remote deposition, live testimony through two-way videoconference at trial is a viable alternative. Although the Confrontation Clause "reflects a preference for face-to-face confrontation at trial," the clause does not guarantee "criminal defendants the ***absolute*** right to a face-to-face meeting with witnesses against them at trial." *Maryland v. Craig*, 497 U.S. 836, 844 (1990) (emphasis in original).  Indeed, the U.S. Supreme Court has recognized that the clause's "preference" for face-to-face testimony "must occasionally give way to considerations of public policy and the necessities of the case." *Id.* at 848; *see also Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986)

("[T]rial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on . . . cross-examination based on concerns about . . . the witness' safety.").

In *Craig*, the Court assessed whether a Maryland statute allowing child abuse victims to testify at trial through one-way video transmission – thereby permitting the court, jurors, and defendant to view the witness but preventing the witness from viewing them – violated the defendant's right to confront his accuser. *Id.* at 841. The Court determined that, where the use of video testimony is necessary to protect a child witness from trauma, "the Confrontation Clause does not prohibit the use of a procedure that, despite the absence of face-to-face confrontation, ensures the reliability of the evidence by subjecting it to rigorous adversarial testing and thereby preserves the essence of effective confrontation." *Id.* at 857. Thus, post-*Craig*, video testimony is permissible in a criminal trial where a court finds that (1) "the reliability of the testimony is otherwise assured" and (2) the video testimony "is necessary to further an important public policy." *Id.* at 850; *see also U.S. v. Carter*, 907 F.3d 1199, 1206 (9th Cir. 2018) (holding that the *Craig* test applies in cases where the witness is an adult and testifies via two-way video transmission). Applying the *Craig* test here, the Confrontation Clause's preference for in-person testimony must give way to the important public policy goal of ensuring the health and safety of at-risk individuals like Mr. Krishnan.

### 1. The Court's videoconference system will allow for rigorous adversarial testing and ensure the reliability of Mr. Krishnan's testimony.

The Northern District has established a procedure for witness testimony via videoconference and has encouraged the use of this system to mitigate the health risks associated with attending in-person court hearings during the current pandemic. On April 3, the Northern District issued a public notice declaring that, due to the "COVID-19 public health emergency, all civil hearings and most criminal hearings in the United States District Court for the Northern District of California will be conducted either by teleconference or videoconference until at least May 1, 2020."[14] The Court has also provided instructions to participants and attendees on how

---

[14] N. Dist. of Cal., *Notice Regarding Press and Public Access to Court Hearings* (Apr. 3, 2020), accessible at https://cand.uscourts.gov/notices/notice-regarding-press-and-public-access-to-court-hearings-april-3-2020/.

1380174

1    to use Zoom software to allow for that remote conferencing.[15]  Mr. Krishnan is familiar with

2    Zoom and would be willing to testify via Zoom and follow the Court's instructions as provided.

3    Krishnan Decl. ¶ 12.  He is also willing to bear any costs the Court may incur as a result of this

4    process.

5            *Craig* makes clear that the type of videoconference testimony that Mr. Krishnan proposes

6    would ensure the reliability of his testimony.  In *Craig*, the Court determined that one-way video

7    transmission was sufficient to provide a full and fair opportunity to probe the witness's testimony

8    because the witness would still testify under oath, the defense would have an opportunity to

9    cross-examine her, and the jury could observe her demeanor as she testified.  *Craig*, 497 U.S. at

10   851.  Those "elements of confrontation . . . adequately ensure[d] that the testimony [was] both

11   reliable and subject to rigorous adversarial testing in a manner functionally equivalent to that

12   accorded live, in-person testimony."  *Id.*

13           Here, Mr. Krishnan will likewise testify under oath, defense counsel will have an

14   opportunity to cross-examine him, and jurors will be able to observe his demeanor as he testifies.

15   The ***two-way*** videoconference format Mr. Krishnan proposes is also superior to the ***one-way***

16   videoconference used in *Craig,* especially considering the technological advancements in video

17   transmission that have occurred in the last three decades.  *See U.S. v. Rosenau*, 870 F. Supp. 2d

18   1109, 1113 (W.D. Wash. 2012) (allowing video testimony and noting that the proposed

19   procedures surpassed those in *Craig* because, among other things, the video conference was two-

20   way and "dramatic improvements in technology since *Craig* was decided . . . improve the jury's

21   ability to observe the demeanor and body language of the witness").  Indeed, through the Zoom

22   technology, defense counsel will be able to ask Mr. Krishnan questions in real time and those

23   questions and Mr. Krishnan's testimony in response will be translated by the Russian language

24   interpreters to Mr. Nikulin as with all testimony thus far in the trial.  And as noted above, given

25   the Court's intention to have all individuals within the courtroom wear masks, Dkt. 207 at 3,

26   allowing Mr. Krishnan to testify remotely will make his testimony ***even more reliable*** than if he

27

28   [15] N. Dist. of Cal., *Preparing to Participate in a Zoom Video Conference* (last modified Apr. 14, 2020), accessible at https://cand.uscourts.gov/zoom/.

MOTION BY GANESH KRISHNAN TO MODIFY TRIAL SUBPOENA
Case No. CR 16-00440 WHA

1380174

1    were to deliver it in-person during trial.

2           **2.     Remote testimony is necessary to protect Mr. Krishnan's health.**

3           *Craig*'s second requirement – that the remote testimony be necessary to further an

4    important public policy – is a "case-specific" inquiry.  *Craig*, 497 U.S. at 855.  "A wide variety of

5    public policy objectives may satisfy this test, but the [party seeking to testify remotely] must

6    make some showing of necessity."  *Rosenau*, 870 F. Supp. 2d at 1113.  Courts have repeatedly

7    determined that video testimony is necessary when it will ensure the health and safety of

8    witnesses.  *See, e.g.*, *Horn v. Quarterman*, 508 F.3d 306, 320 (5th Cir. 2007) (upholding a district

9    court ruling allowing a terminally ill witness to testify via two-way video after the witness's

10   physician advised against travel); *U.S. v. Gigante*, 166 F.3d 75, 81 (2d Cir. 1999) (holding that

11   two-video testimony was appropriate where the witness's health prevented him from travelling to

12   New York for trial); *Bush v. State*, 193 P.3d 203, 215–16 (Wyo. 2008) (holding that allowing a

13   witness's "testimony via video conference was necessary to further the important public policy of

14   preventing further harm to his already serious medical condition").

15          Ensuring the health and safety of at-risk individuals during the COVID-19 pandemic is

16   undoubtedly an important public policy, as is clear from the shelter orders issued across the

17   country.  As discussed above, the social distancing and protective measures the Court intends to

18   employ when trial resumes, Dkt. 207 at 3, are likely to be insufficient to avoid Mr. Krishnan

19   unduly risking his health if he is forced to testify in-person.   Moreover, unlike in other cases, the

20   circumstances presented here may make it impracticable for the Court to further continue the trial

21   to avoid the need for remote testimony.  *See Carter*, 907 F.3d at 1208-9 (holding that a witness's

22   "a temporary disability" was insufficient to satisfy the necessity requirement because the court

23   failed to "even attempt to continue the trial [or] sever the counts" before allowing her to testify

24   remotely).

25          Unlike in *Carter*, the Court has already issued **two** mid-trial continuances for a total of

26   **seven weeks**.  The unpredictability of COVID-19's spread allows for no certainty as to when or

27   how the shelter orders will be lifted.  And when the orders are ultimately lifted, the process may

28   occur gradually while requiring at-risk individuals like Mr. Krishnan to remain home longer than

1380174

others.  Under such circumstances, the Court may determine that an additional continuance would be futile and that the ends of justice require the trial to resume on May 4, thereby making video testimony necessary to protect Mr. Krishnan's health.  *See U.S. v. Harris*, No. CR 17-00001 HG-01, 2019 WL 178641, at *4 (D. Haw. Jan. 11, 2019) (holding that video testimony was appropriate where a "simple continuance would not have allowed for [the witnesses'] in-person testimony").[16]

Accordingly, if the Court determines that trial must resume before the shelter orders have been lifted and a remote deposition is not a viable option, the Court should find that allowing Mr. Krishnan to testify remotely is necessary to ensure his health and safety during the COVID-19 crisis.

## IV.   CONCLUSION

For the foregoing reasons, Mr. Krishnan requests that the Court modify his trial subpoena and allow him to testify either by remote deposition or the Court's videoconference system if trial is set to resume before local governments lift the applicable shelter-in-place orders.

Dated:  April 16, 2020                              KEKER, VAN NEST & PETERS LLP

By:   /s/ *Laurie Carr Mims*
      LAURIE CARR MIMS
      FRANCO MUZZIO
      DEEVA SHAH

Attorneys for Witness Ganesh Krishnan

---

[16] *Carter* is also distinguishable because an in-person deposition is not a viable alternative for Mr. Krishnan.  Leaving his home to travel to a deposition and testify in a room filled with government attorneys, the defendant and his counsel, a court reporter, and a videographer would introduce many, if not all, of the same risks to his health as traveling to the courthouse to testify before the jury.

1380174