DAVID L. ANDERSON (CABN 149604)
United States Attorney

HALLIE HOFFMAN (CABN 210020)
Chief, Criminal Division

MICHELLE J. KANE (CABN 210579)
KATHERINE L. WAWRZYNIAK (CABN 252751)
Assistant United States Attorney

    1301 Clay Street, Suite 340S
    Oakland, California 94612
    Telephone: (510) 637-3680
    FAX: (510) 637-3724
    michelle.kane3@usdoj.gov
    katherine.wawrzyniak@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. CR 16-00440 WHA |
| Plaintiff, | **UNITED STATES' MOTION FOR DEPOSITIONS PURSUANT TO FED. R. CRIM. P. 15** |
| v. | |
| YEVGENIY ALEXANDROVICH NIKULIN, | Hearing Date: April 28, 2020 |
| Defendant. | Time: 12:00 p.m.<br>Courtroom 12, 19th Floor<br>Trial Date: May 4, 2020 |

## INTRODUCTION

On April 9, 2020, the Court continued the ongoing trial until May 4, 2020, and set a further status conference for April 28, 2020. At the April 9 hearing, the United States raised its concerns that two of its remaining witnesses, Ganesh Krishnan and Emily Odom, suffered from health conditions that made their testimony at trial potentially dangerous in light of the ongoing COVID-19 pandemic. Counsel for Mr. Krishnan also raised his concerns during the hearing. Mr. Krishnan has now filed a motion to modify the trial subpoena further describing his relevant health issues.

Based on those concerns, the United States hereby applies to the Court pursuant to Rule 15 of the Federal Rules of Criminal Procedure for the issuance of an order permitting the United States to take the

U.S. MOT. RE RULE 15 DEPOSITIONS
CR 16-00440 WHA

depositions of Mr. Krishnan and Special Agent Odom by remote video. As set forth in more detail below, Mr. Krishnan previously worked for victim LinkedIn and led the security team that responded to defendant's intrusion into LinkedIn's systems and theft of its data. He therefore has evidence relating to the LinkedIn investigation and the ways in which LinkedIn identified evidence that shows that defendant was responsible for the intrusion. Special Agent Odom interviewed a co-conspirator and can identify that person in a video in which he appears with defendant during the same time as the offenses described in the Indictment. These facts establish that the taking of depositions is appropriate under Rule 15. Because the current health crisis makes both witnesses reasonably unavailable for testimony at trial, the United States also moves this Court for an order finding that their videotape depositions may be used as evidence in lieu of testimony, pursuant to Fed. R. Evid. 804(a) and (b).

## FACTUAL BACKGROUND

### I.     Ganesh Krishnan

#### A.     Proposed Testimony

Defendant Nikulin is charged with computer intrusion, intentional transmission of malicious information, code or command, and aggravated identity theft in connection with the 2012 LinkedIn hack. Ganesh Krishnan was LinkedIn's Head of Security at the time of the incident. Upon learning about the intrusion, he immediately flew from LinkedIn's India Technology Center, which he was in the process of setting up, to LinkedIn's headquarters. He led the LinkedIn incident response team that had assembled in the "war room," first validating the legitimacy of the leaked and publicly posted data; then investigating the breach by examining various log files; and overseeing remediation efforts. He will testify about how the incident response team was able to pivot from suspect IP addresses to suspect browser cookies. He also has first-hand knowledge of the security consultant that LinkedIn hired to assist with the incident response.

In the 2012 timeframe, Mr. Krishnan was a peer of Bruno Connelly, the LinkedIn Vice President who testified previously in the trial. However, as noted by Mr. Connelly in his testimony, Mr. Krishnan, or "GK", was on point for the incident and directly oversaw the teams that did the validation and investigation. Whereas Mr. Connelly has a background in site reliability engineering, Mr. Krishnan's expertise is in information security.

### B. Health Concerns in Light of the COVID-19 Pandemic

Counsel for the United States and for Ganesh Krishnan raised the issue of his health concerns in the context of the COVID-19 situation at the April 9, 2020, hearing. His health concerns are further described in the Motion to Modify Trial Subpoena and accompanying sealed Declaration. ECF Nos. 209-215. Specifically, he states in the unredacted portion of his declaration that "due to my concerns regarding my health, I have strictly followed the applicable shelter-in-place orders since their issuance in mid-March. I have avoided all unnecessary travel outside of my home and all public gatherings of any form." ECF No. 213. He states that he is "terrified" of traveling to the courthouse and testifying. *Id.*

## II. FBI Special Agent Emily Odom

### A. Proposed Testimony

Defendant Nikulin is charged with conspiring with others, both known and unknown, to traffic stolen Formspring members' credentials (user names, email addresses, and passwords) in 2012 and 2013. One of the known co-conspirators is Nikita Kislitsin, a Russian national, who has been charged with the same offense in a separate indictment. *United States v. Kislitsin*, CR 14-126 EXE, ECF 1 (N.D. Cal., Mar. 13, 2014). At a basic level, the United States alleges that Nikulin was the Formspring hacker; Nikulin infiltrated the Formspring systems and stole Formspring user credentials in June 2012. Kislitsin was the broker; he got the credentials from Nikulin and sold them over the course of July through September of 2012. Kislitsin was indicted in March of 2014. The next month, April 2014, Kislitsin went to the U.S. Embassy in Moscow to be interviewed by agents from the Federal Bureau of Investigation (FBI), including Special Agent Emily Odom.

In November 2012, the U.S. Secret Service obtained the image of a hard drive belonging to a target in another criminal investigation, Oleksandr Ieremenko. Ieremenko is an Ukrainian national who was charged in the District of New Jersey in connection with a separate hacking scheme, wherein a group of Ukrainian and Russian hackers worked together to steal news releases from Business Wire, Marketwired, and PR Newswire between February 2010 and August 2015. The hackers then passed the stolen news releases to traders who traded based on the stolen content. *See United States v. Tuchynov, et al*, CR 15-390 MCA (D. N.J.); *see also United States v. Korchevsky, et al.*, CR 15-6076 (E.D.N.Y.).[1]

---

[1] Ieremenko was also later indicted again in the District of New Jersey for a similar scheme in which he

Ieremenko's hard drive had a folder on it titled "Moscow 2012." That folder's contents included eight short videos. The metadata and the content of the videos show they were made over the course of two days, March 18 and 19, 2012, in Moscow, Russia, shortly after Nikulin gained access to LinkedIn's systems and obtained its user database. The government has sought to introduce two of the eight videos at trial. In the first, Ieremenko is narrating a drive that he describes as the approach to a "summit of bad motherfuckers" at a Moscow hotel. At the end of the video, the driver, identified elsewhere on Ieremenko's computer as "Cash," calls the driver of a black vehicle that pulls in front of them at the hotel an "angry hacker." Ieremenko's hard drive also contained a photograph showing Nikulin at the wheel of the same black vehicle. In the second video, Ieremenko pans the camera around a conference room. Nikulin is seen mugging for the camera, as are coconspirators Kislitsin and Oleg Tolstikh and others, including Cash and an individual known as Mikhail Bolshov who claims in publicly-available interviews to be an experienced hacker. During the recording, one member of the group is discussing a city of 30 thousand people that he describes as "an ass of the world" and that has only one Internet café.

Special Agent Odom will testify at this trial to identify Kislitsin in the conference room video with Nikulin.

### B. Health Concerns in Light of the COVID-19 Pandemic

As counsel for the United States described at the last hearing, Special Agent Odom has a chronic health condition for which she receives regular treatment that results in a lowered immune function. Her doctor has advised her to avoid travel in the current situation, while shelter in place and social distancing guidelines are in effect. Special Agent Odom has been following those instructions, along with FBI and CDC guidance applicable to her particular condition. The attached declaration contains further detail regarding her specific health issues and the dangers that traveling to the trial could pose to her health.

//

---

and another individual hacked into the SEC's Electronic Data Gathering, Analysis and Retrieval (EDGAR) system and stole thousands of files, including annual and quarterly earnings reports containing confidential, non-public, financial information. The defendants and others then profited by selling access to the confidential information in these reports and trading on this stolen information prior to its distribution to the investing public. *United States v. Radchenko, et al.,* CR 19-30 MCA (D. N.J.)

# ARGUMENT

**I.     A Rule 15 Deposition is Appropriate in this Case.**

Federal Rule of Criminal Procedure Rule 15(a) provides:

> A party may move that prospective witness be deposed in order to preserve testimony for trial. The court may grant the motion because of exceptional circumstances and in the interest of justice. If the court orders the deposition to be taken, it may also require the deponent to produce at the deposition any designated material that is not privileged, including any book, document, record, recording, or data.

A district court has broad discretion to grant a Rule 15 motion to take depositions. *See United States v. Olafson*, 213 F.3d 435, 442 (9th Cir.), *cert. denied*, 531 U.S. 914 (2000); *United States v. Omene*, 143 F.3d 1167, 1170 (9th Cir. 1998). Here, the COVID-19 crisis combined with the two witnesses' particular health situations results in exceptional circumstances that make depositions appropriate in the interests of justice.

**A.     The Witnesses' Health Conditions Are Exceptional Circumstances Justifying the Depositions in the Interests of Justice.**

A motion for a Rule 15 is granted where the moving party shows that "exceptional circumstances" exist to justify the deposition. *United States v. Drogoul*, 1 F.3d 1546, 1551 (11th Cir. 1993); *United States v. Kelley*, 36 F.3d 1118, 1124 (D.C. Cir. 1994). Although district courts should consider the particular circumstances of each case to determine whether the "exceptional circumstances" requirement has been satisfied, courts generally consider whether the witness is unavailable and the testimony is material. *See Kelley*, 36 F.3d at 1125; *Omene*, 143 F.3d at 1170; *United States v. Rodriguez-Siguentes*, 637 Fed. Appx. 1016 (9th Cir. 2016); *United States v. Thomas*, 62 F.3d 1332, 1340-41 (11th Cir. 1995), *cert. denied*, 516 U.S. 1166 (1996). "When a prospective witness is unlikely to appear at trial and his or her testimony is critical to the case, simple fairness requires permitting the moving party to preserve that testimony -- by deposing the witness --absent significant countervailing factors which would render the taking of the deposition unjust." *Drogoul*, 1 F.3d at 1552; *see also United States v. Ismaili*, 828 F.2d 153, 159 (3d Cir. 1987), *cert. denied*, 485 U.S. 935 (1988). The exceptional circumstances here are a massive public health emergency, not the fault of either party, nor

of the witnesses themselves. The COVID-19 pandemic, an unprecedented event, means that it is in the interests of justice to preserve the witnesses' testimony for trial through depositions.

### 1. The Witnesses Are Unavailable Based On Health Concerns.

Both Mr. Krishnan and Special Agent Odom have health conditions that make them particularly concerned about travel and testimony during the COVID-19 pandemic. These concerns mean that they are reasonably likely to be unavailable to testify when trial resumes on May 4th. The Ninth Circuit has noted that taking a deposition for use at trial based on a witness' ill health is "within the contemplation of" Rule 15. *Furlow v. United States,* 644 F.2d 764, 767 (9th Cir. 1981) (finding no abuse of discretion in allowing deposition of ill witness and use of deposition testimony at trial); *United States v. Butler*, 116 F. App'x 877, 878 (9th Cir. 2004) (finding no abuse of discretion in granting government's motion to take videotaped deposition of witness whose "ill-health made it impossible for him to travel to testify in person").

### 2. The Testimony is Material.

Ganesh Krishnan led the security response of victim LinkedIn once it discovered defendant's intrusion into its system and theft of its database. His testimony is directly relevant and material in establishing the elements of the offenses alleged at Counts One through Three.

Special Agent Odom met Kislitsin in person and can identify him on the video. He is a co-conspirator in the charged conspiracy to traffic stolen Formspring credentials (Count Five). Her testimony is directly relevant and material in that it connects defendant and Kislitsin in the same time period as the conspiracy.

## B. Taking the Depositions via Video Conference Will Allow Defendant to Participate.

Rule 15(e) [2] provides that, subject to additional conditions set by the court, a deposition in a criminal case shall be "taken and filed in the same manner as a deposition in a civil action." Rule 15(e)(1) also requires that the scope and manner of the deposition examination and cross-examination be the same as would be allowed at trial. Rule 15(c) provides for the presence of an in-custody defendant at a deposition.

---

[2] Rule 15(e)(2) requires that statements of the witness be produced to the defense prior to the deposition. The United States has already produced any such statements in the form of FBI reports.

Taking the depositions by video conference will allow the defendant to participate in accordance with Rule 15 and the Confrontation clause despite his confinement, including allowing him to communicate with his counsel regarding cross-examination. Counsel for the United States has consulted with the U.S. Marshals Service, who have confirmed that Maguire Correctional Facility, where defendant is housed, has limited video conferencing capabilities for inmates. A representative of Maguire has reported that the jail has a laptop with webcam and microphone capability for defendants' use in court proceedings. In the alternative, the Marshals could bring defendant to a courtroom to participate via video conference. The U.S. Attorney's Office has confirmed that its regular court reporting service has the capacity to conduct a remote video deposition.

## II.   The Deposition Testimony Is Admissible at Trial.

Once Rule 15 depositions are taken, that testimony may then be used at trial as provided by the Federal Rules of Evidence. See Fed. R. Crim. P. 15(f). The determination of admissibility of deposition testimony based on the unavailability of the witness is a matter left to the discretion of the trial judge. *United States v. Acosta*, 769 F.2d 721 (11th Cir.1985). Rule 804(a) of the Federal Rules of Evidence defines unavailability, which includes situations in which a witness "is unable to be present or to testify at the hearing because of ... physical or mental illness or infirmity." Fed. R. Evid. 804(a)(4). The deposition testimony of an unavailable witness is not excluded by the rule against hearsay where the defendant had an opportunity for cross-examination. Fed. R. Evid. 804(b)(1).

Here, the depositions should be admitted, subject to the Rules of Evidence, if the trial proceeds while public health guidelines restrict travel and public gatherings. Both witnesses have established that they should not travel or associate in public during this pandemic and will therefore be unavailable due to their health concerns. Depositions conducted with the defendant having an opportunity to cross-examine the witnesses are therefore admissible. *See, e.g., Furlow,* 644 F. 2d at 767 (finding no abuse of discretion in admitting deposition testimony of witness who was ill and on disability); *United States v. Campbell,* 845 F.2d 1374, 1377–78 (6th Cir. 1988) (finding infirmity of an elderly witness which prevented him or her from traveling is an "exceptional circumstance" which justifies the use of deposition testimony at trial); *United States v. Keithan,* 751 F.2d 9, 13 (1st Cir. 1984) (finding no abuse of discretion in admitting deposition testimony of elderly, infirm witnesses at trial pursuant to Fed. R.

Evid. 804(a)); *United States v. Caramadre,* 882 F. Supp. 2d 295, 300 (D.R.I. 2012) (allowing use of deposition testimony of sick witnesses at trial).

As a practical matter, conducting remote video depositions in advance of the resumption of trial may allow for a smoother presentation of the testimony at trial. Rather than having to rely on a live Internet platform such as Zoom or Webex—and potentially troubleshooting technical issues on the fly—the government could simply play two short videos. Moreover, the validity of admitting such deposition testimony is well-established and does not offend the Sixth Amendment. *United States v. Medjuck*, 156 F.3d 916, 920 (9th Cir. 1998) ("When the government is unable to secure a witness's presence at trial, Rule 15 is not violated by the admission of videotaped testimony so long as the government makes diligent efforts to secure the defendant's physical presence at the deposition and, failing this, employs procedures that are adequate to allow the defendant to take an active role in the deposition proceedings.") (citing *United States v. Gifford*, 892 F.2d 263, 265 (3d Cir.1989) and *United States v. Salim*, 855 F.2d 944, 950 (2d Cir.1988)).

## CONCLUSION

Given the relevance and materiality of the anticipated testimony, the exceptional circumstances making the witnesses unavailable for trial, and the government's high burden of proof in criminal cases, it would be unjust to deny the United States the opportunity to take the proposed deposition testimony. In contrast, there would be nothing unfair to the defendant in allowing the deposition testimony. The depositions therefore should be allowed to proceed via videoconference and to be introduced at trial in lieu of live testimony from Mr. Krishnan and Special Agent Odom.

Accordingly, for the reasons stated above, the government respectfully requests that this Court grant the government's motion to take the deposition testimony and to introduce that testimony at trial.

DATED: April 21, 2020                             Respectfully submitted,

DAVID L. ANDERSON
United States Attorney

/s/
MICHELLE J. KANE
KATHERINE L. WAWRZYNIAK
Assistant United States Attorneys