ADAM G. GASNER (SBN 201234)
Law Chambers Building
345 Franklin Street
San Francisco, CA  94102
Telephone:      415-782-6000
Facsimile:      415-241-7340
E-Mail:          adam@gasnerlaw.com

VALERY NECHAY (SBN 314752)
Law Chambers Building
345 Franklin Street
San Francisco, CA  94102
Telephone:      415-652-8569
E-Mail:          valerynechaylaw@gmail.com

Attorneys for Defendant
YEVGENIY ALEXANDROVICH NIKULIN

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                    Plaintiff,<br><br>          v.<br><br>YEVGENIY ALEXANDROVICH NIKULIN,<br><br>                    Defendant. | **No. CR-16-00440 WHA**<br><br>**DEFENDANT'S OPPOSITION TO THE UNITED STATES' MOTION IN LIMINE NO. SIX TO EXCLUDE HEARSAY STATEMENTS BY NIKITA KISLITSIN** |

**TO THE UNITED STATES AND ITS ATTORNEYS FOR THE NORTHERN DISTRICT OF CALIFORNIA.**

These motions are based upon the authorities cited, notice of motions, the attached

memorandum of points and authorities, any argument before the Court, and all other materials that may

be added prior to or during the hearing of these motions.

GASNER CRIMINAL LAW
Law Chambers Building
345 Franklin Street
San Francisco, CA 94102

**INTRODUCTION**

Defendant YEVGENIY ALEXANDROVICH NIKULIN ("Mr. Nikulin") is charged by indictment with three counts of computer intrusion (Counts One, Four, and Seven), in violation of 18 U.S.C. § 1030(a)(2)(C); two counts of intentional transmission of information, code, or command, causing damage to a protected computer (Counts Two and Eight), in violation of 18 U.S.C. § 1030(a)(5)(A); two counts of aggravated identity theft (Counts Three and Nine), in violation of 18 U.S.C. § 1028A(a)(1); one count of trafficking in unauthorized access devices (Count Six), in violation of 18 U.S.C. § 1029(a)(2); and one count of conspiracy (Count Five), in violation of 18 U.S.C. § 371.

**MEMORANDUM OF POINTS AND AUTHORITIES**

In this case, the Government is alleging that an individual named Nikita Kislitsin, a Russian national, is a co-conspirator with defendant Nikulin. Mr. Kislitsin resides in Russia and the United States Government has been unable to arrest him or bring him to the United States. Thus, he is unavailable. However, in 2014, co-conspirator Kislitsin was interviewed by the FBI at the U.S. Embassy in Moscow. In that interview, Kislitsin made statements incriminating himself and purporting to incriminate Mr. Nikulin in the sale of the Formspring data as well as statements purporting to incriminate Mr. Nikulin in the intrusions on LinkedIn and Dropbox.

During this interview, Kislitsin discussed his knowledge of a hacker named Aleksey Belan. Kislitsin stated that Belan obtained e-commerce data bases with a goal of selling them for financial gain or spamming purposes. Kislitsin also stated that Belan was responsible for other hacks on US Companies. Kislitsin goes on to tell the FBI in the 2014 interview that Belan worked with an FSB captain with assignments related to email accounts and other data.

GASNER CRIMINAL LAW
Law Chambers Building
345 Franklin Street
San Francisco, CA 94102

GASNER CRIMINAL LAW
Law Chambers Building
345 Franklin Street
San Francisco, CA 94102

**I.      MR. KISLITSIN'S STATEMENTS REGARDING MR. BELAN ARE NON-HEARSAY, STATEMENTS AGAINST PENAL INTEREST, IMPEACHMENT, AND OTHERWISE ADMISSIBLE UNDER FRE 807 AND <u>CHAMBERS V. MISSISSIPPI</u>**

Hearsay does not encompass all extrajudicial statements but only those offered for the purpose of proving the truth of matters asserted in the statement.  Rule 801(c).  Therefore, when the mere making of the statement is the relevant fact, i.e., tends to establish a fact of consequence, hearsay is not involved. Such statements are frequently said to be offered solely for the fact they were said and the effect on the listener and not for the truth of the matter asserted, i.e., the truth of their contents.

The existence of a statement relevant for the fact said may be established by any relevant and otherwise admissible evidence including testimony from an outsider to the transaction or conversation. <u>See generally</u>, <u>United States v. Feliz</u>, 794 F.3d 123, 132-33 (1st Cir. 2015).

**A.  Effect on a Listener**

A group which falls outside the category of hearsay consists of statements made by one person which become known to another offered as a circumstance under which the latter acted or as bearing upon the likelihood of later disputed conduct, e.g., providing motive or reason for later disputed conduct.[1] A statement which is not hearsay when offered for its effect on listener is hearsay as defined in Rules 801(a) to (c) when offered to prove the truth of the matter asserted. The giving of a limiting instruction is appropriate.

Here, Agent Odom and Agent Mlaker were the intended recipients of Kislitsin's statement during the 2014 Moscow interview that "Belan assisted an FSB captain with assignments

---

[1] United States v. Leonard-Allen, 739 F.3d 948, 954 (7th Cir. 2013)("A witness's statement is not hearsay if the witness is reporting what he heard someone else tell him for the purpose of explaining what the witness was thinking, at the time or what motivated him to do something. In those circumstances, the out-of-court statement is not being offered as evidence that its contents are true.

that…involved targeting specific email accounts and other data." U.S. Mtn in Limine No. Six, p.4, lines 13-14.

Mr. Nikulin's defense counsel should be allowed to cross-examine FBI witnesses on the issue of whether this claim, by Kislitsin, that Belan was an FSB operative, affected their investigative steps and the extent of their knowledge on the subject.[2]  This is crucial to understanding how these witnesses interpreted Kislitsin's statements and how it impacted their next investigative steps.  This line of questioning is probative of whether they attempted to verify.  Independently, whether this specific statement made by Kislitsin was true or not.  Mr. Nikulin's defense should not be required to provide a blueprint of their cross-examination and defense to elicit these answers.

However, it is evident that these questions and the non-hearsay answers they call for are relevant, probative, and useful in providing the jury with an accurate depiction of the foundational aspects of who these parties *or alleged co-conspirators are*, the kind of activity and employment they held, and the investigative techniques that were used by the FBI in its search for the truth.

Disallowing Defendant's counsel from inquiring into these important areas only undermines the legal process and obscures the truth on materially relevant subject, i.e., that Mr. Belan was working with the Russian government on intrusions into U.S. databases and therefore it is reasonable to believe that the Russian government was responsible for the intrusions in this case.

**B.  Impeachment**

The government is permitted to offer into evidence the conversation between Belan and Kislitsin as co-conspirator statements which began on June 25, 2012, during the Formspring

---

[2] For example a law enforcement official explains his going to the scene of the crime by stating that he received a radio call to proceed to a given location or to explain why an investigation was undertaken or other subsequent action, such testimony is not hearsay.  Other illustrations of a statement being offered for the purpose of showing the probable state of mind of the listener include being placed on notice or having knowledge.

*USA v. Nikulin*
**Case Number: CR-16-00440 WHA**
**Defendant's Motion in Limine No. 2**

GASNER CRIMINAL LAW
Law Chambers Building
345 Franklin Street
San Francisco, CA 94102

intrusion period, which ran from June 13 to 29, 2012. YN000202; U.S. Mtn in Limine No. One, P.2-3. The government advocated for this admission under the prosecutorial theory that this email thread not only discussed the Formspring data, but showed that "the email thread confirms Belan was connecting Kislitsin with Nikulin, 'the person who stole the Formspring data.'" Furthermore, the Government claimed that this email exchange, *which as a reminder, never mentioned Mr. Nikulin by name or any other reliable identification,* "confirms that Kislitsin was considering the transaction and investigating the quality of the data." U.S. Mtn in Limine No. One, P.3, lines 16-18.

The government cannot have it both ways; meaning that, since the Government intends on showing and arguing to the jury that the email thread between Kislitsin, Sozen, and Belan related to the Formspring intrusion was reliable and creates an inference of defendant's guilt, the Government should not be able to simultaneously bar the defense from probing Kislitsin's 2014 interview, where he categorically denied Belan's involvement in the Formspring intrusion. YN013926, Exhibit A-Special Agent Odom's 302. While the Defense is unable cross-examine these alleged "unavailable" co-conspirators in court, logic and the fundamental to due process compel the notion that the Defendant has a right to challenge the accuracy and motivation of such statements, especially when there is evidence that contradicts the co-conspirator declarant's statements.

In this case, Kistlistin claimed that Belan was never involved in the Formspring intrusion, despite the Government's claim to the contrary. If this trial is indeed a search for the truth, these contradictory statements and actions by Kistlitsin must be examined. Mr. Nikulin is entitled to a fair trial; understanding how the special agents dealt with this contradictory information is critical in this process.

/ / /

/ / /

/ / /

GASNER CRIMINAL LAW
Law Chambers Building
345 Franklin Street
San Francisco, CA 94102

II. **EXCLUSION OF KISLITSIN'S 2014 STATEMENT, TO THE FBI IN MOSCOW, THAT CO-CONSPIRATOR BELAN IS AN FSB OPERATIVE, DEPRIVES DEFENDANT OF HIS SIXTH AMENDMENT RIGHT TO A DEFENSE, A FAIR TRIAL, AND DUE PROCESS PURSUANT TO FRE 807 AND CHAMBERS V. MISSISSIPPI**

In Chambers v. Mississippi, 410 U.S. 284 (1973), the Supreme Court found a Sixth Amendment violation where the accused was prohibited from offering important defense evidence. Most notably, the Court found that the right of an accused to due process in a criminal trial is the right to a fair opportunity to defend against the [Government's] accusations.

The Court in Chambers v. Mississippi found in that case, *the hearsay statements were not untrustworthy evidence* but were a crucial part of the Defendant's defense and could have led the jury to a different decision. See also, Davis v. Alaska, 415 U.S. 308 (1974) (reversing conviction because defense prohibited from thoroughly cross-examining key government witness); Faretta v. California, 422 U.S. 806 (1975) (holding Sixth Amendment guarantees the right to a defense in criminal proceedings); California v. Trombetta, 467 U.S. 479 (1984) (holding that, read together, Constitutional provisions require an effective defense); Rock v. Arkansas, 483 U.S. 44 (1987) (rejecting per se rule excluding hypnotically refreshed testimony as violating accused's right to confront accusers). Here, the government is not arguing that the statement of Kislitsin regarding Belan is untrustworthy. Due process requires that the defense be allowed to inquire into the connection between the FSB and Belan.

Similarly, these statements are admissible pursuant to Rule 807 which allows for the admissibility of out of court statements for the following reasons: "(1) the statement has equivalent circumstantial guarantees of trustworthiness; (2) it is offered as evidence of a material fact; (3) it is more probative on the point for which it is offered than any other evidence that the proponent can

6

GASNER CRIMINAL LAW
Law Chambers Building
345 Franklin Street
San Francisco, CA 94102

obtain through reasonable efforts; (4) admitting it will best serve the purposes of [the] rules and the interests of justice." Fed. R. Evid. 807(a).

### A. Kislitsin's specific 2014 statement to FBI that co-conspirator Belan is a Russian intelligence operative is <u>reliable</u>

The principal of estoppel should bar the government from arguing the unreliability of Kislitsin's specific 2014 statement to FBI that co-conspirator Belan is a Russian intelligence operative, because the Department of Justice alleged exactly that in an official press release and Indictment against Belan, and three other defendants, including two FSB officers in 2017.

The government suggests that Kistlitsin's assertion to FBI in Moscow in 2014, that "Belan assisted an FSB captain with assignments" was based on information from another individual and thus is unreliable. <u>See</u>, SA Odum's 302 attached hereto as Exhibit A.  However, the FBI 302's and Special Agent Emily Odom's notes also reveal that Kislitsin did not simply recount someone else's statements, but in fact he viewed official government documents from his close friend Komarov, who works for the Ministry of Foreign Affairs.

In addition, Kislitsin knew Belan since 2006-2007, has worked with him on other jobs, and even partied with him. <u>Id</u>. The government even tried to conceal the fact that Kislitsin himself stated, during this same 2014 FBI interview, he had a direct relationship with this same FSB agent, Dokuchayev.  Agent Odom's FBI 302 reads as follows from her recounting of Kislitsin's statement:

> Kislitsin could also likely arrange a meeting to speak with Belan, but stated he would prefer not to do so as he was apprehensive about potential reprocussions related to Belan's arrest [in Greece.]. *Dokuchayev previously indicated to Kislitsin he was "very much" concerned about the situation surrounding Belan's arrest. Dokuchayev informed Kistlitsin that Belan may divulge information about his involvement with Dokuchayev. Dokuchayev informed Kislitsin that Belan* obtained a Bulgarian passport and glued his own photograph inside the passport. This

GASNER CRIMINAL LAW
Law Chambers Building
345 Franklin Street
San Francisco, CA 94102

passport allowed Belan to travel from Greece into Russia. Dokuchayev's wife also works for the FSB.

YN013928, Exhibit A, page 7.

Thus in all likelihood, Kislitsin had direct knowledge of Belan's "assignments" with the Russian Federal Security Service (FSB).

Either one of two possibilities existed, if not both: 1) Kislitsin made a calculated decision to continue unlawful cybercrime activity with Belan because he perceived he had an umbrella of protection from the FSB by extension of Belan's work with the FSB, and/or 2) Kislitsin was an FSB operative himself at the time of the 2014 FBI interview in Moscow when he disclosed Belan was an FSB operative to FBI in Moscow (among other things), and attempted to gain intelligence from the FBI interview which he could funnel back to the FSB.

Disinformation campaigns are a well-known tactic employed by Russian intelligence. This tactic is often employed by blending fiction and nonfiction seamlessly in order to confuse, obfuscate, and sow discord in a sophisticated manner.[3] During this 2014 interview in Moscow, Kistlitsin asked numerous questions of the FBI in addition to answering the FBI questions that were posed to him— it appears that Kislitsin was almost entirely controlling the narrative based on the 302s and Special Agent notes.

For example, Kislitsin asked the FBI numerous and highly suspicious questions, such as whether they knew of an individual named Pavel Volkov, who he suspected of being a spy for the NSA (YN013925), and whether he was able to travel without US interference Id. He also asserted that many of the U.S. government allegations were not true and included bizarre details about some

---

[3] Department of Justice Press Release entitled, "U.S. Charges Russian GRU Officers with International Hacking and Related Influence and Disinformation Operations". Published October 4, 2018. https://www.justice.gov/opa/pr/us-charges-russian-gru-officers-international-hacking-and-related-influence-and

GASNER CRIMINAL LAW
Law Chambers Building
345 Franklin Street
San Francisco, CA 94102

of his alleged co-conspirators, including Oleg Tolstikh—who had appeared on nationally syndicated programs such as CBS: Sixty Minutes, on a segment called "How Russia Joined Forces with Cybercriminals," in addition to appearing on Vice News.

On the Vice news segment, alleged co-conspirator Oleg Tolstikh discussed the underbelly of the relationship between the Russian intelligence community and the cyberhacker community; he essentially described them as symbiotic.[4] During this bizarre and highly suspect 2014 "interview" with FBI Agents on Russian soil, Kislistin made sure to include unsolicited information about alleged co-conspirators, *as well as other individuals*, including a random allegation that Tolstikh is "Schizophrenic." YN013926, Exhibit A, page 5. He also made sure to pepper his statements to FBI with self-serving statements, such as his sudden change of heart in discontinuing participation in these criminal conspiracies because of his religious beliefs and/or his desire for children. Id.

However, at the same time, Kislitsin also stated that he recoiled from his co-conspirators due to his new position as a Group-IB executive, where he "began working… *on a botnet-monitoring project."* YN013924 Exhibit A, page 3. While Mr. Kislitsin tried to depict a narrative that was based on a change of heart and reliance on some affiliation with a group he hoped would be construed as legitimate, this perspective runs afoul of the Department of Justice testimony and findings by DOJ Associate Deputy Attorney General, Sujit Raman, on August 21, 2018.

In addition to this DOJ representative asserting that Russia is an entity that "state sponsor[s] malicious cyber activity,"[5] this DOJ Senate Judiciary Testimony dedicated a portion of its

---

[4] CBS News, Sixty Minutes: "How Russia Joined Forces with Cybercriminals." https://www.cbs.com/shows/60_minutes/video/u1ms9cu8Wi4NRAXq4286Fe4RZLV5xQtQ/the-growing-partnership-between-russia-s-government-and-cybercriminals/. Air date: April 21, 2019.

[5] DOJ, Statement of Sujit Raman, Associate Deputy AG Before the Subcommittee on Crime and Terrorism, Committee on the Judiciary, United States Senate. At a hearing entitled, "Cyber threats to our nation's critical infrastructure." Presented August 21, 2018.

9

GASNER CRIMINAL LAW
Law Chambers Building
345 Franklin Street
San Francisco, CA 94102

presentation to a section called **"Botnets."** <u>Id</u>. The DOJ testimony states in part that, "Botnets… can be used for many types of illegal activity. They can be used to steal sensitive corporate information, to harvest email account addresses, to hack other computers, or to execute denial of service attacks against websites or other computers." <u>Id</u>., p. 9. The DOJ representative went on to say that he advocated for numerous safeguards, revisions to ICPA, and additional penalties to be attached to "botnet malicious activity."

Lastly, the Department of Justice issued an official press release on March 15, 2017, following Belan's third or fourth indictment, corroborating Kislitsin's statement that Belan was an FSB operative. Exhibit B. The government in this case stated, "In 2017, Belan was charged in this District with additional offenses…that Indictment alleges among other things, that, in November and December 2014, Belan stole a copy of at least a portion of Yahoo's user database and conspired with Russian FSB officers to gain access to Yahoo accounts without authorization." U.S. Motion in Limine No.1, p. 6, lines 16-20. Thus, this particular statement made by Kislitsin about Belan being an FSB operative is reliable and probative of Mr. Nikulin's defense. The government should be estopped from arguing otherwise.

**B. Mr. Nikulin would suffer a Sixth Amendment violation if denied his right to cross-examine Special Agents regarding the fact of the 2014 Kislitsin meeting in Moscow since these Agents are being called to identify Kistlitsin from a 2012 video clip filmed in Moscow**

The Government intends on calling the "FBI Agent(s) who were present at 2014 interview to identify Kislitsin in a video from March 2012. U.S. Mtn in Limine No. 6, p 5, line 28. However the Government also seeks to handicap Mr. Nikulin's right to effectively cross-examine that

GASNER CRIMINAL LAW
Law Chambers Building
345 Franklin Street
San Francisco, CA 94102

*USA v. Nikulin*
Case Number: CR-16-00440 WHA
Defendant's Motion in Limine No. 2

agent(s) on the reliability of identification of Kislitsin, which was based in part on their meeting with Kislitsin in 2014.

### <u>CONCLUSION</u>

Accordingly, because Kislitsin's statements regarding Belan working with the FSB are reliable, offered for a material fact, and probative, admitting them will serve the interests of justice in a fair trial. The defense submits they are properly admitted over a hearsay objection.


DATED:        June 28, 2020              /s/ *Valery Nechay* _____
                                         Valery Nechay, Esq.
                                         Attorney for Defendant
                                         YEVGENIY ALEXANDROVICH NIKULIN


DATED:        June 28, 2020              /s/ *Adam Gasner* _____
                                         Adam G. Gasner, Esq.
                                         Attorney for Defendant
                                         YEVGENIY ALEXANDROVICH NIKULIN

GASNER CRIMINAL LAW
Law Chambers Building
345 Franklin Street
San Francisco, CA 94102

*USA v. Nikulin*
**Case Number: CR-16-00440 WHA**
**Defendant's Motion in Limine No. 2**