ADAM G. GASNER (SBN 201234)
Law Chambers Building
345 Franklin Street
San Francisco, CA  94102
Telephone:      415-782-6000
Facsimile:      415-782-6011
E-Mail:         adam@gasnerlaw.com

VALERY NECHAY (SBN 314752)
Law Chambers Building
345 Franklin Street
San Francisco, CA  94102
Telephone:      415-652-8569
E-Mail:         valerynechaylaw@gmail.com

Attorneys for Defendant
YEVGENIY ALEKSANDROVICH NIKULIN

GASNER CRIMINAL LAW
Law Chambers Building
345 Franklin Street
San Francisco, CA 94102

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 16-cr-00440-WHA |
| Plaintiff, | |
| v. | DEFENDANT'S MOTION UNDER RULE 29 FOR A JUDGMENT OF ACQUITTAL NOTWITHSTANDING THE VERDICT; ALTERNATIVELY, MOTION FOR A NEW TRIAL UNDER RULE 33 |
| YEVGENIY ALEKSANDROVICH NIKULIN, | |
| Defendant. | |

TO THE HONORABLE WILLIAM ALSUP, JUDGE OF THE UNITED STATES
DISTRICT COURT AND TO THE UNITED STATES ATTORNEY FOR THE
NORTHERN DISTRICT OF CALIFORNIA:

1

PLEASE TAKE NOTICE that defendant Yevgeniy Aleksandrovich Nikulin ("Mr. Nikulin"), by and through counsel, moves the Court for an order of acquittal pursuant to Federal Rules of Criminal Procedure Rule 29(a) or, alternatively, for a new trial pursuant to Rule 33.

## I.   INTRODUCTION

On November 7, 2019, the jury convicted Defendant YEVGENIY ALEKSANDROVICH NIKULIN of the following:

1. 3 counts of Computer Intrusion, in violation of Title 18 of the United States Code, Section 1030(a)(2);

2. 2 counts of Intentional Transmission Causing Damage to a Protected Computer, in violation of Section Title 18 of the United States Code, Section 1030(a)(5)(A);

3. 2 counts of Aggravated Identity Theft, in violation of Title 18, United States Code, Section 1028A;

4. 1 count of Conspiracy, in violation of Title 18, United States Code, Section 371; and

5. 1 count of Trafficking in Unauthorized Access Devices, in violation of Title 18, United States Code, Section 1029(a)(2).

The evidence in this case did not support the jury's verdict as to any of the above counts, and, under FRCrP 29, the Court should enter a judgment of acquittal as to each count. Alternatively, under FRCrP 33, the Court should order a new trial.

## II.   ARGUMENT

### A.  Legal Standard When Considering A Motion For Judgment Of Acquittal

The standard for granting a motion for acquittal was well stated in *United States v. Cerilli*, in which the Court said:

> A trial judge can grant a motion for judgment of acquittal only when the evidence as a whole is insufficient to support a conviction as a matter of law . . . However, where there is evidence upon which a jury may reasonably

2

**GASNER CRIMINAL LAW**
Law Chambers Building
345 Franklin Street
San Francisco, CA 94102

> base and find guilt beyond a reasonable doubt, the trial judge cannot intrude
> on the function of the jury as the trier of fact. The evidence need not be of
> such overwhelming magnitude that the jury must inevitably find guilt
> beyond a reasonable doubt; there need only be sufficient, legal evidence
> which when viewed in a light most favorable to the government, a jury can
> reasonably and in good faith make a finding of guilt
> beyond a reasonable doubt.

418 F.Supp. 557, 565 (W.D. Pa. 1976)(citations omitted). See also *United States v. Boatwright*, 425 F.Supp. 747, 749-50 (E.D. Pa. 1977); *United States v. Miah*, 433 F.Supp. 259, 264    (E.D. Pa. 1977), *aff'd*, 571 F.2d 573 (3d Cir. 1978).

In making its determination, "[the Court] must view the evidence in a light most favorable to the government, it is not for the trial judge to assess the credibility of witnesses, nor to weigh the evidence, nor to draw inferences of fact from the evidence." *United States v. Cohen*, 455 F.Supp. 843, 851-52 (E.D. Pa. 1977), *aff'd*, 594 F.2d 855 (3d Cir. 1979), *cert. denied*, 441 U.S. 947 (1979) (citations omitted). The Court's powers in considering a motion for acquittal are not as broad as when considering a motion for a new trial, "for it is not for a judge, ruling on a motion of acquittal, to assess the credibility of witnesses, weigh the evidence, or draw inference of fact from the evidence." *United States v. Morris*, 308 F.Supp. 1348, 1351 (E.D. Pa. 1970).

A conviction may be based on circumstantial evidence. The circumstantial evidence "need not be inconsistent with every conclusion but that of guilt, as long as the circumstantial evidence provides the jury with a basis upon which to find the defendant guilty beyond a reasonable doubt." *United States v. Miah*, 433 F.Supp. at 264 (*citing United States v. Giuliano*, 263 F.2d 748 (3d Cir. 1976)).

### B.  Acquittal Pursuant to Federal Rules of Criminal Procedure Rule 29(a) is Appropriate in the Instant Case

A judgment of acquittal is proper if, viewing the evidence in a light most favorable to the

GASNER CRIMINAL LAW
Law Chambers Building
345 Franklin Street
San Francisco, CA 94102

GASNER CRIMINAL LAW
Law Chambers Building
345 Franklin Street
San Francisco, CA 94102

Government, a rational trier of fact could not have found the defendant guilty beyond a reasonable doubt. *U.S. v. Merriweather*, 777 F.2d 503, 507 (9th Cir. 1985); *U.S. v. A. Lanoy Alston*, 974 F.2d 1206, 1210 (9th Cir. 1992). In considering the evidence viewed in a light most favorable to the government, no rational trier of fact could find Defendant guilty beyond a reasonable doubt. Rule 29 clearly states that the court "must enter a judgment of acquittal" if the evidence is insufficient. As noted in *United States v. Taylor*, 464 F.2d 240 (2nd Cir. 1972):

> The functions of the jury include the determination of the credibility of witnesses, the weighing of the evidence, and the drawing of justifiable inferences of fact from proven facts. It is the function of the judge to deny the jury any opportunity to operate beyond it province. *The jury may not be permitted to conjecture merely, or to conclude upon pure speculation* or from passion, prejudice, or sympathy. The critical point in this boundary is the existence or non-existence of reasonable doubt as to guilt. If the evidence is such that reasonable jurymen must necessarily have such a doubt, the judge must require acquittal, because no other result is permissible within the fixed bounds of jury consideration. But, if a reasonable mind might fairly have a reasonable doubt or might fairly not have one, the case is for the jury, and the decision is for the jurors to make. 464 F.2d at 243. (Citation omitted) (Emphasis added).

The government in this case was required to prove beyond a reasonable doubt that Mr. Nikulin committed the crimes charged, essentially:  Computer Intrusion; Intentional Transmission Causing Damage to a Protected Computer; Aggravated Identity Theft; Conspiracy; and Trafficking in Unauthorized Access Devices. The jury could only have found Mr. Nikulin guilty of these crimes by use of conjecture and speculation, not facts. The undisputed fact is LinkedIn, Dropbox and Formspring suffered computer intrusions.  However, the disputed issue in this trial was who was responsible for these intrusions.  In furtherance of proving who was responsible for these intrusions, the prosecution was unable to produce any direct evidence to connect Mr. Nikulin to these crimes.  There was no confession.  There was no co-conspirator who testified that Mr. Nikulin was the perpetrator and no independent third party witness observed these crimes.

4

1    Left with no direct evidence, the prosecution sought to introduce unreliable circumstantial

2  evidence.

3    After weeks of circumstantial evidence that failed to tie Mr. Nikulin to the actual intrusions

4  of Dropbox, Formspring, or LinkedIn, the government ultimately relied on FBI Special Agent

5  Miller as their expert witness in order to tie up the evidence and make their case against Mr.

6  Nikulin.  Agent Miller was essentially allowed to provide a closing argument before the

7  government conducted their closing argument.  However, Agent Miller's testimony was replete

8  with contradictions and inaccuracies. Moreover, it was evident that Agent Miller was not qualified

9  to testify as an expert on the subject of cybercrime because of his lack of familiarity with notorious

10  and wanted cyber-criminals.

11    **FBI Special Agent Miller**

12    The following exchange between Agent Miller, Defense Attorney Adam Gasner, and the

13  Court is a helpful illustration on why the government's overreliance on Agent Miller's testimony is

14  unacceptable. The context of the following conversation is the defense team sought to question

15  Agent Miller on the parameters of his knowledge of the cybercrime community, his investigative

16  strategies, and alternative suspects--specifically, Yevgeniy Bogachev, an individual that shared the

17  same first name, birth month, nationality [among other factors,] and who was determined by the

18  American Intelligence community to be responsible for the largest computer intrusions and thefts

19  in our history-- approximately $100 million dollars.  Mr. Bogachev had the highest bounty of any

20  cybercriminal in history- $3 million. And yet Agent Miller had no knowledge of Bogachev's

21  alleged crimes, capabilities, or relationships to the Kremlin as evidenced by the following exchange

22  at trial:

23  (Mr. Gasner's Cross-examination of SA Miller re Bogachev):
Q: Are you aware in [the] course of your investigation into Russian cyber criminals that Mr.
Bogachev is wanted by the FBI?

GASNER CRIMINAL LAW
Law Chambers Building
345 Franklin Street
San Francisco, CA 94102

A: Based on this photo, yes.

Q: And does what you are looking at looks to be a wanted by FBI poster that you are familiar with?

A: It does.

Q: You have seen many posters similar, haven't you?

A: I have seen some, yes.

Q: Okay. And do you recognize the individual in that photograph from your investigations?

A: I do not.

Q: And you are aware-- have you-- were you aware that Mr. Bogachev was wanted by the FBI?

A: Based on this poster, yes, that's what it says.

**The Court:** Wait. Wait. He is asking--are you saying that this poster is the only way you knew this?

A: Yes. I knew the name and I knew that he was wanted; but I didn't know the specific charges.

(Nikulin trial transcript, Volume 7, p. 693)

      The fact that Agent Miller was not familiar with one of the most serious cybercrime cases in United States history, or the alleged perpetrators of those crimes, makes his testimony unreliable.  The government in this case went to great lengths to differentiate the crimes and methods which Mr. Bogachev used in the Gameover Zeus case and contrasted them with the allegations against Mr. Nikulin. However, because Agent Miller was not familiar with the subject matter required in order to testify in the field of cybercrime, the Government was equally unqualified to make affirmative distinctions about the methods in that case versus the crimes charged in this case. This overreliance on Agent Miller's testimony did not stop the government from averring to these false equivalencies during their closing and rebuttal statements.

      During this trial, we also heard evidence that there is a consensus by American intelligence community that the Russian government is a sponsor of cyberterrorism and other cyber-criminality. And yet, Agent Miller testified he had no reason to doubt the information he received from the Russian government in a cybercrime investigation.  Again, here we are reminded that Agent Miller himself was not a credible expert and yet the jury had to rely on his designation as an expert in order to reach their findings as *not one other witness in this case testified Mr. Nikulin was part of these intrusions.*

GASNER CRIMINAL LAW
Law Chambers Building
345 Franklin Street
San Francisco, CA 94102

6

**The Hotel Video**

In order to link Mr. Nikulin to these computer intrusions, the government introduced two videos that appeared to be taken from a mobile phone. The prosecution was able to identify two of the co-conspirators, Oleg Tolstikh and Nikita Kislitsin, in the latter video through Agent Jeffrey Miller.

One of the videos was taken from inside of one car and showed the defendant driving another car in the winter in a desolate area. That video showed nothing more than Mr. Nikulin driving a nice car. There was no audio and no other evidence in this first video to connect Mr. Nikulin to the computer intrusions or any other of the crimes for which he was convicted.

The second video again appears to be taken from a cellular phone and appears to be Mr. Nikulin with a group of people working inside a hotel conference room. In this video a group of about 8-10 individuals are seen discussing the development of a potential internet cafe. There is no mention of hacking or intrusions into companies. None of the victim companies in this case are even mentioned. Agent Miller testified he did not know the identities of all of the individuals shown in the video and did not know the motivations or business dealings of the people in the video. The only connection to the hacks at issue in this case is that two of the individuals in the video - Nikita Kislitsin and Oleg Tolstikh - are later linked to the attempted sale of the Formspring data. At best, for Mr. Nikulin, this is guilt by association.

**Subscriber information for the IP addresses obtained through MLAT**

The government at trial relied heavily on subscriber information obtained through a Mutual Legal Assistance Treaty (MLAT) with the Russian government. Specifically, the information the U.S. government obtained from the Russian government purported to connect one of the IP addresses [ending in .239 which was associated with the LinkedIn intrusion] to Mr. Nikulin's

GASNER CRIMINAL LAW
Law Chambers Building
345 Franklin Street
San Francisco, CA 94102

7

residence address in Russia. It is critical to note that this was not the same IP address tied to the Dropbox or Formspring intrusions.

One of the most striking points here against the government is that the <u>actual certificate of authenticity</u> for the IP subscriber evidence provided by the Russian government to the United States was not filled out correctly or completely, and did not have any degree of reliability as to the information being provided.

On cross-examination on this issue, Agent Miller testified he had no reason to distrust the information being provided by the Russian intelligence, yet he also admits the Russian government is a state sponsor of cyber-crime and cyber-terrorism.  This contradiction cannot be reconciled and undermines the credibility of Agent Miller's testimony.

Given that the user subscriber information sought was actually from a privately owned internet company, Agent Miller was asked why he did not independently verify information he received from Russian intelligence sources. Miller's answer was troubling; he essentially stated that by doing so it would potentially tip off the perpetrator.  Agent Miller stated:

> So, I think as other Special Agents have testified, the United States has the Mutual Legal Assistance Treaty with various countries. And several countries do not extradite their own citizens. And so if I request records for a certain account, it may tip off the individual that owns that account; and they would never never leave that country. So they would never leave Russia, and we would never be able to apprehend the individual.
> (SA Miller Cross Examination, Nikulin Trial,Volume 7 trial transcript, p.757, line 7)

Agent Miller also testified about other unreliable and suspicious behaviors by the Russian government officials with respect to their conduct in response to the MLAT request.  Agent Miller stated the initial response to the MLAT inquiry by Russian officials included only information that was publicly available and was not responsive to his inquiry.

*USA v. Nikulin*
**Case Number: 16-cr-00440-WHA**
**DEFENDANTS' POST - TRIAL RULE 29 AND 33 BRIEF**

GASNER CRIMINAL LAW
Law Chambers Building
345 Franklin Street
San Francisco, CA 94102

Agent Miller testified his second attempt at obtaining the information from his initial request under the MLAT agreement was also unsuccessful because the Russians provided him with blurry pages that were not discernible.

When Agent Miller followed up on a third attempt to obtain the same information from the Russian government, he was finally sent a document which included multiple pages of names and address, including Mr. Nikulin's, among others. On cross-examination, Agent Miller was not able to explain why he did not follow up on the other individuals listed as being the subscriber of IP addresses associated with the computer intrusions at LinkedIn.

In its case-in-chief, the government heavily relied on evidence that was provided by the Russian government who themselves are considered a state-sponsor of cyber-terrorism, cyber-crime, and are notorious for providing misinformation to the American Intelligence Community.

With respect to the subscriber information evidence allegedly tying Mr. Nikulin's Russian address to the .239 IP address: a) it was obtained by a highly questionable source, i.e. the Russian government and  2) the certificate of authenticity that accompanied the documents provided by the Russian government  to the United States under the MLAT agreement was defective and improperly filled out and thus is unreliable; and 3) the government conceded via Agent Miller they made no efforts to independently verify this information.  No reasonable juror could have relied on this evidence to support a conviction.

**Evgeniy Bogachev**

There was a lot of evidence introduced regarding the name of the defendant.  An expert translator and linguist testified about the first name of the defendant –Yevgeniy – also being translated to Evgeniy or shortened to Zhenya.  The government repeatedly stated that "Zhenya was a "nickname" for Yevgeniy, despite the fact that their own witness stated that this was not a unique

GASNER CRIMINAL LAW
Law Chambers Building
345 Franklin Street
San Francisco, CA 94102

"nickname" but in fact was a ubiquitous shortened name for every single person named "Yevgeniy" irrespective of how their name was spelled.

In this case, the case agent testified there are other cyber criminals from Russia with the same first name, such as Evgeniy Bogachev.  Yet, Agent Miller claimed numerous times not to be familiar with Evgeniy Bogachev despite being confronted with evidence that Evgeniy Bogachev was wanted by the FBI and had a largest bounty of any criminal wanted by the US government. See argument, *Supra*.

**The Jail Call**

The government introduced statements made by Mr. Nikulin during jail calls. However even the translation of that jail call is subject to interpretation.  The government's language expert testified that the word hack can also be translated to break, not hack. That expert also testified that context and setting is important to understanding the meaning of what was said.  In that conversation, it is noted that Mr. Nikulin is laughing in multiple places in the translation during this call with his girlfriend. The mistranslation of Mr. Nikulin's statements did not take into account his sarcasm, frustration from being in a foreign jail, or his dark and strange sense of humor.

Furthermore, it seems the only reason this jail call was introduced into evidence was to prejudice the defendant by making it appear Mr. Nikuln was in a prison for a different crime.  When in truth and in reality he was in a local county jail pending trial on the instant case.

Accordingly, the Court should grant the Rule 29 motion and dismiss this case.

**C.  Alternatively, A New Trial is Required Under FRCrP 33**

The Ninth Circuit has held that "[a] district court's power to grant a motion for a new trial is much broader than its power to grant a motion for judgment of acquittal." *United States v. A. Lanoy Alston, D.M.D., P.C.,* 974 F.2d 1206, 1211 (9th Cir. 1992). Importantly, the Court need not

view the evidence in a light most favorable to the verdict but may instead evaluate for itself the

credibility of the witnesses:

> The district court need not view the evidence in the light most favorable
> to the verdict; it may weigh the evidence and in so doing evaluate for
> itself the credibility of the witnesses. . . If the court concludes that,
> despite the abstract sufficiency of the evidence to sustain the verdict, the
> evidence preponderates sufficiently heavily against the verdict that a
> serious miscarriage of justice may have occurred, it may set aside the
> verdict, grant a new trial, and submit the issues for determination by
> another jury.'" *Id.* at 1211-12 (*quoting United States v. Lincoln*, 630
> F.2d 1313, 1319 (8th Cir. 1980) (emphasis added).

Under Rule 33, the trial court is expected to bring its own learned opinion to the

determination of the sufficiency of the evidence. The trial court's duty to reweigh the evidence is

high-lighted by the fact that its decision to grant a new trial is left to its sound discretion. Alston,

974 F.2d at 1212. The Ninth Circuit has observed:

> Appellate deference makes sense. Circuit judges, reading the dry pages
> of the record, do not experience the tenor of the testimony at trial. The
> balance of proof is often close and may hinge on personal evaluations
> of the witness demeanor. *Id.*

Here the Court should rely on its judicial experience to grant a new trial for there simply

was insufficient evidence of criminal intent or even of the existence of a charged crime to allow

the jury's verdict to stand. As set forth above in the Rule 29 portion of the brief, and incorporated

herein by reference, there is insufficient evidence to sustain the verdict, and allowing the verdict to

stand will result in a serious miscarriage of justice.

In addition to the grounds previously set forth, the jury's verdict clearly manifested a

Mis-understanding of the evidence. This blinding inconsistency, represents, at a minimum,

evidence that preponderates sufficiently heavily against the verdict that a serious miscarriage of

justice may have occurred. The Court should order a new trial.

11

**III.      CONCLUSION**

Viewing the evidence most favorably for the government, the Court is required to find each of the elements of charges presented have been satisfied to allow this case to continue. Based on the evidence presented in this trial, the Court should end this case by entering judgments of acquittal for Mr. Nikulin, or alternatively, a new trial.


DATED:  August 25, 2020

Respectfully submitted,

_____/s/_____
ADAM G. GASNER
Attorney for Defendant
YEVGENIY ALEKSANDROVICH NIKULIN


_____/s/_____
VALERY NECHAY
Attorney for Defendant
YEVGENIY ALEKSANDROVICH NIKULIN

**GASNER CRIMINAL LAW**
Law Chambers Building
345 Franklin Street
San Francisco, CA 94102

*USA v. Nikulin*
**Case Number: 16-cr-00440-WHA**
**DEFENDANTS' POST - TRIAL RULE 29 AND 33 BRIEF**