1  ADAM G. GASNER (SBN 201234)
   Law Chambers Building
2  345 Franklin Street
   San Francisco, CA  94102
3  Telephone:     415-782-6000
   Facsimile:      415-782-6011
4  E-Mail:           adam@gasnerlaw.com

5

6  VALERY NECHAY (SBN 314752)
   Law Chambers Building
7  345 Franklin Street
   San Francisco, CA 94102
8  Telephone: 415-652-8569
   E-Mail: valerynechaylaw@gmail.com
9

10  Attorneys for Defendant
    YEVGENIY ALEKSANDROVICH NIKULIN

**GASNER CRIMINAL LAW**
Law Chambers Building
345 Franklin Street
San Francisco, CA 94102

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>YEVGENIY ALEKSANDROVICH NIKULIN,<br><br>Defendant. | Case No. 0971 3:16-CR-00440-001 WHA<br><br>DEFENDANT YEVGENIY ALEKSANDROVICH NIKULIN'S SENTENCING MEMORANDUM<br><br>Date:  September 29, 2020<br>Time: 2:00 p.m.<br><br>HON. WILLIAM ALSUP |

Defendant Yevgeniy Nikulin, by and through his attorneys of record, Adam G. Gasner and Valery Nechay, hereby submit this sentencing memorandum recommending Mr. Nikulin be sentenced to a custodial sentence of time served—at which point it is anticipated that Mr. Nikulin will be

1

deported to his country of origin, Russia, since Mr. Nikulin has no legal immigration status in the United States. He is only in the United States as a result of extradition proceedings. He has never visited the United States prior to his extradition and has no family or friends in the United States.

Mr. Nikulin was arrested on this case on October 5, 2016 and has been in continuous custody since that time—nearly 48 months.

Section I of this sentencing memorandum addresses the findings the defense recommends the Court makes in its Statement of Reasons for imposing judgment here. Section II of the memorandum outlines the supporting argument for the recommended findings.

## I.  INTRODUCTION AND DEFENSE RECOMMENDATION ON CUSTODIAL SENTENCE AND STATEMENT OF REASONS

Defendant YEVGENIY ALEKSANDROVICH NIKULIN ("Mr. Nikulin"), a 32-year-old Russian national with no criminal record, comes before the Court for sentencing after guilty verdicts, on July 10, 2020 by jury trial on all nine counts of the Indictment[1] consisting of the following violations: 18 U.S.C. §§ 1030(a)(2) and (c)(2)(B) – Computer Intrusion (Counts 1, 4, and 7), 18 U.S.C. § 1030(a)(5)(A) – Intentional Transmission of Information, Code, or Command Causing Damage to a Protected Computer (Counts 2 and 8), 18 U.S.C. § 1028A – Aggravated Identity Theft (Counts 3 and 9), 18 U.S.C. § 371 – Conspiracy (Count 5), 18 U.S.C. § 1029(a)(2) – Trafficking in Unauthorized Access Devices (Count 6). PSR, ¶ 1-2.

The defense makes the following sentencing recommendations as well as PSR annotations:

1. Regarding the Court's findings on the presentence investigation report (PSR), the defense requests the Court adopt the factual recitation of the offense conduct and the offender characteristics as delineated in the PSR submitted by U.S. Probation.

---

[1] Dkt. 4, October 20, 2016

**GASNER CRIMINAL LAW**
Law Chambers Building
345 Franklin Street
San Francisco, CA 94102

However, the defense objects to the loss amount calculation pursuant to U.S.S.G. § 2B1.1(b)(1) by US Probation and the Government and submits that the loss amount in ¶ 51 of the PSR (Dkt. 274) and in the government's sentencing brief is overstated and not supported by competent evidence. The defense submits that a finding of a loss amount of more than $15,000.00 pursuant to § 2B1.1(b)(1)(C) is warranted but disagrees with the loss amounts that have been claimed by the victim companies and objects to the court using these conclusory claims to support increasing the guideline calculation beyond the 4 level addition provided by § 2B1.1(b)(1)(C).

2. Regarding the Court's findings on whether a mandatory minimum sentence applies, the defense submits that one or more counts of conviction in this case carry a mandatory minimum term of imprisonment and the sentence recommended by the defense is above the applicable mandatory minimum. Specifically, Mr. Nikulin stands convicted of two counts of 18 U.S.C. § 1028A – Aggravated Identity Theft, each of which carry a two-year mandatory minimum as outlined in ¶ 49 of the PSR. These mandatory minimums may be run concurrent to each other but at least one of them is to be run consecutively to any other term of imprisonment on other charges. Accordingly the mandatory minimum sentence in this case is 24 months.

3. Regarding the Court's determination of the guideline range, before departures or variances, the defense requests the Court find the following:

    a. Total base offense level:    20

    b. Criminal history category:    I

    c. Guideline range:    33-41 Months

    d. Supervised release range:    Cts. 1, 2, & 4, 8 – 1-3 years
                                                        Cts. 3, 9 – 1 Year

  e. Maximum fine:      $250,000.00

    i. The defense requests that the fine be waived or below guideline range because of inability to pay.

4. Regarding the guideline sentencing determination, the defense requests the following:

  a. The court impose a sentence outside and below the sentencing guideline system (i.e., a downward departure and/or variance). See arguments, *infra*.

5. Regarding departures pursuant to the guideline manual, the defense requests a departure below the advisory guidelines for the following reasons:

  a. Age (24 years old at time of the offenses) per 5H1.1

  b. Mental and emotional condition per 5H1.3

  c. Physical condition per 5H1.4

  d. Family ties and responsibilities per 5H1.6

  e. Extreme psychological injuries per 5K2.3

6. Regarding the Court's determination for a variance, the defense requests the following:

  a. The defense is requesting a variance below the advisory guidelines pursuant to 18 USC 3553(a)(1) for the following reasons related to the history and characteristics of the defendant:

    i. Age

    ii. Family ties and responsibilities

    iii. Lack of youthful guidance

    iv. Mental and emotional condition

    v. Non-violent offender

    vi. Physical condition

GASNER CRIMINAL LAW
Law Chambers Building
345 Franklin Street
San Francisco, CA 94102

4

*USA v. NIKULIN*, NO. 16-CR-00440-WHA
SENTENCING MEMORANDUM

7. Regarding the court determination of restitution, the defense requests the Court determine restitution commensurate with the loss amount—which is in dispute.

The defense requests that the Court, for the compelling reasons below, exercise its discretion and impose a downward variance from the guideline range and sentence Mr. Nikulin to a term of imprisonment of time served, which at the time of sentencing will be nearly 48 months.

## II.  SENTENCING

With the advent of *U.S. v. Booker*, 125 U.S. 738 (2005), the Court is restored with the power to sentence as it sees fit within the statutory framework of 18 U.S.C. § 3553(a). The restoration of this power gives the Court real discretion to fashion a sentence "sufficient but not greater than necessary" to achieve the purpose of sentencing set forth in 18 U.S.C. §3553(a)(2) after considering the following:

(1) The nature and circumstances of the offense and the history and characteristics of the defendant [§3553(a)(1)];

(2) The need for the sentence imposed:

   (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

   (B) to afford adequate deterrence to criminal conduct;

   (C) to protect the public from further crimes of the defendant; and

   (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner [§3553(a)(2)];

(3) The kinds of sentences available [§3553(a)(3)];

(4) The advisory – but non-mandatory – Sentencing Guidelines [§3553(a)(4) and (a)(5)];

(5) The need to avoid unwarranted sentencing disparity among defendants with similar records and similar conduct [§3553(a)(6)]; and

(6) The need to provide restitution to any victim of the offense [§3553(a)(7)].

In this case, the Court must choose the minimally sufficient sentence to fulfill the purposes of sentencing based on a consideration of all §3553(a) factors. *Kimbrough v. U.S.,* 128 S.Ct. 558, 570 (2007). Accordingly, the defense submits that a 48-month sentence is minimally sufficient to fulfill the purpose of sentencing. (*See* argument, *Infra.*)

### A. THE NATURE AND CIRCUMSTANCES OF THE OFFENSE AND THE HISTORY AND CHARACTERISTICS OF THE DEFENDANT [§3553(a)(1)]

**The Nature and Circumstances of the Offense:**

The PSR accurately summarizes the nature and circumstances of the offenses adduced at trial. However, the loss amounts attributed to Mr. Nikulin pursuant to § 2B1.1(b)(1) are not credible and should not be accepted by the court in determining the offense level and advisory guideline calculation.

Since the conclusion of trial there have been varying claims from the corporate victims regarding the losses attributed to the computer intrusions in this case. Notably at trial, the victim companies were only required to claim over $5,000.00 in losses to meet the statutory requirements for a conviction and at trial there was no testimony regarding specific details of the total loss amount.

In the time since the verdict, the government, the defense, and US probation have been provided claims of loss amounts by the corporate victims that do not appear to be based in fact. Most egregiously, post-verdict, LinkedIn originally claimed a loss amount with no supporting documentation of $5,000,000.00. This number was later revised (after the defense objected to this number) to $2,000.000.00 ─ again with no supporting documentation. The evidence at trial suggests that *prior* to the computer intrusions in this case, LinkedIn had an enormous salaried staff who worked exclusively on network security. This staff conducted an investigation into and

GASNER CRIMINAL LAW
Law Chambers Building
345 Franklin Street
San Francisco, CA 94102

remediation of the intrusions in this case. This is exactly what they were hired to do and there is no evidence to support a claim that LinkedIn suffered millions of dollars in actual loss.

Similarly, but on a lessor scale, Dropbox has estimated its loss at $514,000.00 without supporting documentation.

Notably, Formspring has estimated its loss to be $20,000.00. The variance in these loss numbers alone suggests these calculations are a product of conjecture and not based on competent, reliable, and credible evidence.

In this case the loss amount is not accurate and the claims of the corporate victims overstates the amount of the loss and the seriousness of the offense. See, e.g. *US v. Broderson*, 67 F.3d. 452 (2d Cir. 1995) [affirming seven level departure where defendant did not personally profit.]

The factors in 18 U.S.C. § 3553(a) favor a sentence of credit for time served rather than imposing additional imprisonment. As the Supreme Court made clear in *Gall v. United States*, while the guidelines are the starting point in determining an appropriate sentence, the judge should consider all relevant section 3553(a) factors. Gall, supra, 169.L.ED.2d 445, 457; 128 S.Ct. 586, 596 (2007). "In doing so, [the district judge] may not presume that the Guidelines range is reasonable. He must make an individualized assessment based on the facts presented." Ibid. [internal citations omitted].

Accordingly, the defense submits that a sentence of 48-months imprisonment, which Mr. Nikulin has nearly completed at the time of sentencing, is minimally sufficient to fulfill the purpose of sentencing. (*See* argument, *Infra.*)

//
//

## The History and Characteristics of the Defendant

### i. Mr. Nikulin Should Receive a Sentencing Variance as a Result of the Extreme Abuse he Suffered as a Child, Which is a Well Recognized Variance Under Federal Law (§ 5H1.12, § 5K2.0(d)(1), § 5K2.13)

"It requires no citation of authority to assert that children who are abused in their youth generally face extraordinary problems developing into responsible, productive citizens." *Santosky v. Kramer,* 455 U.S. 745, 789 (1982). In accordance with this logic, district courts have routinely granted sentencing reductions where a defendant was victimized as a child. *United States v. Walter*, 256 F. 3d 891 (9th Cir. 2001.) See also *United States v. Ayers*, 971 F. supp. 1197 (N.D. Ill.1997) (granting departure based on cruel childhood with relentless physical and psychological abuse over course of years.)

*Booker* and its progeny allow district courts to consider these factors as a part of their analysis under §3553(a). See e.g. *United States v. Samuels*, 2009 WL 875320 (S.D.N.Y. April 2, 2009) (imposing credit for time serve sentence rather than the Guideline range of seventy to eighty-seven months where defendant "was raised under poor economic circumstances with an abusive father addicted to crack"; See e.g. *United States v. Mapp*, 2007 WL 485513 (E.D. Mich. Feb 9, 2007) (granting variance based on defendant's upbringing where he frequently witnessed domestic violence and substance abuse by his parents.)

Mr. Nikulin (*referred to interchangeably hereafter as Nikulin*) is a 33-year-old man who was born in Moscow, Russia, where he resided his entire life prior to his incarceration in the Czech Republic and subsequent extradition to the United States, arising from this case. The PSR accurately describes the psychological and physical abuse Mr. Nikulin, his two older brothers, and mother suffered at the hands of his biological father during childhood. According to Nikulin's mother, Lyuboy Ivanovna Sokirdonova, the abuse began before Nikulin was born; Nikulin's

mother was routinely attacked and beaten in the stomach when she was pregnant with him. When Nikulin was a boy, his father continued to inflict his rage-fueled episodes of domestic terrorism on his family.

His mother recalled one instance when Nikulin's father inexplicably grabbed him as a small boy and furiously threw him against a wall causing him great pain. During another example of the daily terror Nikulin and his family suffered, his father brought home an AKM machine gun and started shooting at random—riddling their home with bullet holes—but luckily, missing everyone in the home, as his mother provided cover to her children, who she forced on the ground during this incident while she used herself as a human shield. *Exhibit C, PSR ¶77.*

As a result of the chronic abuse in the home, Nikulin experienced behavioral issues such as delayed speech development, enuresis until he was a preteen (or involuntary urination), night terrors, self-isolation, depression, social anxiety, and poor performance in school [he was held back one year and received mostly C's thereafter]. *Exhibit C, PSR ¶80.* Regarding his demeanor during his childhood, his mother described him as having many problems and being timid, apprehensive of other children, easily misunderstood due to his communication and speech issues, and misbehaving simply for the approval of his peers. Nikulin's mother and her husband opined that he is a "benevolent and compassionate person" who is desperately in need of psychiatric care and treatment, which they are committed to providing when he returns to Russia. *Exhibit D.*

Mr. Nikulin was six-years old when his biological father and mother divorced. His biological father was subsequently imprisoned for many years; he died the year that Nikulin was arrested. That same year in May of 2016, Mr. Nikulin's older brother Alexander [who suffered from schizophrenia] committed suicide by hanging in May 2016. Mr. Nikulin states that he was remarkably close to this brother who he viewed as a best friend and role model. The grief from his death continues to take a large emotional toll on him. *PSR ¶80.*

9

### ii. Mr. Nikulin Should Receive a Sentencing Reduction as a Result of Extreme Psychological Injury Resulting from Recent Death of a Family Member (§ 5K2.3)

A sentencing reduction may also be appropriate where a defendant suffered from the recent death of a family member. *See e.g. United States v. Collington,* 461 F.3d 805 (6th cir. 2006) (upholding sentence of 120 months where Guidelines called for 188-235 months in drug and gun case, based in part on the fact that defendant's father was murdered when he was nine-years-old and his mother died two years later*; see also United States v. Castillo,* 2007 WL582749 (S.D.N.Y. Feb. 26, 2007) (varying downward twenty-four months partly because of the depression, anxiety, and pressure defendant experienced at a young age due to loss of both parents.)

### iii. Mr. Nikulin Should Receive a Sentencing Reduction as a Result of the Effects of Imprisonment on the Defendant's Health and Need for Medical Care (§ 5h1.4)

While Mr. Nikulin was incarcerated in the Czech Republic the same year his brother committed suicide by hanging, he witnessed a fellow inmate commit suicide by hanging in the cell next to his. ***Exhibit C. 5K2.3: Extreme Psychological Injury.*** During the PSR interview conducted by defense counsel Valery Nechay, Mr. Nikulin described his experience during that time as "a living nightmare." He lamented about the horrors of being strapped to a gurney for many days and hours on end and force-fed unknown medications. This traumatic experience is corroborated by his stepfather's letter to the court as well. ***Exhibit D.*** His mother stated that when they visited him in the Czech jail during 2016, Nikulin was not himself; he was impossible to communicate with, and did not even recognize his stepfather, with whom he had a close relationship since his mother remarried in his adolescence. When Nikulin did finally speak to them during this Czech visit, his mother stated that he spoke of nonsense and delusions. ***Exhibit C.*** Mr. Nikulin continues to suffer from nightmares, anxiety, difficulty communicating, sudden and inconsolable crying without

explanation, and often expresses extreme despair when he is finally able to communicate; during those episodes, Nikulin has a hard time answering direct questions, but will periodically say things like, "my soul hurts," as well as expressing his apprehension about ever returning home at all.

In May of 2019, Dr. Grinberg diagnosed Mr. Nikulin with Posttraumatic Stress Disorder, psychosis, and a dissociative and conversion disorder. **§ *5H1.3: Mental and emotional conditions.*** However, it is clear from observing and engaging with Mr. Nikulin over the last few years, conversing with his family and loved ones, and reviewing his medical records that he may suffer from other undiagnosed disorders, such as some form autism. Mr. Nikulin exhibits a broad range of behaviors that seem indicative of this condition such as: a) inability to communicate clearly or in a linear manner, b) exhibits repetitive behaviors/statements, c) exhibits challenges with social skills and nonverbal communications/social queues, d) and has challenges controlling his emotions. His family has conveyed that although Nikulin has a history of psychiatric distress, [which may in part result biologically from the psychiatric issues his father and brother suffered from,] they believe his conditions have been worsened by the onset of his brother's passing, the suicide he witnessed in a Czech jail a short time later, the absence of seeing his loved ones in an American jail, and his carceral condition in a foreign jail overall. His stepfather states that if Mr. Nikulin is allowed to return to Russia, he will live with Mr. Sokordinov and his wife, and will receive the mental health treatment he is in desperate need of. ***Exhibit D.***

At the age of 22, Mr. Nikulin was in a serious motor vehicle accident during which he sustained significant injuries. ***PSR ¶81.*** During this accident, his lung was penetrated, his leg was broken, and he suffered a concussion. His mother reported that she noticed a change in him afterwards; he appeared sullen, angry, and erratic in his behavior. **§ *5K2.3 Extreme Psychological Injury.***

Following his divorce from his first wife [with whom he shares a biological daughter

Daniela] at the age of 23, Mr. Nikulin reports that he became depressed and stopped eating—eventually this led to his hospitalization due to malnutrition and psychiatric treatment with psychotropic medications.

Mr. Nikulin cited the lack of his ability to see his family as an emotional challenge to his sense of well-being and mental health. He wants to make up for lost time with his ten-year-old daughter, who is growing "too quickly." He is worried and saddened about how his absence has, and will continue to impact her; he also expresses embarrassment and remorse for how this situation has affected not only Daniel but his entire family. ***PSR ¶85.***

Additionally, Mr. Nikulin has suffered physical health issues in custody for which he has sought medical treatment. These ailments and health issues include the following areas: eye, nasal, back, and kidney pain. He has also had three teeth pulled without replacements and has continued to complain about this pain. ***PSR ¶¶ 88, 89***.

In fact, Mr. Nikulin's attempts to seek treatment and contest the adequacy of the care he received at American jails is corroborated a June 11, 2020 letter from a Russian consulate representative who issued a query through appropriate diplomatic channels regarding Mr. Nikulin's health concerns and the adequacy of his care. ***Exhibit G***. An investigation commenced by the U.S. Marshal Service, as communicated to defense counsel by Tyson Polski.

The Marshal's service subsequently completed their investigation, issued their conclusions, and U.S. Marshall Tyson Polski respectfully provided these findings to defense counsel. ***Exhibit H.*** Defense counsel have reviewed the findings and maintain that Mr. Nikulin did not receive adequate care as he continues to experience "left facial pain, pressure, and burning with occasional pain to his left eye.. " (***Exhibit H***, ¶5).

His daughter and her mother both provided letters to the court in support of the Mr. Nikulin's speedy release. ***Exhibits A and B.*** Mr. Nikulin's daughter Daniela states that she yearns

GASNER CRIMINAL LAW
Law Chambers Building
345 Franklin Street
San Francisco, CA 94102

for her father to be returned to her because "she misses[es] him very, very much." Daniela provides some examples of the things they did together such as take walk[s] in the park, eat ice cream, and take rides at the amusement park. She also describes the momentous occasions they have missed out together as a result of her father's incarceration, such as her birthdays and stage performances, i.e. dance recitals. ***Exhibit A*, PSR ¶86.**

Although his former spouse, Ms. Kuznetsova, ended the relationship with Mr. Nikulin abruptly, after the birth of their daughter and in part as a result of the psychiatric symptoms he was exhibiting, she describes him as a "very good and kind man who treated his daughter lovingly and kindly. He [] spent all of his free time with her and was always very supportive." ***Exhibit B***. She describes the parenting challenges she faces in the absence of their shared parenting efforts, particularly as Daniela is advancing into her formative years. She also describes how Daniela desperately misses her father and constantly asks about his return. ***Id.***

Mr. Nikulin's mother and stepfather are both disabled as noted in the PSR. Over the last few years his mother has had four spinal surgeries and suffered three strokes. ***Exhibit C***. His stepfather suffers from kidney issues. *Id.* The last time he saw them was during a visit in the Czech jail where he was incarcerated in 2016. One of his deepest fears is that his mother will pass away before he sees her again as a free man. Nikulin feels a sense of duty and obligation to care for them and is eager to do so when he returns to Russia. **§ *5H1.7 Family Ties and Responsibilities.***

The undersigned obtained and provided letters from Mr. Nikulin's family to U.S. Probation Officer Specialist, Kyle Pollak. ***PSR, ¶85***. The letters attached hereto as Exhibits A-F are from the following individuals: his daughter, his daughter's mother/former spouse, mother, stepfather, brother, and brother's wife. These letters illustrated a picture of a troubled young man, whose mental health issues have been continuously worsening for years but have been particularly aggravated by his incarceration in numerous foreign jails. The letters also support the notion that

Mr. Nikulin is loved dearly, supported, and needed very much by his family. Lastly, the letters show that Mr. Nikulin has prospects of a bright future upon his return home where he will be cared for and provided housing, emotional support, and the mental health treatment he desperately needs and has not received while in American custody.

### III.	CONCLUSION

For the foregoing reasons, it is respectfully urged that the Court sentence Mr. Nikulin to the defense recommendation and all attendant conditions the Court deems appropriate.

Dated: September 22, 2020

Respectfully submitted,

_____/s/_____
ADAM G. GASNER
Attorney for Defendant
YEVGENIY ALEKSANDROVICH NIKULIN

Dated: September 22, 2020

Respectfully submitted,

_____/s/_____
VALERY NECHAY
Attorney for Defendant
YEVGENIY ALEKSANDROVICH NIKULIN

**GASNER CRIMINAL LAW**
Law Chambers Building
345 Franklin Street
San Francisco, CA 94102

14

*USA v. NIKULIN*, NO. 16-CR-00440-WHA
SENTENCING MEMORANDUM