**Pages 1 - 18**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable William H. Alsup, Judge

| | |
|---|---|
| UNITED STATES OF AMERICA, ) <br> ) <br> Plaintiff, ) <br> ) <br> VS. ) <br> ) <br> YEVGENIY ALEKSANDROVICH ) <br> NIKULIN, ) <br> ) <br> Defendant. ) <br> _____) | **NO. CR 16-00440 WHA** |

San Francisco, California
Monday, March 16, 2020

**TRANSCRIPT OF TELEPHONIC PROCEEDINGS**

**APPEARANCES VIA TELEPHONE:**

For Plaintiff:
        DAVID L. ANDERSON
        United States Attorney
        450 Golden Gate Avenue
        San Francisco, California  94102
  **BY: KATHERINE L. WAWRZNIAK**
        **MICHELLE J. KANE**
        **ASSISTANT UNITED STATES ATTORNEYS**

For Defendant:
        LAW OFFICE OF ADAM G. GASNER
        345 Franklin Street
        San Francisco, California  94102
  **BY: ADAM GASNER**
        **VALERY NECHAY**
        **ATTORNEYS AT LAW**

Also Present:      Special Agent Jeffrey Miller

Reported By:  Marla F. Knox, RPR, CRR, RMR
        United States Official Court Reporter

```
 1   Monday - March 16, 2020                              3:02 p.m.

 2                         P R O C E E D I N G S

 3                              ---oOo---

 4        THE CLERK:  On the phone with us Katherine Wawrzyniak

 5   and Michelle Kane and Adam Gasner and Valery Nechay.

 6        MS. WAWRZYNIAK:  And we have with us Special Agent

 7   Jeffrey Miller with us.

 8        THE CLERK:  Okay.  Thank you.  We are just waiting for

 9   the Judge.

10        MS. WAWRZYNIAK:  Okay.  Thank you.

11        MR. GASNER:  Okay.

12                (Pause in the proceedings.)

13        THE CLERK:  Hi, Judge, we have everyone on the line

14   and court reporter Marla Knox is on the line as well.

15        THE COURT:  Okay.  By the way, did we have a court

16   reporter this morning?

17        THE CLERK:  We did not.

18        THE COURT:  Okay.  All right.  Well, so, Counsel,

19   let's make our appearances.

20        MS. WAWRZYNIAK:  Good afternoon, Your Honor, Katherine

21   Wawrzyniak and Michelle Kane from the U.S. Attorney's Office

22   for the United States, and we have with us here FBI Special

23   Agent Jeffrey Miller.

24        THE COURT:  Great.  Welcome to you.

25        MR. GASNER:  Good afternoon, Your Honor, Valery Nechay
```

1  and Adam Gasner here on behalf of Mr. Nikulin.
2           **THE COURT:** Welcome to you. All right. So the
3  Defendant is not present, N-O-T, not present.
4           **MR. GASNER:** Correct.
5           **THE COURT:** Anyone else?
6                       (No response.)
7           **THE COURT:** My law clerk should be on the line. Is
8  she on the line?
9           **THE CLERK:** Hi, Judge, I'm here.
10          **THE COURT:** Okay. That's good, my law clerk and then
11 my court deputy clerk and then the court reporter. I think
12 that's it.
13     So let's update -- since we talked last, the six Bay Area
14 counties have ordered a shelter-in-place, and we have been
15 getting calls from jurors asking how this affects the trial.
16     And we have postponed telling them. We said we will tell
17 you by 6:00 p.m. what the answer is. So we have not made a
18 final decision on that, but I want you to know that that, of
19 course, has happened since our early call this morning.
20     So let's start with the Government, and you update us
21 on -- well, let's start with the Defense because --
22          **MR. GASNER:** Okay.
23          **THE COURT:** -- the Defense is the one that I want to
24 hear from the most. And particularly whether or not you are
25 asking for a mistrial or a continuance.

1    **MR. GASNER:**  Thank you, Your Honor.

2    And I have actually filed a brief consistent with what I'm
3    about to tell the Court that you or your courtroom deputy can
4    pull up right now.  The Government just got it.

5    It is requesting a continuance in light of the new
6    developments including Agent LaTulip being in contact with
7    someone recently from Europe who then got sick.  I think that
8    is real important piece of information, and evidence that Agent
9    LaTulip can be an asymptomatic carrier.  That is a concern of
10   the Defense.

11   Also since then six Bay Areas have requested that there be
12   a shelter-in-place which affects everybody, and then since then
13   the White House has come out and said that groups nationally,
14   groups of ten or more, should be avoided.

15   So given all of that, I feel responsible to ask for a
16   continuance in the case until a reasonable period to
17   re-evaluate moving forward.  I'm suggesting 30 days,
18   Your Honor.

19   **THE COURT:**  Well, all right.  But, you know, a 30-day
20   continuance would wreak havoc on the jury that we have.  What
21   do you say to that problem?

22   **MR. GASNER:**  It may do that, Your Honor.  We have had
23   long trials before where jurors have been made available for
24   long periods of time.  The MS-13 case in your courtroom is an
25   example of that.  I think everyone has to be home anyway and

1   doing shelter-in-place.

2   And when they come back, maybe we can re-evaluate, two
3   weeks' time, on their availability.  But I think it -- it's
4   unusual, but I think we have four alternates; and we could keep
5   this jury in tact.  They seem like a diligent group.

6   **THE COURT:**  All right.  What does the Government say?

7   **MS. WAWRZYNIAK:**  Well, Your Honor, we just got the
8   Defense's filing, and we were in the process of reviewing it.
9   We were provided today some briefing that has been filed in the
10  Central District of California that outlines some of the case
11  law with respect to an unusual situation like this where the
12  Court has to consider mid-trial whether there should be a
13  continuance or potentially a mistrial.

14  And what I would propose with the Court's indulgence is
15  that we file something -- we could probably do it by 5:30,
16  within about an hour, just giving this -- giving the Court the
17  case law that I think would help it make the decision.

18  And I think to make a very clean record on this before the
19  Court either does a continuance or a mistrial, we would
20  probably need to bring the Defendant in and have him be present
21  for that decision.

22  At a practical sort of factual level, we obviously
23  understand that the situation has changed significantly again
24  since we spoke this morning.

25  Regarding Special Agent LaTulip specifically, the prisoner

that he met with last week has now been tested for coronavirus. We are awaiting the results of that testing. We are informed that the results should be available tomorrow.

We have instructed Special Agent LaTulip not to come to the federal building. We are just keeping in contact with him by phone at this point.

**THE COURT:** All right. This is quite a problem we have on our hands.

(Pause in proceedings.)

**MR. GASNER:** Your Honor, at a very minimum, I think I recommend certainly a short continuance to evaluate with the jurors what their availability is and what their intentions are with regard to sheltering in place.

I mean, we don't need to necessarily make a decision in the moment that there shouldn't be court for the next two weeks or longer; but I think for the near term we should hear also from the jurors about their concerns.

(Pause in proceedings.)

**THE COURT:** Yeah, maybe. I -- see, part of the problem is will that be under -- if they do it by telephone, will that be under oath or should that be done in open court?

All right. Here is what I want to do for now: I want to do a limited grant of this motion for two days. I'm not -- maybe we would grant a continuance for much longer, but I want to call the jury off for tomorrow and for Wednesday and tell

them to check the -- tell me, Theresa, is it a voicemail? How do we communicate to the jurors?

**THE CLERK:** So the Jury Office will send them an outgoing phone call, e-mail and text message if they opted to receive one. So they will receive the communications from us through all those methods.

In addition to that, they have -- the Jury Office has a line where the jurors can call for instructions, and that inbound call will be updated as well.

**THE COURT:** And so when they call for instructions, there will be a statement from us telling them what to do? Is that what you mean?

**THE CLERK:** Correct.

**THE COURT:** Okay. All right. So what I want to do is for today tell the jurors not to come tomorrow and not to come on Wednesday. And that this is -- that this will be in light of the shelter-in-place -- what is the word I'm looking for --

**MR. GASNER:** Directive.

**THE COURT:** Directive, yes. Shelter-in-place directive by the six Bay Area counties and not to mention others but the -- while we evaluate what needs to be done with respect to the trial.

And that they -- that the jurors should continue to honor their obligations not to discuss the case and not to -- not to do any research about the case and to check with the

1  instructions left for them on Wednesday night as to whether or
2  not to report Thursday.
3       Now, that will give us some time -- that's what we should
4  tell the jurors.  Theresa, did you get that down?
5           **THE CLERK:**  Yes, I will verify with you after too.
6           **THE COURT:**  All right.  Secondly, I think we need to
7  find out the test results from the witness -- Secret Service
8  witness, which you say will be available tomorrow.
9           **MS. WAWRZYNIAK:**  Well, the test results, to be clear,
10 are for the prisoner that he met with.  So if that prisoner --
11          **THE COURT:**  I'm sorry.  I misspoke.
12          **MS. WAWRZYNIAK:**  -- tests positive, then the Agent --
13          **THE COURT:**  That's what I meant; right.  That's what I
14 meant to say.
15          **MS. WAWRZYNIAK:**  Yep.
16          **THE COURT:**  And then the -- by the way, what country
17 did the prisoner come from?
18          **MS. WAWRZYNIAK:**  He had recently been in prison in
19 Germany, and then he was transferred to a jail in
20 Washington D.C.
21          **THE COURT:**  Okay.  All right.  Then another problem is
22 that you -- the U.S. Attorney's Office reported to Theresa and
23 she reported to me that no prisoner at the San Mateo Jail has
24 exhibited symptoms of coronavirus, which is encouraging.  That
25 is good.

1   I asked Theresa to ask the U.S. Attorney's Office do they
2   even test or not, and the answer came back that the jail has no
3   tests.  So --
4           **MS. WAWRZYNIAK:**  Yes.
5           **THE COURT:**  Nobody is being tested.  Well, that's --
6   that is discouraging.  So I don't know exactly what to make of
7   that.  I think we ought to think about that problem for a
8   while.
9       Here is something else you can find out -- the U.S.
10  Attorney's Office can find out for me.  The six Bay Area
11  counties that say that essential services should continue, and
12  do -- but as I read it, they don't address one way or the other
13  whether or not a jury trial in a criminal case is an essential
14  service.
15      So we ought to get the -- some guidance from the -- at
16  least from the City and County of San Francisco.  But also we
17  got jurors from all over including Santa Clara County.
18      So maybe you can make some inquiries on that and advise us
19  what your -- what you are finding out from -- what their view
20  of that is.
21          **MS. WAWRZYNIAK:**  Yes, we will do that, Your Honor.
22          **THE COURT:**  Yeah, all right.  Thank you.
23      I must be leaving something out.  The lawyers here can
24  help me.  What else can we be looking into in the next 48
25  hours?

1   **MS. WAWRZYNIAK:** Does the Court wish to receive that
2   briefing that I was talking about earlier that lays out --
3   **THE COURT:** Yes, that will be a very useful briefing;
4   and I would like to know what the scope of my authority is. So
5   don't limit it to cases that help you. I want to know what the
6   limit --
7   **MS. WAWRZYNIAK:** No. This is --
8   **THE COURT:** My authority --
9   **MS. WAWRZYNIAK:** We understand. The brief that was
10  filed in Los Angeles was more a neutral piece as opposed to an
11  advocacy piece that just sort of lays out what the Judge has
12  discretion to do once the jury has been impaneled.
13  **THE COURT:** Yes.
14  **MS. WAWRZYNIAK:** The short answer is that Your Honor
15  does have discretion. We just need to make an appropriate
16  record.
17                  (Pause in proceedings.)
18  **THE COURT:** Well, I am not sure we should ask yet
19  about availability to continue past next week and -- but let's
20  consider that. It would not be under oath, the responses that
21  would come back on the voicemail. We might get hit or miss.
22  We might get five to answer. We might get ten to answer out of
23  the sixteen, and then it may not be clear. It may be iffy.
24     I don't know. I'm doubtful that we would get very useful
25  information there. If they were in court and then I asked that

1  question, then I would quiz them until I got a clear-cut
2  answer; but if we just asked it in the -- and they send in
3  their responses, I -- I don't know.
4       Mr. Gasner, how would you -- you were the one that wanted
5  to ask the jury --
6           **MR. GASNER:**  Right.
7           **THE COURT:**  -- about their availability in, say, two
8  months.
9           **MR. GASNER:**  So maybe not that far out, but I
10 certainly think that it would require -- it would probably
11 require -- first of all, I think the Court could communicate
12 with them maybe even in an e-mail to all of them asking --
13 telling the Court -- you are going to have to communicate with
14 them anyway, I believe, to tell them you are not coming in
15 tomorrow or the next day.
16      In the same e-mail you should inquire as to hardship
17 related to this situation that they might want to disclose to
18 you.  Doesn't mean you are going to rule on it at that time,
19 but some jurors may be okay with coming in and some might
20 express hardship.
21      And then at some point I think either telephonically under
22 oath or on a video conference or maybe even bring them all to
23 court, the group is going to have to be addressed one way or
24 another.  You know, maybe that is on Friday or maybe that is a
25 period a little farther out.

1  For right now, I think we should notify them that they
2  can't be -- they won't be in session tomorrow or the next day,
3  and say further communications about Friday.  And please let
4  the Court know if there is any hardship that is being presented
5  with that travel right now and to explain themselves.  And then
6  you can rule on that hardship on Friday.
7              (Pause in proceedings.)
8        **THE COURT:**  I'm just thinking.
9        **MR. GASNER:**  Yeah, me too.
10             (Pause in proceedings.)
11       **MS. NECHAY:**  This is Valery Nechay on behalf of
12  Mr. Nikulin.  One of the things that is somewhat reassuring is
13  in terms of hardship, unless someone gets directly sick or is
14  caring for someone who is directly ill, they don't have any
15  foreseeable vacation plans.
16       Certainly all of their employers have been directed by the
17  Government to provide sick paid leave.  And so there are more
18  than an unusual amount of circumstances that we should not
19  anticipate as being hardships down the road.  So that's just
20  one thing to consider.
21       **THE COURT:**  Well, what if someone were to say:  Judge,
22  I don't want to serve anymore because everyone including the
23  President, the Governor and the Mayor is saying that it is too
24  great a risk of coronavirus; and I don't want to be in a room
25  with all those people?

1    Is that a legitimate excuse to be -- to be excused?  I'm
2 not saying it is or isn't.  But we have -- it is very likely
3 that someone would say that.
4         **MR. GASNER:**  Yes.  And, first of all, they have to say
5 it, first of all.  Maybe people are scared or are not as
6 scared.  But if they did, you could grant it or deny it on a
7 case-by-case basis after some inquiry.  And that's why we
8 picked extra alternates in any event.
9    If everybody comes in and says it, then maybe we should
10 all be feeling the same way.  We don't know it is going to be
11 everybody right now.
12         **THE COURT:**  Well, we would only need -- we just need
13 five to say it, and we wouldn't have a jury anymore.
14         **MR. GASNER:**  Well, that's possible.  That is possible.
15         **MS. NECHAY:**  And I don't think it has been raised
16 yet -- although it goes without saying -- I think we ought to
17 make a record of it on behalf of Mr. Gasner and myself, we
18 don't take this request lightly.  We know that our client,
19 Mr. Nikulin, has been in pretrial detention for a significant
20 period of time.  So it is a very difficult request to make, but
21 notwithstanding that --
22         **THE COURT:**  I share that.  I share that sentiment.  I
23 don't like the idea of somebody being in custody longer than
24 they need to be until -- the question is do they need to be.
25 And, okay, here is what -- let's -- Theresa, write this down.

1   **THE CLERK:** All right.

2   **THE COURT:** Ask each juror to respond to you
3   concerning any hardship they would have in continuing to serve
4   on the jury and in continuing to serve on the jury if the trial
5   went past the end of next week, not this week, but the end of
6   this week, because I think that's what we are talking about
7   now. And then to give you that information.

8   **THE CLERK:** Okay.

9   **THE COURT:** And then say the Court is not yet in a
10  position to grant any such hardship -- what is the word --
11  discharge -- but the Court is inquiring about their ability to
12  serve to continue to serve. You can -- does anyone have any
13  objection to what I just said?

14  **MS. WAWRZYNIAK:** No, Your Honor.

15  **MR. GASNER:** No, Your Honor.

16  **THE COURT:** All right. How about the Government?

17  **MS. WAWRZYNIAK:** No, Your Honor.

18  **THE COURT:** Ask them to respond, Theresa, by let's say
19  4:00 o'clock tomorrow afternoon.

20  **THE CLERK:** Okay.

21  **THE COURT:** And -- all right.

22  **MS. NECHAY:** Your Honor, if I may, this is Ms. Nechay
23  on behalf of Mr. Nikulin. One suggestion I might have when we
24  make this inquiry of the juror is to provide them with a little
25  bit more certainty about what our request is.

1   For example, if our request is to gauge whether they have
2   a hardship -- you know, if we were hypothetically to allow them
3   to self isolate for the next two weeks, and then is the
4   question we would want them to let us know if they have a
5   hardship serving for two weeks after that or whether our
6   question is whether they just have any hardship moving forward
7   at all?
8       I suppose I was just hoping that we can give them a little
9   bit of clarity about exactly -- or define some parameters.
10              (Pause in proceedings.)
11      **THE COURT:** All right. Theresa, don't change anything
12  I have already said but add this sentence say: In addition,
13  please advise Theresa whether you would still be able to serve
14  as a juror in the event that the trial were suspended for --
15  what did you say, Ms. Nechay? Two weeks?
16      **MS. NECHAY:** Sure.
17      **MS. WAWRZYNIAK:** Your Honor, I think it would be for
18  the duration of the shelter-in-place order, which is currently
19  in place through April 7.
20      **THE COURT:** All right. That's a fair point. Through
21  April 7th. So, in other words, if the duration of the
22  shelter-in-place directive (April 7), and whether they would --
23  I have forgotten how I worded it -- would still be able to
24  serve if the trial were suspended during the duration of the
25  shelter-in-place directive (which ends on April 7) and with the

1  trial to resume thereafter.

2      Let's see what they answer to that is.

3          **MS. NECHAY:**  Thank you, Your Honor.

4          **MR. GASNER:**  Thank you, Your Honor, that sounds right
5  to the Defense.

6          **THE COURT:**  Theresa, did you get that?

7          **THE CLERK:**  Yes, I did.

8          **THE COURT:**  Okay.  All right.  So we will -- that
9  should be not only on an e-mail, but that it should also be on
10 the telephone recording.  I want that message to go out in the
11 maximum number of ways that we can reach the jurors.

12         **THE CLERK:**  Yes, I will write this up and after this
13 call, send it over to the Jury Office.  They are on standby
14 right now.  And then I will give them this entire message, and
15 they will put it through each avenue of communication they
16 have.

17         **THE COURT:**  Great.  Now, are you going to send it to
18 me first or not?

19         **THE CLERK:**  Yeah, I will send it to you for a proof.
20 And then once you approve it, I will give it to the Jury
21 Office.

22         **THE COURT:**  All right.  So we will then need the group
23 of people on the phone and the court reporter will need to
24 reassemble maybe even tomorrow but certainly we will need to
25 regroup on Wednesday, maybe in the morning, maybe in the

1  afternoon to determine what our next step is.
2  **MR. GASNER:** That's fine, Your Honor.  The Defense is
3  available any time it works with the Court.
4  **MS. KANE:** Your Honor, will the Court be putting out
5  an order today on the docket or is that going to wait until
6  tomorrow's proceeding?
7  **THE COURT:** Yeah, that's a good point.  Jolie, you
8  should do an order that says on account of the coronavirus and
9  shelter-in-place directives by the six Bay Area counties, not
10 to mention others, the trial will be suspended for 48 hours to
11 resume on Thursday at 7:30 a.m., subject to further
12 continuances.
13 **THE CLERK:** Okay.  Sounds good.
14 **MS. WAWRZYNIAK:** Your Honor, if I may, a few minor
15 suggestions.  This is Katherine Wawrzyniak.
16 **THE COURT:** Go ahead.
17 **MS. WAWRZYNIAK:** Number one, I think the order should
18 memorialize that the parties were consulted before this order
19 was entered and both had an opportunity to comment on the
20 Court's proposed continuance.
21 **THE COURT:** Right.
22 **MS. WAWRZYNIAK:** And, secondly, I think the order
23 should note that the Court is finding that there is good cause
24 for the continuance.  I think it should specifically use that
25 term; that the Court is making a finding of good cause based on

the pandemic.

**THE COURT:** All right.  I will do that.  Everyone agree with that?

**MR. GASNER:** No objection.

**MS. WAWRZYNIAK:** Thank you, Your Honor.

**THE COURT:** We will do that.  Now, roll those two points into the order.

**LAW CLERK:** Will do.

**THE COURT:** All right.  I don't think I have ever lived through a situation like this.  I'm 74 years old.  I have seen a lot, but I have never had this problem, anything close to it.

   Okay.  My friends, unless there is more business, we are going to adjourn and get busy on this follow-up.

**MR. GASNER:** Thank you, Your Honor.  We will -- thank you very much.  That's all.

**MS. WAWRZYNIAK:** Thank you.

          (Proceedings adjourned at 3:30 p.m.)

                  ---oOo---

### CERTIFICATE OF REPORTER

We certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

DATE:   Sunday, December 13, 2020

*Marla Knox*
_____
Marla F. Knox, RPR, CRR
U.S. Court Reporter