**Pages 1 - 26**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable William H. Alsup, Judge

```
UNITED STATES OF AMERICA,        )
                                 )
          Plaintiff,             )
                                 )
  VS.                            )       NO. CR 16-00440 WHA
                                 )
YEVGENIY ALEKSANDROVICH          )
NIKULIN,                         )
                                 )
          Defendant.             )
_____)
```

San Francisco, California
Wednesday, March 18, 2020

**<u>TRANSCRIPT OF PROCEEDINGS</u>**

**<u>APPEARANCES:</u>**

For Plaintiff:
                        DAVID L. ANDERSON
                        United States Attorney
                        450 Golden Gate Avenue
                        San Francisco, California  94102
                BY:     **KATHERINE L. WAWRZNIAK**
                        **MICHELLE J. KANE**
                        **ASSISTANT UNITED STATES ATTORNEYS**

For Defendant:
                        LAW OFFICE OF ADAM G. GASNER
                        345 Franklin Street
                        San Francisco, California  94102
                BY:     **ADAM GASNER**
                        **VALERY NECHAY**
                        **ATTORNEYS AT LAW**

Interpreters:        Maria Entchevitch and Marina Brodskaya

Reported By:  Marla F. Knox, RPR, CRR
              Official Reporter

| | |
|---|---|
| 1 | **Wednesday - March 18, 2020**                    **12:06 p.m.** |
| 2 | **P R O C E E D I N G S** |
| 3 | **---oOo---** |
| 4 | **THE CLERK:**  Calling criminal action 16-440, United |
| 5 | States versus Yevgeniy Alexandrovich Nikulin. |
| 6 | Counsel, please state your appearances for the record. |
| 7 | **MS. WAWRZYNIAK:**  Good afternoon, Your Honor, Michelle |
| 8 | Kane and Katherine Wawrzyniak for the United States. |
| 9 | **THE COURT:**  Welcome. |
| 10 | **MR. GASNER:**  Adam Gasner and Valery Nechay for |
| 11 | Mr. Nikulin who is present. |
| 12 | **THE COURT:**  Welcome to you and to our Defendant.  And |
| 13 | our interpreters are all set up? |
| 14 | **INTERPRETER:**  We are waiting, Your Honor. |
| 15 | (Pause in proceedings.) |
| 16 | **INTERPRETER:**  We will try it without the equipment, |
| 17 | Your Honor, because it is -- |
| 18 | **THE COURT:**  Why can't you come to court with equipment |
| 19 | that works? |
| 20 | **INTERPRETER:**  The Court Interpreter's Office provides |
| 21 | the equipment, and this is what we worked with last time for |
| 22 | some reason. |
| 23 | **THE COURT:**  No.  Last time one of the units failed, |
| 24 | and you had a second backup so we got by; but this time you |
| 25 | don't have any units that work? |

1    **INTERPRETER:**  I have three units.  And my only guess

2    is the battery in the interpreter's transmitter is not charged

3    for some reason, but I don't have a spare, Your Honor.

4        **THE COURT:**  Do we have spare batteries?

5        **THE CLERK:**  We don't.  The Jury Office has --

6        **INTERPRETER:**  We have one.  Just hold on a second.

7                 (Pause in proceedings.)

8        **THE COURT:**  Who supplies these -- this equipment?

9        **THE CLERK:**  The Jury Office does.

10       **THE COURT:**  The Jury Office, across the hall?

11       **THE CLERK:**  Yes.  Do you want me to go ask if they

12   have it?

13       **INTERPRETER:**  The doors are locked.  I would need two

14   AAA batteries which I don't have.

15       **THE COURT:**  AAA?

16       **INTERPRETER:**  Sorry --

17       **THE COURT:**  Show us what kind you need.

18       **THE CLERK:**  I have these.

19               (Pause in proceedings.)

20       **THE COURT:**  Is it working?

21       **INTERPRETER:**  Yes.

22       **THE COURT:**  All right.  And our interpreters please

23   make their appearance.

24       **INTERPRETER:**  Maria Entchevitch, professionally

25   qualified Russian court interpreter.

1     **INTERPRETER:**  Marina Brodskaya, certified professional

2    Russian interpreter, 301188.

3     **THE COURT:**  Thank you.  Both have been sworn

4    previously.

5     Okay.  We are here on a further hearing on motion by the

6    Defense for a continuance of the trial.  So let's hear first

7    from the Defense.

8     **MR. GASNER:**  Thank you, Your Honor.

9     So I will note that there are a lot of difficulties with

10    proceeding although I want to address first the memorandum of

11    jury responses.

12     I believe that I see three hardships which would not leave

13    us without a jury.  There is others that are less clear, and so

14    I'm not passing judgment on those at this point.

15     But I believe juror number 6, who indicates some chronic

16    disease issue and doesn't want to expose him or her -- herself.

17    Based on that health issue, I would probably qualify that as a

18    legitimate hardship.  I don't know how much juror number 6

19    would be paying attention to the issues at hand or not.

20     I think juror number 10 is expressing a legitimate

21    hardship.

22     And juror number -- alternate juror number 4.  I know that

23    there are others that are probably subject to further inquiry,

24    and I'm surprised that all the jurors didn't get back to us,

25    frankly.  That causes me some concern.

1    **THE COURT:**  This is the most we got as of about 30

2    minutes ago.  Have we gotten anymore?

3    **THE CLERK:**  No.

4    **THE COURT:**  This all -- up to the minute all the

5    responses we got in reply to our request?

6    **MR. GASNER:**  It does give me some pause that everyone

7    didn't respond.  I'm actually -- you were not surprised about

8    that.  You guessed that that would happen.  I was more

9    optimistic that everybody would respond quickly given the

10   circumstances.

11       So I think there were some procedural issues that have

12   come up.  The compounding, I will say, of the virus is of some

13   concern.  When we spoke telephonically on -- I think it was --

14    **MS. NECHAY:**  Monday.

15    **MR. GASNER:**  -- Monday, the Court had indicated 3,000

16   cases in the U.S., about 1 in 10,000.  That has now doubled.  I

17   think it 7,000 as of today.  Obviously that is more like 1 in

18   5,000 with the Bay Area and certainly Santa Clara County

19   looking like a hotspot and that's what is being reported.

20       My concern is partially with the jurors' ability to be

21   present and to not let this distract them from the duty at

22   hand.

23       And my other concern is with regard to -- pardon me,

24   Your Honor -- conflict with access to the federal building

25   although I know this Court presumably has the authority to do

 1   whatever.

 2        **THE COURT:**  I'm sorry.  I have understood everything

 3   except that point.  How could there be conflicts?

 4        **MR. GASNER:**  The general order -- and I'm still

 5   interpreting it -- but I think that there is some difficulty

 6   within the general order in whether or not this would continue

 7   to be a public trial or whether it would not be a public trial.

 8        And under the Constitution, I believe Mr. Nikulin has a

 9   right to an open and public jury trial.  So just looking at the

10   constitutional issues that could be problematic with -- or in

11   conflict with the general order, whether or not the public or

12   press is allowed into the trial.

13        **THE COURT:**  I think the press is here today.

14        **MR. GASNER:**  They are here today.  At least I have

15   seen some of them.

16        **THE COURT:**  Yeah, I think two at least.

17        **MR. GASNER:**  So not -- I'm not certain as to -- as it

18   moves forward, how that is going to look.

19        So I think that the uncertainty is causing us some

20   concern.  I certainly, from a practical matter -- and I can't

21   speak for any other parties -- have some difficulty at the

22   moment in that my own staff is sheltering at home.

23        I believe I could force them to come to work as an

24   exception to the shelter directive, but it does pose some

25   difficulty at the current time with regard to the Defense's

1  ability to give effective assistance although I might be able

2  to get beyond that; but just bringing up to the Court the types

3  of issues that I'm perceiving as difficult, maybe not

4  insurmountable.

5      So because of the fast moving nature of it, of the

6  situation, I'm inclined to continue to request another short

7  continuance to determine whether or not the issue escalates

8  substantially or whether or not it subsides to a point when

9  Mr. Nikulin can get effective assistance and get his fair

10 trial.

11     I know we are in the middle of it.  And I think there

12 would be some difficulties regarding maybe a longer

13 continuance.  But just given, you know, the nature of how

14 quickly things are moving, we certainly don't think that we

15 would get through this -- this Thursday and Friday.  That puts

16 us over a weekend and then next week.

17     You know, the anticipation is that there could be anything

18 from a -- a general order that everyone quarantine, domestic

19 travel ban, to other issues with regard to people being really

20 ill.

21     And I think -- so those are my maybe somewhat ill-formed

22 ideas as I drove in today and as I thought about it last night.

23     I will also note that I understand specifically with

24 regard to my initial issue that Agent LaTulip, the Secret

25 Service Agent -- that we understand had been in contact with an

1    individual not involved in this case for a proffer -- a proffer

2    to me means an in-depth interview in a conference room usually

3    for several hours -- I don't know the specifics of this one --

4    then that person to whom -- excuse me -- who was proffering had

5    traveled recently from Europe -- presumably for this proffer --

6    to Washington D.C., and subsequently fell ill with symptoms

7    consistent with COVID-19.

8         And we are awaiting a test of that person to determine

9    whether or not Agent LaTulip could have been infected, and we

10   don't know that yet.  So that was an initial issue that I think

11   as of yet is unresolved.

12        **MS. NECHAY:**  Can I interrupt?

13        **MR. GASNER:**  Sure.

14        **MS. NECHAY:**  Your Honor, there is some generalized

15   concerns that the Defense wishes to discuss as well.  We

16   anticipated that we might have those tests available in four to

17   six hours and that was back, I believe, on Monday.  And

18   unfortunately -- Monday or Tuesday.

19        **THE COURT:**  You are blaming -- see, this is

20   irritating.  What continuance do you want?  Now you are just

21   blaming the Government for not getting the test results --

22        **MR. GASNER:**  No, Your Honor.

23        **THE COURT:**  -- for a guy in Europe, and you are

24   saying -- you are trying to throw -- do you want a continuance

25   or not?

1          MR. GASNER:  Yes.  Sorry, Your Honor.

2          THE COURT:  To what date?

3          MR. GASNER:  That is not my intention to do that at

4     all.

5          THE COURT:  What date do you want?  I'm going to give

6     you a continuance.

7          MR. GASNER:  Yes, Your Honor.

8       My -- I'm -- pardon me for expressing some uncertainty in

9     these uncertain times.  I'm trying to balance the health risks

10    to the parties with my clients due process rights.  I thought

11    the trial --

12         THE COURT:  Of course.  We are all trying to do that,

13    and I'm going to defer greatly to your needs; and I will give

14    you almost any date you want within reason.  So --

15         MR. GASNER:  Thank you.

16         THE COURT:  -- let's pick a date.

17         MR. GASNER:  So my belief then, Your Honor, the best

18    recommendation I can make given the circumstances is Wednesday,

19    April 8, 2020, when the shelter-in-place order for San

20    Francisco and the other Bay Area counties in which these jurors

21    reside is presumably ended.

22         THE COURT:  April what?  I just didn't hear the date.

23         MR. GASNER:  8th.

24         THE COURT:  That would be the end or the day the trial

25    resumes?

1      **MR. GASNER:**  I think it would be wise to schedule that

2  for either the day the trial resumes or for a status regarding

3  the trial if facts have changed.

4      **THE COURT:**  Well, April 8 is a Wednesday.

5      **MR. GASNER:**  Yes, Your Honor.

6      **THE COURT:**  Okay.  But let's -- I need to tell the

7  jury something.  What date do we tell the jury that the trial

8  would resume?  The 9th or the following Monday?  What date do

9  you think is right?

10      **MR. GASNER:**  I think what I perhaps would recommend

11  would be Monday April 13th with a status, telephonic or

12  otherwise, before this Court on Wednesday, April 8th if not

13  before to determine whether that date is reasonable as the

14  situation changes hopefully for the better.

15      **THE COURT:**  I'm going to talk you into April 9th for

16  the status and April 13th to resume the trial.

17      **MR. GASNER:**  No objection, Your Honor.  Thank you.

18      **MS. NECHAY:**  Your Honor, if I may, I just want to

19  clarify.  I, in no way, wanted to throw the Government under

20  the bus with my comment.

21    My concern about Agent LaTulip was simply -- is

22  illustrative of the problem that we don't have tests in general

23  that are readily available, and that underscores one of our

24  concerns in continuing in the next couple of weeks.

25      **THE COURT:**  That is a very good point, yes.  I'm going

 1  to come to that point in a minute.  All right.  Before I make a

 2  final decision, I'm inclined to do just what Mr. Gasner has

 3  proposed.  Have another status on the 9th at Noon and resume

 4  the trial on Monday, April 13th unless we decide in the

 5  meantime to continue it further.

 6          MS. KANE:  Thank you, Your Honor.  The Government is

 7  available those dates although we have not, of course, had an

 8  opportunity to consult with our witnesses to evaluate their

 9  availability for April 13th.

10          THE COURT:  Well, then -- yes, you can always make

11  another motion to continue it even more.  But right now you

12  don't know of anything specific to throw a wrench in the works,

13  do you?

14          MS. KANE:  No, Your Honor, not as to the dates for the

15  scheduling.  We do have some concerns about the continuance and

16  its impact on the Government's case and potential prejudice to

17  the Government.  So that's something we can brief to the Court

18  if we feel it is necessary.

19          THE COURT:  What I would propose to do if the trial

20  does -- let me go down a list of problems that I see.

21      I see several problems.  I think if we put the trial out

22  until April 13th, we will run a greater risk of losing jurors

23  to the point that we don't have enough to do the trial.  I

24  think that is a substantial risk.

25      And the farther -- not farther -- the further out we put

1   it, the greater that risk.

2       Now, I'm not going to make this public what the jurors

3   said at this time, so that the members of the press who are

4   here won't be able to see this right away because it has

5   private information in there about some of the jurors.

6       But we did receive information, I believe, from 9 of the

7   16, and about two-thirds said in -- came close to saying they

8   could serve.  About one-third came close to saying they could

9   not serve or would not want to serve.  That is a very rough

10  approximation.

11      Whether we would have 12 to serve and continue the case is

12  possible.  We have a fighting chance that that could happen,

13  but that is a risk.  So that's number one risk.

14      Number two is that when they returned, I would want us to

15  voir dire them to see if they could continue to be fair and

16  whether the intervening hiatus has prejudiced -- not prejudiced

17  them but prejudiced their ability to be fair in -- or hampered

18  their ability to be fair is what I mean.

19      Third, I would probably give both sides about ten minutes

20  of an opening statement to remind the jury of the evidence thus

21  far.  No argument.  Just a resuscitation of the evidence.

22      You could talk me into 12 minutes, but both sides would

23  get that.  And then we would resume with the evidence.

24      That would give the jury a way to come back up to speed if

25  they -- because of the hiatus.

**PROCEEDINGS**

1    All right.  I think there is a fighting chance we could

2    salvage this as a fair trial.  There is also a fighting chance

3    we won't be able to do that, but we have invested time in it.

4    I think we should give it a shot and see if we can do it.

5    If not -- and then if you have problems with witnesses --

6    the Government I mean -- you need to bring a separate motion

7    saying:  Look at all the pandemonium that the Judge has visited

8    on you with a new schedule and this is not workable.  I will

9    give that fair consideration.  So far you don't have that.  You

10    just don't know.

11    Here is another consideration I have been thinking -- I

12    know you-all too -- about almost nothing but this COVID-19

13    problem for the last few days, and especially the -- you did

14    not mention this -- the Defense -- to your credit you did not,

15    but I will bring it up -- I have a concern that the Defense

16    lawyers are put under an extra burden of having to go to the

17    jail with a high concentration of people and to talk with their

18    client and that could be dangerous for them, their families.

19    And we need to spare them that extra layer of risk if we can.

20    Now, maybe it can't be done.  But when I found out that

21    the jail doesn't even have a single test kit, that was

22    irritating.

23    Now, what can the Government do?  You are the Government.

24    You ought to be able to call somebody at the Justice Department

25    and say:  For Christ sake, we have a trial going on out here.

**PROCEEDINGS**

1  Can't we at least get enough test kits at the jail to find out

2  if the Defendant on trial is healthy?

3      Now, to me he looks healthy; but, you know, he could be

4  asymptomatic.  We don't know.  And that extra layer of risk

5  that the Defense lawyers are having to undergo worries me.

6      And I would like for us -- one way to avoid it would be a

7  test, and the test could come back and say:  Mr. Nikulin was

8  tested yesterday, and he is perfectly healthy or at least he

9  doesn't have the coronavirus.

10      Now, if that were to be the case, then the Defense lawyers

11  would not have that worry.  So can't the Government -- I'm

12  asking -- please, can't the Government get some tests at the

13  jail where he is being held?

14      And where are my marshals?  I want you -- I want the

15  marshals to ask the jail to do the same thing.  In my view it

16  is good to -- you don't even do this yet, I don't think, taking

17  the temperature is something.

18      **MARSHAL:**  They are doing that now, Your Honor.  The

19  jails are all starting to take temperatures.  Just as you said,

20  they don't have test kits.

21      **THE COURT:**  The U.S. Marshals -- there used to be TV

22  programs about the U.S. Marshals.  You have some say in this

23  country.  Get on the phone and get some tests at that jail.

24  Come on.

25      **MS. KANE:**  Your Honor, Counsel for the Government did

1   previously inquire into test kits; and none were available as

2   far as we could tell throughout our office or --

3        **THE COURT:**  I want you to find -- I want you to do

4   better than that.  I think you can.  You can get on the phone

5   to the chief people.  Tell them that this is not just an

6   ordinary trial.  This is a trial that is under way, and we need

7   some test kits out here.  How many do we need, two or three, to

8   test Mr. Nikulin?

9        I mean, he stands in a special position because he is on

10  trial now.  So as soon as the test kits get here, he ought to

11  be tested right away so the Defense lawyers could know whether

12  they can visit him or not.

13       **MS. KANE:**  Your Honor, I will continue to try to

14  obtain information regarding test kits although I'm not sure

15  given the period that appears to be required between a test and

16  a result that a test kit would necessarily.

17       **THE COURT:**  You can get the results in, like, 48

18  hours.  When President Trump was tested, they had the results

19  in 48 hours.

20       **MS. KANE:**  That's correct, Your Honor; however, the

21  Defendant being in custody, what could happen in those 48

22  hours, I just don't know if that wouldn't allay the concerns of

23  Defense Counsel or not.

24       **THE COURT:**  Well, it would be better than nothing.

25  And at some point I can't solve every problem.  I can only try

1    to solve the major ones, I guess.  But --

2          MS. KANE:  We will make further inquiries.

3          THE COURT:  It is true -- I have learned through

4    discussions with my colleagues -- that recently the jails have

5    started to take temperatures of everyone and all the inmates

6    that -- and certainly anyone who is transported.  And there is

7    some threshold temperature -- I don't know what it is -- like

8    101.4.  I'm making that number up -- that if they have that,

9    then they take them to the sick bay.

10        However, you can be asymptomatic and not have a fever at

11   all; but yet still be infected with the virus.  So that's

12   only -- you know, we don't -- it is a partial fix, the

13   temperature thing.

14        I think the Marshals are trying their best.  We all are

15   trying our best here; but for somebody who is on trial, they

16   ought to have a priority for getting the tests.  That would be

17   much better than just guessing at it.

18        Now, what is the story on -- do you have any update for us

19   on the person who was in contact with your witness from the

20   Secret Service?

21         MS. KANE:  Your Honor, we still don't have the test

22   results, Your Honor.  We are told that the Defendant who had

23   some concerns, the person who was tested, has not displayed any

24   further symptoms.

25                    (Pause in proceedings.)

PROCEEDINGS

1          **THE COURT:**  Well, that's as good as far as it goes;

2     but it only goes part of the way.  So how about the witness --

3     the Secret Service guy himself, how does he feel?

4          **MS. KANE:**  He seems to be fine so far, Your Honor.

5          **THE COURT:**  Well, we certainly will learn a lot

6     between now and April 8th on that front.  That one will be

7     resolved by then, one way or another.

8          **MS. KANE:**  Yes, Your Honor, although -- so are we

9     April 8th for the --

10         **THE COURT:**  Did I say -- yes, April 8th is when we

11    will have a status conference.

12         **THE CLERK:**  You said April 9th.

13         **THE COURT:**  I'm sorry.  My apologies.  April 9th and

14    let's make it Noon.  How is that?

15         **MR. GASNER:**  That's fine for the Defense.

16         **MS. KANE:**  Fine, Your Honor.

17         **THE COURT:**  As information comes in, on either side,

18    any developments that you think we should know about, let us

19    know with a filing so we can stay abreast of the situation.

20         **MS. KANE:**  Absolutely, Your Honor.

21         **THE COURT:**  Now, I want you two -- Theresa, what is

22    the name of the system that the jurors call into or however

23    they find out what their instructions are?  What is the name of

24    that system?

25         **THE CLERK:**  I don't know the name.  All the jury

1    supervisor told me was that they have a recording for the

2    outbound message.

3         THE COURT:  Is that the way we would get in touch with

4    them?

5         THE CLERK:  There is multiple ways.  So that is one

6    way.  Then they are also sent an e-mail or a text message if

7    they opted in for it.

8         THE COURT:  Okay.  If they did not opt in to

9    anything -- well, let me backup.  When you sent the message the

10   other time, how did you send that?

11        THE CLERK:  I sent the message to the Jury Office, and

12   then they dispersed it.

13        THE COURT:  How?

14        THE CLERK:  With their contact information for all the

15   jurors, and then they took message that I sent them and then

16   put it in an e-mail -- text message if the jury opted in for

17   it -- and the --

18        THE COURT:  The Jury Office did all the -- you didn't

19   do any --

20        THE CLERK:  No.  I just sent them the message.

21        THE COURT:  "Them," who do you mean?

22        THE CLERK:  The Jury Office.

23        THE COURT:  All right.  So what would we call that,

24   the recording?

25        THE CLERK:  Yes.

1      THE COURT:  Recording.  Is there a phone number or

2   something for them to call into?

3      THE CLERK:  It is just the Jury Office phone number.

4   I'm not sure exactly what number that they gave.  I'm assuming

5   it is the Jury Office number.

6                    (Pause in proceedings.)

7      THE COURT:  Just a minute.

8      MR. GASNER:  Your Honor, may I have a word with my

9   client in the --

10      THE COURT:  Sure.  Of course.

11                   (Pause in proceedings.)

12                 (Discussion held off the record.)

13      MR. GASNER:  Thank you, Your Honor.  I wanted to make

14   sure Mr. Nikulin was following what was going on and that he

15   didn't have any questions.  We seemed to answer what he needed

16   in the short-term although Ms. Nechay might have some

17   additional information.

18      THE COURT:  Please.

19      MS. NECHAY:  I do, Your Honor.  We have discussed this

20   before.  We obviously didn't make this request for the

21   continuance lightly.  And due to the fact that Mr. Nikulin will

22   have some extended time of pretrial detention, he has a couple

23   of requests for Your Honor just to make his condition a little

24   bit more bearable right now during this time.

25      So he was requesting for Your Honor to permit him to have

1    a non-wifi game console that has some preloaded games on it

2    like chess and Mario Kart.

3        Pretrial detainees right now are suffering from increased

4    isolation.  Of course, most of his family lives in Russia and

5    there are some limits on those expensive phone calls.

6    Additionally, he is not --

7            THE COURT:  Do you have such a unit that he --

8            MS. NECHAY:  He just provided me with this request

9    last night, and I looked it up.  These are game consoles that

10   certainly we would share that information and our suggestion

11   with --

12           THE COURT:  I'm okay with that.  If the Marshals have

13   any objections -- it can't be connected to the wifi.  It can't

14   be connected to the Internet.

15           MARSHAL:  I mean, it's just whether or not the jail

16   would allow it.

17           THE COURT:  Yes, but what if I order them to allow it?

18           MARSHAL:  Sure, that would be fine, Your Honor.

19           THE COURT:  I want you to run it by the U.S.

20   Attorney's Office.  That's okay.  I will grant it.  You have to

21   buy it.  I'm not going to pay for it.

22           MS. NECHAY:  Absolutely, Your Honor.  Apropos, I just

23   want to clarify, the game console I'm speaking of doesn't have

24   the capability even of wifi, so just to assure, Your Honor.

25       And then the second request that Mr. Nikulin made -- just

**PROCEEDINGS**

1  a small comfort during the stressful time -- was to bring him a

2  cheeseburger today, a lunch.

3       So we have provided that.  We made sure that the food was

4  handled safely.  It was from a location that he does not know.

5  So if Your Honor would permit after we conclude today for him

6  to enjoy his lunch --

7            THE COURT:  Where would that be?

8            MS. NECHAY:  We purchased it already.  We bought it.

9            THE COURT:  He is going to have it here or in the

10 lockup?  Where?

11           MR. GASNER:  Wherever the Marshals would permit.

12 Doesn't have to be done in the court, of course.  Maybe in the

13 back where he would normally eat lunch.

14           THE COURT:  Can they do that in the back?  Can the

15 marshal let him have his cheeseburger in the back?

16           MARSHAL:  If they wanted to bring it upstairs, we will

17 put them in separate cells.  He can have it upstairs in a cell

18 block.  So they just bring it up to the 20th floor; give it to

19 us.  I will bring it back to him and he can --

20           THE COURT:  You will do that personally?

21           MARSHAL:  Yes.

22           THE COURT:  And you are?

23           MARSHAL:  Deputy Sellars (phonetic).

24           THE COURT:  Please don't let me down.  You know, he

25 is -- a cheeseburger is the least we can do.  All right.

1          **MS. NECHAY:**  Thank you, Your Honor.

2      I think one of the requests we would also make when we

3   return on April 13th, if the Government is going to try to

4   obtain a test result for Mr. Nikulin, then we would also

5   request that they try to obtain a test result just to have in

6   the courtroom in anticipation of if, for example -- it's not

7   inconceivable at some point a juror may have a cough or exhibit

8   a symptom.  And I believe it would be wise to nip it in the bud

9   to have a test available immediately if that does happen.

10      Certainly, there has been public reports of very public

11  celebrities and athletes that have been able to procure tests

12  very quickly that are asymptomatic.  And certainly we feel

13  because of the importance of this trial and the safety of all

14  of the individuals in this courtroom, that that would be wise

15  to --

16          **THE COURT:**  I think that's -- I want you to get a test

17  that we can have available here, the Government.  Because if it

18  turns out somebody thinks they might be coming down with the

19  virus, coronavirus, then everybody would be at risk including

20  us too.  But I'm mainly concerned about other jurors would then

21  say:  Oh, no, I'm sick too.

22      So we would -- the trial would be over at that point

23  unless the Government can show through a test that, no, you

24  just got the ordinary flu.  You don't have coronavirus.  So

25  please -- please get us one of those tests, so we can do that.

 1           **MS. KANE:**  Your Honor, I wish that I had the power to

 2    do that.  As I noted before, we have been unable to locate any

 3    sort of tests available for any purpose.

 4           **THE COURT:**  Tell them --

 5           **MS. KANE:**  Moreover --

 6           **THE COURT:**  Tell them the Judge has ordered it.

 7           **MS. KANE:**  Your Honor, I will do that.  Not only that,

 8    I don't believe these are tests that can be self administered.

 9    I think a medical professional is needed.

10           **THE COURT:**  We can do it down in the second floor

11    where I got my flu shot.  Everybody goes down there.  They are

12    equipped to administer this kind of test.

13           **MS. KANE:**  I don't know what their capacity is right

14    now, and I will --

15           **THE COURT:**  Their capacity is fine.  What they don't

16    have are the kits, the test kits.

17           **MS. NECHAY:**  Your Honor, just as a reminder, we do

18    have a juror that is a doctor; self-admitted that she was on

19    the front lines of this issue.  I don't know how it would be

20    appropriate or who would reach out to her and perhaps ask her

21    about that issue but, perhaps, that juror --

22           **THE COURT:**  What do you mean ask her about that issue?

23           **MS. NECHAY:**  Perhaps she has some information about

24    how we can obtain these tests for this courtroom.

25           **THE COURT:**  No, no, no.  There is no way we are going

1  to -- we are not going to get one of the jurors involved in the

2  public health issues of our courtroom.  No.  They have got

3  enough on their plate.  Their job is to be -- decide the case

4  but not to do that, no.  That is our responsibility, not hers.

5          MS. NECHAY:  Understood, Judge.  I was just

6  brainstorming.

7          MS. KANE:  Thank you, Your Honor.  We agree with the

8  Court's position.

9          THE COURT:  I want you to look at this statement that

10  I have written out, which I'm willing to change and modify.

11  This is what would be told to the jury since it is going to be

12  by telephone.  We don't have -- ordinarily, I would bring them

13  in and tell them this in person; but we can't do that under the

14  present circumstances.  So we have to make due with the

15  recording.

16      And so here is the statement.  Would you read it.  I have

17  made some handwritten edits.  Teresa, please hand that down.

18  You are going to have to work off the same copies.

19          THE CLERK:  You want me to hand it --

20          THE COURT:  Hand it to the lawyers.

21                  (Pause in proceedings.)

22          MS. NECHAY:  The Defense would submit on this proposed

23  statement.

24          MS. KANE:  Thank you, Your Honor.  The language looks

25  fine to the Government as well.

1          **THE COURT:**  All right.  This is what we are going to

2     do then.  Anything else today?

3          **MS. NECHAY:**  Nothing from Defense, Your Honor.

4          **MS. KANE:**  No, Your Honor, thank you.

5          **THE COURT:**  All right.  So the -- let me just make an

6     official ruling.  The trial was previously continued until

7     tomorrow morning to give us some time to assess our situation.

8        The trial is under way with a jury.  Jeopardy has

9     attached.

10       And we are all trying to do our best to save the trial and

11    save the jury so that we don't have a mistrial.

12       And I have decided that the best course of action is to do

13    what the Defense has requested and give a continuance until

14    month April 13th at 7:30 a.m. when the trial will resume with

15    the status conference on Thursday April 9 at Noon.

16       We will advise the jury on Friday, April 10, to report in

17    or give them other instructions.

18       So the trial for tomorrow is postponed pending our

19    developments in this public health emergency.

20       Okay.  Can you do that as a minute order, Theresa?

21         **THE CLERK:**  I'm sorry?

22         **THE COURT:**  Can you write this up as a minute order?

23         **THE CLERK:**  Yes, I will.

24         **THE COURT:**  All right.  I thank you-all.  I think we

25    are done; right?

1        **MR. GASNER:**  Yes, Your Honor.

2        **THE COURT:**  Mr. Nikulin, enjoy your cheeseburger.

3   Okay.  And my instruction -- my interpreters, I'm going to

4   raise something with the Clerk -- with the Jury Office and tell

5   them that they let me down by giving you dead batteries.

6        But please next time check the equipment and make sure it

7   works.

8        **INTERPRETER:**  We will do our best, Your Honor.

9        **THE COURT:**  Thank you.

10       **MS. WAWRZYNIAK:**  Thank you, Your Honor.

11       **MS. NECHAY:**  Thank you.

12            (Proceedings adjourned at 12:48 p.m.)

13                      ---oOo---

1

2

3                    **CERTIFICATE OF REPORTER**

4          We certify that the foregoing is a correct transcript

5    from the record of proceedings in the above-entitled matter.

6

7    DATE:    Sunday, December 13, 2020

8

9

10

11    _____

12                   Marla F. Knox, RPR, CRR
                      U.S. Court Reporter

13

14

15

16

17

18

19

20

21

22

23

24

25